# LITTLER MENDELSON®
### A PROFESSIONAL CORPORATION

ALABAMA

ARIZONA

ARKANSAS

CALIFORNIA

Joel L. Finger
Direct: 212.497.8485
Direct Fax: 646.417.6793
jfinger@littler.com

COLORADO

CONNECTICUT

DISTRICT OF COLUMBIA

May 19, 2008

FLORIDA

**VIA FACSIMILE ( 212) 805-6737**

GEORGIA

Hon George B. Daniels
United States District Judge
United States District Court,
 Southern District of New York
500 Pearl Street, Room 630
New York, NY 10007

ILLINOIS

INDIANA

MASSACHUSETTS

Re:   EyeWonder, Inc. v. John Abraham
      Index No. 08 CV 3579 (GBD)

MINNESOTA

Dear Judge Daniels:

MISSOURI

We represent defendant John Abraham in the above-referenced action alleging breach of restrictive covenants contained in an employment agreement with plaintiff EyeWonder, Inc. ("EWI"). We write to respectfully request that the Court immediately dissolve the temporary restraint it ordered on May 14[1] and deny plaintiff's application for a preliminary injunction prohibiting Abraham's solicitation of customers. Enforcement of the non-solicitation agreement in this case would be contrary to governing California law, as plaintiff has failed to show or even allege that Abraham misappropriated or used any of its trade secrets. That is because non-solicitation agreements are void under California law as unlawful business restraints except where enforcement is necessary to protect trade secrets. Thompson v. Impaxx, Inc., 113 Cal.App.4th 1425, 7 Cal.Rptr.3d 427 (2003); Moss, Adams & Co. v. Shilling, 179 Cal.App.3d 124, 224 Cal.Rptr. 456 (1986).

NEVADA

NEW JERSEY

NEW YORK

NORTH CAROLINA

OHIO

PENNSYLVANIA

We also write to report on whether the Parties were able to resolve this dispute. Despite Mr. Abraham's effort to compromise and negotiate a stipulation acceptable to both sides, EyeWonder has not negotiated with him.

RHODE ISLAND

SOUTH CAROLINA

TEXAS

---

[1] All dates are 2008.

VIRGINIA

WASHINGTON

Hon. George B. Daniels
Re: EyeWonder, Inc. v. Abraham
    Index No. 08 CV 3579 (GBD)
May 19, 2008
Page 2

### *Mr. Abraham's Efforts to Resolve Plaintiff's Application*

Pending before the Court is plaintiff's application by Order to Show Cause dated May 9 for a preliminary injunction prohibiting Abraham from soliciting 52 alleged customers of EWI.[2] On May 13, Abraham submitted an affidavit and memorandum of law in opposition to the application. The Court heard oral argument on May 14, after which it issued an order from the Bench temporarily restraining Abraham from soliciting 52 companies named on a list prepared by EWI's attorney and shared with opposing counsel but not submitted to the Court (the "Bogan list"). Abraham objected that many of the companies on the Bogan list either were not EWI customers or were customers of Abraham's current employer, Eyeblaster, before Abraham's hiring by Eyeblaster. Abraham also denied possessing any of EWI's confidential information or trade secrets. The Court directed the parties to engage in discussions to try to resolve Abraham's objections to the Bogan list and to report back to it by today on the status of their efforts to reach a resolution.

We have endeavored in good faith but without success to resolve Abraham's objections to the Bogan list. On May 15, I spoke with Jerome Connell, the COO and General Counsel of EWI, and I advised that I would email him with Abraham's position on May 16. He said he would review the email and get back to me with EWI's response by close of business on May 16. On May 16, I e-mailed Connell and told him that Abraham would agree outright not to solicit sixteen (16) companies, comprising about 1/3 of the Bogan list. With respect to another eight (8) "customers", I told Connell that Abraham advised that he never did any work for them while he was an employee of EWI, and that to his knowledge they were not EyeWonder customers. These 8 "customers" were not customers as defined in the employment contract. (See attached Supplemental Abraham Declaration.)[3] I told Connell that the remaining companies on the Bogan list were customers of Eyeblaster before Abraham left EWI. I asked Mr. Connell to get back to me with EyeWonder's position on the Eyeblaster customers. A copy of my email to Mr. Connell with "customer" names deleted is attached hereto.

---

[2] With respect to the other relief sought by EWI, Abraham has agreed that he will not solicit EWI's employees, and during oral argument EWI did not pursue application for an injunction prohibiting Abraham's disclosure of alleged "confidential information."

[3] The agreement, at Paragraph 6(a)(ii), defines customer as :

> ... "Customer" – a customer of Company that, during the one-year period before the termination of employment, (i) was solicited or serviced by Employee or another Company employee supervised by Employee, or (ii) about which Employee had Confidential Information.

Hon. George B. Daniels
Re:  EyeWonder, Inc. v. Abraham
      Index No. 08 CV 3579 (GBD)
May 19, 2008
Page 3

Later on Friday, May 16, Mr. Connell left me a telephone message advising that he believed that what we had proposed was "significantly different" from what the Court asked the Parties to do, that it was a "far departure" from what EyeWonder could agree to, and that he would send me a writing on May 19 (the day we have to report back to the Court) reflecting EyeWonder's position. As of 4:00p.m. today, we have not received a writing from Mr. Connell.

So, despite Mr. Abraham's good faith efforts, EWI has not participated in negotiation.

### *Enjoining Abraham Would Plainly Contravene 2d Circuit and California Law*

As set forth more fully in defendant's Memorandum of Law in Opposition to the Application for a Preliminary Injunction, plaintiff has fallen far short of establishing its right to the relief requested under applicable Second Circuit precedent.

EWI has not demonstrated that it will suffer **actual and imminent irreparable harm**, which the Second Circuit has called the "single most important prerequisite" to the issuance of a preliminary injunction. Citibank, N.A. v. Citytrust, 756 F.2d 273, 275 (2d Cir. 1985). Rather, EWI has alluded only to speculative harms, which clearly do not satisfy the applicable standard for granting the extraordinary and drastic relief requested. See, e.g., Moore v. Consolidated Edison Co. of N.Y., Inc., 409 F.3d 506, 510-11 (2d Cir. 2005); Freedom Holdings, Inc. v. Spitzer, 408 F.3d 112, 114 (2d Cir. 2005). Significantly, EWI has not even alleged any solicitation of its customers or any misappropriation or use of its property or trade secrets by Abraham. Absent any allegation of a breach or threatened breach by Abraham of the covenant at issue, plaintiff cannot on this application show any actual or imminent irreparable harm resulting from a breach, as required.

EWI also has not shown **a likelihood of success under California law on the merits** of its underlying claims or sufficiently serious questions going to the merits to make them a fair ground for litigation. Most significantly, EWI has not alleged that Abraham used or misappropriated its trade secrets in furtherance of soliciting its customers, and certainly the names of the Eyeblaster customers on EyeWonder's list are not an EyeWonder trade secret.[4] Like non-compete agreements, non-solicitation agreements are void under California law as unlawful business restraints except where enforcement is necessary to protect trade secrets.

---

[4] At oral argument, counsel for EyeWonder stated:

> The identities [on the list] are not a secret, your Honor. Everybody can find out who the identities of clients and potential clients in our business are. Transcript of 5/14/08 Oral Argument, at 28, ln. 22-25 (page attached.)

Hon. George B. Daniels
Re: EyeWonder, Inc. v. Abraham
    Index No. 08 CV 3579 (GBD)
May 19, 2008
Page 4

Thompson v. Impaxx, Inc., 113 Cal.App.4th 1425, 7 Cal.Rptr.3d 427 (2003); Moss, Adams & Co. v. Shilling, 179 Cal.App.3d 124, 224 Cal.Rptr. 456 (1986). Indeed, just this year, this rule was confirmed by a Federal Court in California:

> California courts have clearly voided anti-solicitation clauses as unfair restraints of trade unless their purpose is the protection of trade secrets.

Beebe v. Mobility, Inc., No. 07 CV 1766 BTM (NLS), 2008 WL 474391, *2 (S.D. Cal. 2008). EWI's failure to show that restraining Abraham is essential to protect trade secrets that he misappropriated or used to solicit its customers is fatal to its application for preliminary relief.

Further, the issue of whether information constitutes a trade secret under California law is a question of fact. In re Providian Credit Card Cases, 96 Cal.App.4th 292, 116 Cal.Rptr.2d 833 (2002); Cal. Civ. Code §3426.1(d). Merely labeling information or categories of information as "sensitive," as EWI has in this case, does not establish that the information is in fact a trade secret as defined under California law. Thompson v. Impaxx, Inc., 113 Cal.App.4th 1425, 7 Cal.Rptr.3d 427 (2003); Morlife, Inc. v. Perry, 56 Cal.App.4th 1514, 66 Cal.Rptr.2d 731 (1997). See, e.g., Amer. Paper & Pkg. Products, Inc. v. Kirgan, 183 Cal.App.3d 1318, 228 Cal.Rptr. 713 (1986) (denying enforcement of non-solicitation agreement because alleged misappropriated customer lists were not a trade secret, where list compilation was not difficult, industry was very competitive, customers would often deal with more than one company at a time, and no evidence that all of plaintiff's competition came from defendant's new employer).[5]

EWI has not alleged that Abraham misappropriated or used its trade secrets in furtherance of customer solicitations. Nor has EWI shown that any knowledge that Abraham may have gained during his employment would constitute a protectable trade secret under California law. Thus, EWI has not satisfied its burden on this application to demonstrate a likelihood of success on the merits of its underlying claim of breach of the non-solicitation agreement.

Finally, the **balance of the hardships** does not decidedly tip in EWI's favor. If a preliminary injunction were to issue, Abraham would be harmed in his new employment and

---

[5] New York law is consistent with California law on this point. See, e.g., Production Resource Group v. Oberman, 2003 WL 22350939 (S.D.N.Y 2003) (denying enforcement of non-solicitation agreement, where plaintiff had not shown that its pricing structure, method for setting prices, bid components, price mark-ups, profit margins, inventory, rebate programs, supplier discounts and customer contacts were trade secrets).

Hon. George B. Daniels
Re:  EyeWonder, Inc. v. Abraham
      Index No. 08 CV 3579 (GBD)
May 19, 2008
Page 5

restrained from dealing with companies that he and/or his new employer has known and had business relationships with for many years, notwithstanding the fact that he has not been shown to have misappropriated or used any trade secrets of EWI. In contrast, EWI has not shown that it is likely to lose protectable trade secrets. That is particularly the case for the 28 entities on the 52 customer list that were Eyeblaster clients before Mr. Abraham joined Eyeblaster.

For the foregoing reasons, as well as all the reasons set forth in Defendant's Memorandum of Law in Opposition to the Application for a Preliminary Injunction, we respectfully request that the Court immediately dissolve the temporary restraint imposed upon Abraham on May 14, 2008 and deny EWI's application for a preliminary injunction in all respects.

Respectfully submitted,

LITTLER MENDELSON, P.C.

By: _____
    Joel L. Finger

JLF/jm
Attachments

cc: James F. Bogan III, Esq.
    **(via Facsimile - (404) 541-3133)**

## Finger, Joel L.

From: Finger, Joel L.
Sent: Friday, May 16, 2008 12:46 PM
To: rconnell@eyewonder.com
Cc: jbogan@kilpatrickstockton.com

Dear Mr. Connell:

Pursuant to our discussion yesterday, I write to set forth the following:

1. Mr. Abraham is willing to stipulate that he will not solicit (as that term is defined in the Agreement) the following entities referred to in EyeWonder's list of 52 "customers":

16 names deleted

2. Mr. Abraham advises that the following entities on the list were not to his knowledge customers of EyeWonder and that he never did any work for them during his employ with EyeWonder:

8 names deleted

If EyeWonder disagrees, and contends that any of the above entities were its customers while Mr. Abraham worked there, please advise me of that today with enough detail so that I can discuss it with Mr. Abraham and then get back to you.

3. I am advised that the remaining entities on the list were Eyeblaster clients for whom Eyeblaster was and is doing business before Mr. Abraham joined Eyeblaster. I understand from our discussion that you will advise me by close of business today what EyeWonder's position is regarding each of these entities. As I told you, for those entities for which you still seek injunctive relief regarding Mr. Abraham, it would be helpful if you would specify the reason why, and then we could consult with our client about a response.

I look forward to hearing from you.

Joel Finger

**Joel L. Finger, Esq.| Littler Mendelson, P.C.**
The National Employment & Labor Law Firm®
dir: 212.497.8485| fax: 646.417.6793
900 Third Avenue | New York, New York  10022
jfinger@littler.com | www.littler.com

UNITED SATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
EYEWONDER, INC., :
: Index No. 08CV3579 (GBD)
Plaintiff: :
:
v. : **SUPPLEMENTAL DECLARATION**
: **OF JOHN ABRAHAM**
JOHN ABRAHAM, :
:
Defendant. :
:
------------------------------------------------------x

JOHN ABRAHAM, pursuant to 28 U.S.C. § 1746, declares:

1. I am the Defendant in this action. I make this Declaration to supplement the Declaration previously submitted by me in opposition to Plaintiff EyeWonder Inc.'s (EWI) motion for preliminary injunction.

2. Subsequent to the oral argument on EWI's application for a preliminary injunction, I reviewed the list of 52 "customers" provided by EWI to my attorneys. There are 8 entities on that list which I did not solicit or service while I was employed at EWI nor did anyone supervised by me solicit or service them during that time and I do not have any confidential information (as that term is defined in the restrictive covenant agreement) about any of them. Accordingly, I do not believe that these 8 entities are customers as that term is defined in that agreement, at Paragraph 6(a)(ii).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: Los Angeles, California
        May 19, 2008

_____
John Abraham

85e0eyea.txt

3    right to take from Eyewonder at this point and give to
4    Eyeblaster.
5        MR. FINGER:  May have I have 30 seconds to --
6        THE COURT:  Sure.
7        (Pause)
8        MR. FINGER:  Your Honor.
9        THE COURT:  Yes, sir.
10       MR. FINGER:  I'm sorry.
11           Obviously, we need to go back and go over that list
12   and deal with whether or not some were customers, some were
13   not; who were Eyeblaster's customers.  We need to deal with
14   counsel.  Counsel gave us that list, based on our
15   representation that we would keep it confidential.
16           I assume, given this -- and I want to make sure we all
17   have an understanding.  I assume, given this discussion, that
18   this list can be shown to Eyeblaster because we need to deal
19   with these issues.  I just can't keep it to myself.
20       MR. BOGAN:  I have already given him permission to
21   show the list to Eyeblaster counsel and one Eyeblaster
22   representative.  So that's already taken care of.  The
23   identities are not a secret, your Honor.  Everybody can find
24   out who the identities of clients and potential clients in our
25   business are.  It's the relationships with the actual clients

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

0

85e0eyea                                                        29

1    that we are worried about.
2        THE COURT:  Does it make sense to you for us to
3    proceed this way, the way I just laid out?
4        MR. CONNELL:  Yes, your Honor.  I'm actually prepared
5    to agree -- there is a global list.  These are all lists.

Page 26

85e0eyea.txt

1  need to get, from Eyeblaster, proof of who their clients were
2  particularly -- this company goes here, and that one goes on
3  that side.
4          THE COURT:  Yeah, you have the list of 52, you start
5  with that.  You show it to your client, you show it to
6  Eyeblaster.  You say to Eyeblaster, do you have any proof that
7  you had these clients before you got there.  If so, tell me
8  which ones they are, and tell me the proof is so I can convince
9  them that's the case.
10         So to the extent that they want to -- your client says
11 that, no, these were not Eyewonder's clients, then they can
12 say, no, these were Eyewonder's clients, we can show you, you
13 know, the relationship, evidence of the relationship while he
14 worked there.  And that should -- and that should settle that
15 issue.  And to the extent that -- and I assume that this won't
16 be that great -- to the extent that you think that your client
17 has a list of people that he brought with him that he wants to
18 solicit, if you can agree on some of those people, that they
19 say, fine, we don't want this client, take him.  And/or you
20 want to tell -- you want to otherwise say to your client that,
21 look, you know, I have had a discussion with the judge.  The
22 judge says, sure, if you can prevail in arbitration that --
23 that you have that right to do so even though your agreement
24 says you don't have the right to do so, then the judge's
25 position is probably going to be that, no, you can't solicit

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

85e0eyea                                                    28

1  those clients unless and until an arbitrator makes a final
2  determination that those are, in fact clients that you have a