**KILPATRICK STOCKTON LLP**
Lisa Pearson (LP 4916)
31 West 52nd Street, 14th Floor
New York, NY 10019
Telephone: (212) 775-8700
Facsimile: (212) 775-8800

James F. Bogan III
(Application for admission *pro hac vice* filed)
Suite 2800, 1100 Peachtree Street
Atlanta, Georgia 30309
Telephone: (404) 815-6467
Facsimile: (404) 541-3133

*Attorneys for Plaintiff EyeWonder, Inc.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| EYEWONDER, INC., a Delaware corporation,<br><br>                         Plaintiff,<br><br>            v.<br><br>JOHN ABRAHAM, an individual,<br><br>                    Defendant. | Case No. 08 CV 3579<br><br>**DECLARATION OF JEROME F. CONNELL, JR.** |

---

I, JEROME F. CONNELL, JR., pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.      I am the General Counsel and COO of EyeWonder, Inc., a Delaware corporation and Plaintiff in this action ("EyeWonder").

2.      By e-mail communication on March 21, 2008 (a copy of which is attached to EyeWonder's Verified Complaint as Exhibit C), John Abraham, Defendant in this action,

informed EyeWonder that, by such communication, he was giving his two weeks notice, resigning from his position as Regional Vice President of Sales for EyeWonder.

3.      In a telephone conversation with me earlier that day, Mr. Abraham stated that he was accepting a position with a "wireless startup." I subsequently discovered that this statement was false, and that Abraham had in fact accepted employment with Eyeblaster, Inc. ("Eyeblaster"). Eyeblaster is one of EyeWonder's few direct competitors in the world, with sales of over $40 million in 2007, and is not in any way a "wireless startup."

4.      Mr. Abraham is required under the Employment Agreement, a copy of which is attached to the Verified Complaint as Exhibit A (the "Agreement"), to disclose the identity of his new employer, but none of the communications from Mr. Abraham to me, or to Mr. Abraham's former supervisor at EyeWonder, since Mr. Abraham's announcement of his resignation included such information, and no other EyeWonder employee ever reported having received such information from Mr. Abraham.

5.      Only a handful of companies in the world compete directly with EyeWonder in its business of providing services to deliver video and other rich media advertisements – those companies being PointRoll, Inc., Eyeblaster, DoubleClick Inc. ("DoubleClick"), Enliven Marketing Technologies Corporation (via its Unicast division), and aQuantive, Inc. (via its Atlas division).

6.      Since his departure from EyeWonder, Mr. Abraham has solicited at least three of the seven persons on the EyeWonder sales staff who are based in EyeWonder's Marina del Rey office to leave EyeWonder and join Eyeblaster's west coast sales office. The names of those employees are Kestrel Breiler, Maria Manalo and Meghan O' Holleran.

7.      In Amendment No. 1 to its Registration Statement on Form S-1, filed with the Securities and Exchange Commission on April 18, 2008, Eyeblaster stated as follows: "The markets in which we operate are rapidly evolving and highly competitive. We expect this competitive environment to continue. We believe that the principal competitive factors affecting the market for digital advertising services and tools are existing strategic relationships with customers . . . . Our main competitors in the stand-alone rich media category are niche players, such as PointRoll, EyeWonder and FlashTalking."

8.      Attached hereto is a true and correct copy of the Complaint filed by Eyeblaster on or about April 22, 2005 against one of its former employees (Walter Geer) who attempted to leave Eyeblaster's employ and accept a position with DoubleClick, which is (as noted above) one of the other parties that competes with Eyeblaster and EyeWonder. A copy of an "Eyeblaster, Inc. Non-Competition and Non-Disclosure and Developments Agreement" is attached to that Complaint as an exhibit. The restrictive covenants in that Eyeblaster employment agreement are broader than those contained in the Agreement between Abraham and EyeWonder. For example, the non-solicitation clause is for a duration of 18 months in the Eyeblaster agreement, whereas the restricted time period in Abraham's agreement with EyeWonder is only 12 months.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed in Atlanta, Georgia on May 7, 2008.

JEROME F. CONNELL, JR.