

**KILPATRICK STOCKTON** LLP
Attorneys at Law

Suite 2800  1100 Peachtree St.
Atlanta GA 30309-4530
t 404 815 6500  f 404 815 6555
www.KilpatrickStockton.com

May 20, 2008

direct dial 404 815 6467
direct fax 404 541 3133
JBogan@KilpatrickStockton.com

**VIA FACSIMILE (212) 805-6737**

The Honorable George B. Daniels
United States District Judge
United States District Court for the
  Southern District of New York
500 Pearl Street, Room 630
New York, New York 10007

    Re:    *EyeWonder, Inc. v. John Abraham*, No. 08 Civ. 3579 (GBD) (RLE)

Dear Judge Daniels:

    On behalf of EyeWonder, Inc. ("EyeWonder"), I wanted to respond immediately to one point raised in Mr. Finger's letter to the Court dated May 19, 2008, and to provide notice that we would be submitting a more detailed response to the other contentions in the letter promptly.

    Regarding Mr. Finger's assertion that EyeWonder has "not negotiated with" Mr. Abraham, Jerome F. Connell Jr., General Counsel and COO of EyeWonder, provided a full written response to Mr. Finger on May 19, 2008. A copy of Mr. Connell's letter is attached. In addition to explaining EyeWonder's reasons for identifying the 52 customers set forth on the original customer list, Mr. Connell further offered, "in the spirit of compromise," to eliminate 10 significant customers from this list, such that the interim non-solicitation list would include only the 16 customers Mr. Abraham had agreed not to contact and an additional 26 customers on the "RVP Forecast" personally prepared by Mr. Abraham. EyeWonder considers this proposal to be very reasonable and vigorously disputes any allegation that it is not negotiating in good faith.

    The remainder of Mr. Finger's letter seeks to reargue substantive issues presented to the Court in connection with EyeWonder's original motion and already decided by the Court in entering a "standing order" prohibiting Mr. Abraham's solicitation of the 52 customers pending entry of a stipulated order or preliminary injunction in aid of arbitration. We will address these points, and present a proposed form of preliminary injunction, as soon as possible this week (I

The Honorable George B. Daniels
May 9, 2008

am presently in Dallas for a required appearance before Judge Boyle of the Northern District of Texas tomorrow morning). Of course, EyeWonder remains amenable to considering good faith offers to negotiate by Mr. Abraham, provided such offers are consistent with the Court's statements and rulings at the May 14 hearing.

Thank you for your attention to this matter. If you have questions or comments, please contact me or my colleague, Allen Garrett ((404) 815-6141, agarrett@kilpatrickstockton.com).

> Best regards,
>
> *James F. Bogan*
> James F. Bogan III (signed by CAG, w/ express permission)

Copy: Jerome F. Connell Jr. (by e-mail)
      Joel L. Finger (by facsimile and e-mail)
      C. Allen Garrett Jr.

US2008 56464.1



May 19, 2008

Mr. Joel L. Finger
Littler Mendelson, P.C.
The National Employment & Labor Law Firm
900 Third Avenue
New York, NY 10022

**Re: EyeWonder, Inc. v. John Abraham, S.D.N.Y. Case No. 08 CV 3579**

Dear Mr. Finger:

I am responding to your May 16, 2008 e-mail regarding the referenced matter and John Abraham/Eyeblaster's position with respect to the 52 EyeWonder customers on the list subject to the motion for preliminary injunction that was heard last week. If I understand your e-mail correctly, Mr. Abraham is willing to refrain from soliciting 16 of these 52, and you describe the other 36 as either parties that Mr. Abraham claims no knowledge of their relationship with EyeWonder, or parties that previously have done business with Eyeblaster.

Mr. Abraham and his staff in EyeWonder's southwestern and northwestern sales regions were responsible for calling on and maintaining relationships with well over 200 EyeWonder customers and potential customers. On March 14, 2008, Mr. Abraham personally prepared and transmitted to his supervisor (EyeWonder's SVP of Sales) a forecast of the clients with which EyeWonder would be doing business during the second calendar quarter of 2008 in his regions (the "RVP Forecast"). The RVP Forecast also included Mr. Abraham's prediction as to the amount of revenue expected to be associated with each such customer for this period, which we can provide to you on a confidential basis (i.e., your eyes only) if need be. The list of 52 is comprised of those customers that were listed by Mr. Abraham on the RVP Forecast, plus a handful of others that were not on that list, but with which EyeWonder's west coast sales staff maintains significant relationships and frequent contact.

Whether Mr. Abraham had contact with any EyeWonder customer before joining EyeWonder is not relevant. Not merely because Judge Daniels so stated at our hearing, but also for reasons inherent in our business. While Mr. Abraham may have some personal relationships with certain parties from his earlier online career, he had absolutely no experience whatsoever selling video and non-video rich media services when he was hired by EyeWonder. All of his knowledge with respect to this industry was derived entirely through his employment with EyeWonder, including being literally walked (physically and electronically) into customers and potential customers by a sales staff that essentially had been completely hired and trained by EyeWonder before Mr. Abraham joined the organization. Any solicitation of EyeWonder customers by Mr. Abraham on behalf of Eyeblaster would be only for the purpose of selling the



type of products and services that he had sold on behalf of EyeWonder only, and no other party before.

Regarding claims that certain customers on the list have done business with Eyeblaster, there are two significant points. First is that many national agencies and advertisers do business with more than one vendor for a particular type of product and service, and ours is no different. EyeWonder does not claim complete "ownership" of particular clients, but merely requests that Mr. Abraham comply with his contractual obligations in this regard during the interim period pending arbitration. In addition, to the extent that such customers truly are significant current Eyeblaster customers, then what would be the justification (or Eyeblaster's need) for Mr. Abraham to completely ignore the terms of his agreement and solicit these customers on behalf of Eyeblaster? To the extent its interests are even relevant to the analysis here, Eyeblaster should be just fine letting the members of its staff that have been selling those customers continue to do so, and EyeWonder is not asking for that to cease. EyeWonder seeks only for Mr. Abraham to abide by his obligations under the agreement and not be involved in any such solicitations on behalf of Eyeblaster until this matter is arbitrated.

Accordingly, we think that in the spirit of compromise and for the purpose of reaching an agreeable solution for this interim period, EyeWonder proposes that, from the list of 52 that is subject to the motion, Mr. Abraham refrain from soliciting only those that you stated in your e-mail that Mr. Abraham will not solicit, and any others who are not on that list, but which appear on the RVP Forecast that he personally prepared. The revised list of 42 is attached here and, even though it leaves off a few significant EyeWonder customers, we believe that this is a very reasonable approach to resolving the issue in good faith on an interim basis, and would hope that Mr. Abraham agrees. I submit this to you intending to resolve this quickly, with Mr. Abraham either agreeing or not agreeing to what is proposed, so that we can turn our focus to moving toward a full resolution in arbitration. If Mr. Abraham cannot agree to this proposal during the interim period, then we will write to the Court, fully explain the situation and exactly how we got to this point, and just let Judge Daniels rule on the matter once and for all.

Please call if you have any questions. I can be reached at 678-891-2041 (fax 2017) or via email at romey@eyewonder.com.

Sincerely,

*Jerome F. Connell*

Jerome F. Connell, Jr.
General Counsel and COO


eyeWONDER

## EyeWonder Customers per John Abraham

| | |
|---|---|
| 72 and Sunny | Lambesis |
| AKQA | Mediaedge |
| Apollo Interactive | MediaSmith |
| Aptimus | Moxie |
| Aura | Muse |
| Big Fish | OMD |
| Buddy Group | Pod 9 |
| Buena Vista Games | RED |
| Butler Shine | Sony |
| Cossette Media | Summit Entertainment |
| Deutsch | Team One |
| W.B. Doner | Tequila |
| Fox Interactive | True Agency |
| Fox Television | Universal Studios |
| G2 | US International Media |
| Geary Interactive | Venable |
| Genex | Walden Fox |
| Goodby Silverstein | Walt Disney Internet Group |
| Ignited Minds | WONGDOODY |
| Initiative Media | Worktank |
| Just Media | Young & Rubican |