

**KILPATRICK STOCKTON LLP**

Attorneys at Law

Suite 2800  1100 Peachtree St.
Atlanta GA 30309-4530
t 404 815 6500  f 404 815 6555
www.KilpatrickStockton.com

direct dial 404 815 6467
direct fax 404 541 3133
JBogan@KilpatrickStockton.com

May 22, 2008

The Honorable George B. Daniels
United States District Judge
United States District Court
  for the Southern District of New York
500 Pearl Street, Room 630
New York, New York  10007

Re:   *EyeWonder, Inc. v. John Abraham*, No. 08 Civ. 3579 (GBD) (RLE)

Dear Judge Daniels:

As promised in our letter dated May 20, 2008, EyeWonder, Inc. ("EyeWonder") respectfully responds to Mr. Abraham's May 19, 2008 letter to the Court.

As an initial matter, the Court did not authorize Mr. Abraham to seek reconsideration of its May 14 standing order prohibiting solicitation of the 52 customers pending entry of a stipulated order or preliminary injunction. To the contrary, the Court carefully considered and rejected each of Mr. Abraham's arguments, directing that – unless and until the parties reached an agreement as to customers who would not be solicited pending arbitration – Mr. Abraham was barred from soliciting *any* of the 52 customers. See Tr., at 32-37, *esp. id.* at 32 ("if your client ... solicited ... clients on this list ... I will consider your client to be in contempt of my order"). Despite this clear ruling, Mr. Abraham devotes roughly three pages of his letter explaining why the Court "got it wrong." We submit that this is not a proper subject of a letter to the Court. In any event, Mr. Abraham makes no effort to satisfy the narrow grounds for seeking reconsideration.

Mr. Abraham's effort to expand this interim proceeding is especially frustrating because, as EyeWonder made clear in its papers, and as the Court made clear at the hearing, EyeWonder merely seeks an interim injunction to maintain the *status quo* pending arbitration (which EyeWonder will agree to conduct on an expedited basis). That proceeding is moving forward and Mr. Abraham's response to EyeWonder's arbitration demand is due on May 27. This Court's broad power to enter injunctions in aid of arbitration is well-established. *See, e.g., Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 910 F.2d 1049, 1053-54 (2d Cir. 1990) (explaining that "pro-arbitration policies" are "furthered" by court injunctions in

The Honorable George B. Daniels
May 22, 2008
Page 2

aid of arbitration: "Arbitration can become a 'hollow formality' if parties are able to alter irreversibly the status quo before the arbitrators are able to render a decision in the dispute. … The issuance of an injunction to preserve the status quo pending arbitration fulfills the court's obligation under the FAA to enforce a valid agreement to arbitrate."). Because EyeWonder seeks only interim injunctive relief in aid of arbitration, and because arbitration could be rendered a "hollow formality" if Mr. Abraham is allowed to solicit EyeWonder's customers prior to the arbitration, the Court is well within its power to maintain the *status quo* until the matter can be determined by the arbitrator.

Turning to Mr. Abraham's substantive arguments, he assumes that California law will be applied, notwithstanding his express agreement that his contract with EyeWonder "shall be governed by and construed in accordance with the laws of the State of New York, without regard to its conflict of laws rules." Agreement § 9. Such a clause will be enforced where, as here, the contract has significant contacts to New York. *See, e.g., Estee Lauder Companies Inc. v. Batra*, 430 F. Supp. 2d 158, 170-174 (S.D.N.Y. 2006) (enforcing New York choice-of-law clause in dispute between California employee and New York employer where, *inter alia*, employer was based in New York and employee's responsibilities encompassed area broader than California); *id.* at 170 (citing *Zerman v. Ball*, 735 F.2d 15, 20 (2d Cir. 1984), for proposition that, "Generally, under New York law, a contract's designation of the law that is to govern disputes arising from the contract is determinative if the state has sufficient contacts with the transaction.").

Under New York law, reasonable non-solicitation provisions (such as the provision at issue here, which is limited to customers with whom the employee worked or with respect to whom the employee possesses confidential information) will be enforced. *See* Mem. in Supp. of Plf.'s Mot. for TRO and Prel. Inj., at 12-16 (citing, *inter alia, BDO Seidman v. Hirshberg*, 93 N.Y.2d 382, 712 N.E.2d 1220, 690 N.Y.S.2d 854 (1999), *Laro Maint. Corp. v. Culkin*, 255 A.D.2d 560, 560-561, 681 N.Y.S.2d 79, 79-80 (2d Dep't 1998) (*per curiam*), *Johnson Controls, Inc. v. A.P.T. Critical Systems, Inc.*, 323 F. Supp. 2d 525 (S.D.N.Y. 2004); *Natsource LLC v. Paribello*, 151 F. Supp. 2d 465 (S.D.N.Y. 2001), *Webcraft Tech., Inc. v. McCaw*, 674 F. Supp. 1039 (S.D.N.Y. 1987), and *Ecolab, Inc. v. K.P. Laundry Mach., Inc.*, 656 F. Supp. 894 (S.D.N.U. 1987)); *see also Gundermann & Gundermann Ins. v. Brassill*, 46 A.D.3d 615, 853 N.Y.S.2d 82 (2d Dep't 2007) (upholding injunction and noting employer's "legitimate interest in protecting the client information that the defendants acquired from their employment with the plaintiff"). As with his brief in opposition to EyeWonder's original motion, Mr. Abraham refuses to address the numerous New York authorities supporting enforcement of the non-solicitation provision, including the Court of Appeals' 1999 ruling in *BDO Seidman*.

The Honorable George B. Daniels
May 22, 2008
Page 3

Mr. Abraham's California authorities, moreover, are suspect or can be reconciled with the New York standard. The earliest case he cites, *Moss, Adams & Co. v. Shilling*, 179 Cal. App. 3d 124, 224 Cal. Rptr. 456 (1st Dist. 1986), has been criticized both because it pre-dates California's enactment of the Uniform Trade Secret Act and because its reasoning is flawed. *See, e.g., Morlife, Inc. v. Perry*, 56 Cal. App. 4th 1514, 66 Cal. Rptr. 2d 731 (1st Dist. 1997). As the *Morlife* court explained, California's current definition of protectable "trade secrets" is broad enough to encompass the confidential client information present in virtually every competitive business enterprise, and thus authorizes enforcement of non-solicitation clauses preventing employees from stealing their former employer's clients:

> Furthermore, in absolving former sales personnel from disclosing or using customer information that would otherwise qualify as a trade secret to solicit business, the court in *Moss, Adams* did not appropriately recognize that information developed by an employee concerning the employer's customers represents an investment of time and money ***on the part of the employer***, justifying a grant of trade secret protection against exploitation by the former employee. …. In the case of a former employee who attempts to use personal customer contacts for personal benefit upon going into competition with the former employer, it is this personal acquaintance and additional influence of the friendship developed during his employment … which makes solicitation of former customers by appellant ***so unfair to his former employer.***

56 Cal. App. 4th at 1526, 66 Cal. Rptr. 2d at 738-739 (emphasis in original) (internal citation and quotation marks omitted). Later cases similarly have recognized that non-solicitation clauses will be enforced where the employee worked directly with the customer or otherwise was exposed to confidential client information. *See, e.g., Alliant Ins. Services, Inc. v. Gaddy*, 159 Cal. App. 4th 1292, 1306-07, 72 Cal. Rptr. 3d 259, 271 (3d Dist. 2008) (upholding determination that non-solicitation clause was valid where evidence shows that employee was exposed to "confidential client information" constituting "trade secrets").[1]

---

[1] Mr. Abraham's other California authorities are not to the contrary, but instead involve refusals to hold a non-solicitation clause valid "as a matter of law." *See, e.g., Thompson v. Impaxx, Inc.*, 113 Cal. App. 4th 1425, 1429-30, 7 Cal. Rptr. 3d 427, 429-30 (2d Dist. 2003) (refusing to grant judgment on the pleadings as to validity of non-solicitation clause but acknowledging that employer "may turn out to be right" that confidential client information at issue, "including information obtained from clients about past projects and information about clients," would authorize enforcement of provision); *Beebe v. Mobility, Inc.*, No. 07CV1766 BTM (NLS), 2008 WL 474391 (S.D. Cal. Feb. 20, 2008) (in *dicta*, court refused

US2008 303630.3

The Honorable George B. Daniels
May 22, 2008
Page 4

In this case, the non-solicitation provision applies only to an entity qualifying as a "Customer," narrowly defined as a "customer of Company that, during the one-year period before the termination of employment, (i) was solicited or serviced by Employee or another Company employee supervised by Employee, or (ii) about which Employee had Confidential Information." Agreement § 6(a)(ii). Under this definition, the non-solicitation clause reaches only those customers as to whom Mr. Abraham has confidential client information (whether resulting from his own work and supervision or otherwise). This definition is consistent with the nature of the "confidential information" required to support enforcement of a non-solicitation provision under either New York or California law.

As previously set forth in the Declaration of Michael Rosner, all 52 of the customers on the initial list were clients with whom Mr. Abraham and his staff had "frequent and significant contact and relationships." *See* Rosner Decl. ¶ 5. Indeed, of the eight customers on the list of which Mr. Abraham claimed to have no knowledge, three were specifically identified in Mr. Abraham's own RVP forecast as the customers likely to generate the most significant business for EyeWonder during the second quarter of 2008. *See id.*; *see also* Letter from Jerome F. Connell Jr. to Joel L. Finger (May 19, 2008). Further, EyeWonder has now voluntarily removed 10 significant customers from the original non-solicitation list, such that there are only 42 entities Mr. Abraham cannot solicit pending arbitration.

A few additional points in Mr. Abraham's letter merit brief comment. Mr. Abraham again professes that he "will not solicit EWI's employees." Letter Br., at 2 n.2. If this is so, he should have no problem with this Court entering an order to that effect, especially in light of the undisputed fact that he has already solicited three of EyeWonder's employees.

Mr. Abraham also suggests that there is no "threatened breach" of the non-solicitation of customers clause. *Id.* at 3. Yet, Mr. Abraham – who now works for one of the handful of companies in the world (Eyeblaster) that directly competes with EyeWonder in the rich media space – refuses to refrain from soliciting EyeWonder's customers simply pending a decision by the arbitrator. EyeWonder respectfully submits that, under these circumstances (including the fact that Mr. Abraham is attempting to dissolve an order preventing interim solicitation only three business days after its entry), EyeWonder has a reasonable fear that Mr. Abraham is planning or otherwise fully intends to solicit its customers in the near future.

---

to hold clause "valid as a matter of law" because of factual issue as to whether information at issue constituted "trade secrets or other confidential, proprietary material"; claim challenging non-solicitation clause ultimately dismissed on other grounds).

The Honorable George B. Daniels
May 22, 2008
Page 5

EyeWonder reiterates that it has never sought a ruling preventing *Eyeblaster* from doing business with any pre-existing customers, and that Mr. Abraham has submitted no evidence indicating that, should he be restrained from soliciting EyeWonder's customers on an interim basis, his employment with Eyeblaster would in any way be jeopardized. EyeWonder simply seeks an interim order holding Mr. Abraham to his contractual agreement with EyeWonder (pursuant to which he has been compensated handsomely), until such time as an arbitrator can finally resolve this dispute.

In sum, Mr. Abraham has provided no basis for this Court to reconsider its prior ruling or to dissolve the interim injunction. Given that the parties are unable to negotiate a resolution of this dispute, the Court should enter a preliminary injunction in accordance with its oral rulings at the May 14 hearing. For the Court's review and consideration, EyeWonder is attaching a proposed "Order Granting Plaintiff's Motion for Preliminary Injunction in Aid of Arbitration."

Best regards,

James F. Bogan III

Attachment

copy:   Jerome F. Connell Jr. (w/ attachment)
        Joel L. Finger (w/ attachment)

US2008 303630.3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EYEWONDER, INC.,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>JOHN ABRAHAM,<br><br>　　　　　　Defendant. | Civil Action No. 08-3579 (GBD) (RLE) |

**ORDER GRANTING PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION IN AID OF ARBITRATION**

The Motion for a Temporary Restraining Order and Preliminary Injunction filed by Plaintiff EyeWonder, Inc. ("EyeWonder") having been heard on May 14, 2008, and the Court having considered the parties' written submissions, oral argument, the letters submitted by the parties after the May 14 hearing, and the entire record, the Court hereby ORDERS as follows:

**I.　　FINDINGS OF FACT**

　　1.　　EyeWonder provides services for creating and delivering video and other rich media advertisements over the Internet and wireless networks. Compl. ¶ 5.

　　2.　　In June, 2007, the defendant, John Abraham, was hired by EyeWonder as Regional Vice President of Sales for its Southwest Sales Region, consisting of Arizona, New Mexico, California – south of Big Sur, and the southern halves of Utah and Colorado. Compl. ¶ 5. Mr. Abraham worked in EyeWonder's sales office in Los Angeles, California. Compl. ¶ 7. He directly reported to Michael Rosner, EyeWonder's Senior Vice President of Sales, who worked in EyeWonder's main sales office in New York, New York. Rosner Decl. ¶¶ 1, 3, 6.

3.  In late 2007, Mr. Abraham's territory was expanded to also include EyeWonder's Northwest Sales Region, consisting of Oregon, Washington, Wyoming, Montana, Idaho, California – north of Big Sur, and the northern halves of Utah and Colorado. Rosner Decl. ¶ 3.

4.  Soon after Mr. Abraham joined EyeWonder, he entered into an Employment Agreement ("Agreement") (Compl., Exh. A), which includes the following provisions:

   a.  A non-solicitation of employees clause (Section 6(d)), which provides that

   > [f]or 12 months after [Mr. Abraham's] employment expires or terminates for any reason, [Mr. Abraham] shall not, for him/herself or for or on behalf of any other party, employ or solicit for employment anyone who [EyeWonder] employed during the shorter of the (i) period [Mr. Abraham] was employed by [EyeWonder], or (ii) six-month period immediately before [Mr. Abraham's] employment expired or terminated.

   b.  A non-solicitation of customers clause (Section 6(e)), which provides that, for a period of 12 months, Mr. Abraham

   > shall not solicit, directly or by assisting others, any Customer for the purpose of selling or otherwise providing to such Customer services for delivering video or other rich media advertisements over the Internet or over wireless networks.

5.  Section 6(a)(ii) of the Agreement defines "Customer" as "a customer of [EyeWonder] that, during the one-year period before the termination of employment, (i) was solicited or serviced by [Abraham] or another [EyeWonder] employee supervised by [Abraham], or (ii) about which [Abraham] had Confidential Information."

6.  The Court finds that the non-solicitation of employees clause (Section 6(d)) and the non-solicitation of customers clause (Section 6(e)) are reasonable.

7. Eyeblaster, Inc. ("Eyeblaster") is a company headquartered in New York. Compl. ¶ 21. Eyeblaster maintains a sales office in Los Angeles. Compl. ¶ 22. Eyeblaster competes directly with EyeWonder in the rich media advertising industry. Compl. ¶ 21.

8. Mr. Abraham recently accepted employment with Eyeblaster. Rosner Decl. ¶¶ 8, 9; Connell Decl. ¶ 3.

9. Soon after he joined Eyeblaster, Mr. Abraham solicited three EyeWonder employees to work for Eyeblaster in its Los Angeles office. Connell Decl. ¶ 6.

10. On May 1, 2008, counsel for EyeWonder provided a list of 52 EyeWonder customers to counsel for Mr. Abraham, asking whether Mr. Abraham would agree on an interim basis not to solicit any of those customers on behalf of Eyeblaster. Bogan Decl. ¶ 14. These 52 customers were identified by Michael Rosner (EyeWonder's Senior Vice President of Sales) as the customers that Mr. Abraham and the staff that he directly supervised had the most frequent and significant contact and relationships with. Rosner Decl. ¶ 5. Mr. Abraham's response, through counsel, was that Mr. Abraham was not in a position to agree to refrain from soliciting those 52 customers on behalf of Eyeblaster. Bogan Decl. ¶ 15.

11. Pursuant to Section 8 of the Agreement, EyeWonder has commenced an arbitration proceeding against Mr. Abraham. Bogan Decl. ¶ 11. EyeWonder has filed this action in aid of arbitration pursuant to Sections 7, 8(c), and 9 of the Agreement. Section 8(c) of the Agreement authorizes the filing of an action "for injunctive or other preliminary relief to maintain the status quo until a dispute can be finally resolved, or any action to prevent any violation or threatened violation of the covenants in Section 6."

12. In the Agreement, Mr. Abraham agreed that injunctive relief is necessary in the event of a breach or threatened breach of the Agreement. Agreement § 7.

US2008 46451.1

13. The Agreement further provides that the forum for resolving such claims for injunctive relief would be New York, and that the Agreement "shall be governed by and construed and enforced in accordance with the laws of the State of New York, without regarding to its conflict of laws rules." Agreement § 9.

## II. CONCLUSIONS OF LAW

14. To obtain a preliminary injunction, a plaintiff must demonstrate (1) irreparable harm in the absence of the injunction, and (2) either (a) a likelihood that it will succeed on the merits of the action, or (b) a sufficiently serious question going to the merits combined with a balance of hardships that tips decidedly in the former employer's favor. *Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*, 973 F.2d 1033, 1038 (2d Cir. 1992).

15. Furthermore, EyeWonder seeks to preserve the *status quo* pending arbitration of the parties' dispute. Such injunctions are authorized to preserve the parties' ability to conduct a meaningful arbitration. *See, e.g., Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 910 F.2d 1049, 1053-54 (2d Cir. 1990).

16. Irreparable harm is demonstrated when monetary damages are inadequate to compensate a former employer for a breach of a restrictive covenant. *Lumex, Inc. v. Highsmith*, 919 F. Supp. 624, 627 (E.D.N.Y. 1996). Where a former employer establishes that an ex-employee is positioned to sever relationships between the former employer and its customers or employees, irreparable harm is shown. *Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 68-69 (2d Cir. 1999); *Natsource LLC v. Paribello*, 151 F. Supp. 2d 465, 469 (S.D.N.Y. 2001).

17. The Court finds that EyeWonder has demonstrated irreparable harm in the absence of injunctive relief, because Abraham has already solicited three of EyeWonder's

employees, and the evidence indicates that Mr. Abraham intends to solicit on Eyeblaster's behalf customers of EyeWonder.

18.     Furthermore, Mr. Abraham agreed that monetary remedies are inadequate and that EyeWonder is entitled to injunctive relief in the event of a breach or threatened breach of his non-solicitation covenants. Agreement § 7. Such a contractual acknowledgment supports a finding of irreparable harm. *See Global Telesys., Inc. v. KPNQwest, N.V.*, 151 F. Supp. 2d 478, 482 (S.D.N.Y. 2001); *see also N. Atl. Instruments*, 188 F.3d at 49; *Ticor*, 173 F.3d at 69.

19.     The contractual choice of New York law in the Agreement will be enforced by this Court. New York follows the "substantial relationship" test under the *Restatement (Second) of Conflict of Law* § 187. Under this test, a contractual choice-of-law clause will be enforced unless either "(a) the chosen state has no substantial relationship to the parties . . . or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state." *Estee Lauder Co. v. Batra*, 430 F. Supp. 2d 158, 170 (S.D.N.Y. 2006) (quoting Resta*tement (Second) of Conflict of Law* § 187).

20.     Here, New York has a substantial relationship to the parties, given that EyeWonder's primary sales office is located in New York, Mr. Abraham was directly supervised by EyeWonder's Senior Vice President of Sales (Michael Rosner) based in New York, and Mr. Abraham now works for a direct competitor headquartered in New York. New York has a "strong interest in protecting companies doing business here," and no other state has a "materially greater interest" in this dispute than does New York. *See Batra*, 430 F. Supp. 2d at 173-74.

21.     Under New York law, restrictive covenants will be enforced where the restrictions are reasonably limited in terms of geography and time and enforcement is necessary to protect a

legitimate interest of the employer, such as the protection of trade secrets, confidential customer information, or an employer's client base. *See BDO Seidman v. Hirshberg*, 712 N.E.2d 1220, 1223 (N.Y. 1999). Additionally, "New York recognizes the enforceability of covenants not to solicit employees." *Global Telesys.*, 151 F. Supp. 2d at 482. In this case, injunctive relief is necessary to prevent the loss of EyeWonder's customer and employee relationships.

22.    Mr. Abraham has accepted employment with a direct competitor of EyeWonder and refused to agree not to solicit on Eyeblaster's behalf specific customers identified by EyeWonder as customers (a) for whom Mr. Abraham was responsible or (b) as to whom he possessed confidential information. Such solicitation would be a direct violation of the non-solicitation of customers clause set out in Section 6(e) of the Agreement.

23.    The non-solicitation clauses in the Agreement are reasonably limited in time and scope. Furthermore, EyeWonder does not here seek an injunction prohibiting Mr. Abraham from working for Eyeblaster. EyeWonder only seeks an injunction prohibiting him from soliciting – pending a final ruling in arbitration – customers he personally serviced, or the solicitation of which he directly supervised, during the time he was employed by EyeWonder. Additionally, in further discussions with Mr. Abraham's counsel, EyeWonder's counsel has agreed to reduce the list of EyeWonder customers that it would insist Mr. Abraham not solicit pending arbitration from 52 to 42. Accordingly, EyeWonder's request for injunctive relief is narrowly tailored to protect EyeWonder's legitimate business interests.

24.    EyeWonder has demonstrated a likelihood of success on the merits of its claims concerning Mr. Abraham's breach or threatened breach of the non-solicitation of employees clause (Section 6(d)) and the non-solicitation of customers clause (Section 6(e)) .

25. Additionally, there is a sufficiently serious question going to the merits combined with a balance of hardships that tips decidedly in EyeWonder's favor. EyeWonder does here not seek an order preventing Mr. Abraham from working for Eyeblaster, and Mr. Abraham has submitted no evidence showing that, should he be restrained from soliciting EyeWonder's employees and customers pending arbitration, that his employment with Eyeblaster would be jeopardized.

### III.  INJUNCTION

26. Accordingly, the Court hereby ENJOINS and RESTRAINS Mr. Abraham and all those in active concert and participation with him, and each of them who receives notice directly or otherwise of this injunction, and until such time as this matter may be resolved in arbitration, as follows:

  a. to refrain from employing or soliciting for employment, for himself or for or on behalf of any other party, any EyeWonder employee who was employed by EyeWonder during the six-month period immediately before the termination of Mr. Abraham's employment; and

  b. to refrain from soliciting, directly or by assisting others, the 42 specific customers on the list prepared by EyeWonder's counsel and disclosed to Mr. Abraham's counsel, a copy of which is attached hereto as Exhibit A.

SO ORDERED this ___ day of May, 2008, New York, New York.

                 _____
                 United States District Judge