

**KILPATRICK STOCKTON LLP**

Attorneys at Law

Suite 2800  1100 Peachtree St.
Atlanta GA 30309-4530
t 404 815 6500  f 404 815 6555
www.KilpatrickStockton.com

direct dial 404 815 6467
direct fax 404 541 3133
JBogan@KilpatrickStockton.com

June 4, 2008

**VIA FACSIMILE**

The Honorable George B. Daniels
United States District Judge
United States District Court
  for the Southern District of New York
500 Pearl Street, Room 630
New York, New York  10007

    Re:    *EyeWonder, Inc. v. John Abraham*, No. 08 Civ. 3579 (GBD) (RLE)

Dear Judge Daniels:

    On behalf of EyeWonder, Inc. ("EyeWonder"), I respectfully submit this response to Mr. Abraham's latest "letter brief" to the Court, faxed yesterday afternoon (on June 3).

    Mr. Abraham's assertions that EyeWonder "did not negotiate" with him are false. To summarize, on May 14, the Court entered a standing order precluding Mr. Abraham from contacting any of the 52 customers on EyeWonder's initial customer list, pending entry of a stipulated order or a preliminary injunction. The parties conferred telephonically on May 15, and on the following day, May 16, Mr. Abraham's counsel forwarded a proposal to EyeWonder by e-mail identifying only 16 customers he would agree not to solicit. EyeWonder responded by telephone and promised to, and did, respond in writing the next business day. That response addressed Mr. Abraham's factual contentions in detail and offered, "in the spirit of compromise," to eliminate 10 of the 52 customers from EyeWonder's initial customer list.

    Virtually simultaneously with EyeWonder's transmission of its promised written response on May 19 to Mr. Abraham's counsel, Mr. Abraham submitted a five-page letter brief (plus attachments), stating to the Court that EyeWonder had refused to negotiate with Mr. Abraham, and urging the Court to reconsider its interim injunction. As an initial matter, the Court did not, as Mr. Abraham's counsel suggests, direct the parties to report back to the Court by the close of business on Monday, May 19. *See, e.g.*, Transcript, at 32 ("[Y]ou can have as much time as you want to work it out"); *see also id.* at 39 (suggesting that parties

US2008 313550.3

ATLANTA  AUGUSTA  CHARLOTTE  LONDON  NEW YORK  RALEIGH  STOCKHOLM  WASHINGTON  WINSTON-SALEM

The Honorable George B. Daniels
June 4, 2008
Page 2

should be able to determine whether they can agree by "sometime next week at the latest"). To the contrary, the Court anticipated that it might take more time for the parties to discuss a stipulation, and the Court also recognized that the parties might not reach an agreement at all, in which event EyeWonder was directed to submit a proposed preliminary injunction for review by the Court. *See id.* at 32-33, 39. Therefore, to the extent that there was any breakdown in negotiations, it was caused by Mr. Abraham not waiting for the response that EyeWonder committed to (and did) deliver, and his unilateral request to the Court to dissolve the standing order and deny any injunctive relief to EyeWonder.

Mr. Abraham's May 19 letter confirmed that he had no real intention of negotiating with EyeWonder and that he had every intention of challenging the Court's ruling (which he asserts was error). EyeWonder submitted a short response on May 20, showing the Court that it had attempted promptly to negotiate a stipulation with Mr. Abraham, and then, in a letter to the Court dated May 22, EyeWonder devoted significant effort to responding to Mr. Abraham's contentions, including the new legal authorities and factual assertions cited in his letter (EyeWonder's response also included a proposed preliminary injunction order for the Court's review and consideration).

Against this background, Mr. Abraham submitted a letter to EyeWonder on May 22, which simply rejected EyeWonder's May 19 offer, repeated that Mr. Abraham was willing to refrain from soliciting only the 16 customers identified in his initial offer, and described EyeWonder's reluctance to agree to his offer as refusing to negotiate. Moreover, given that he had challenged the Court's interim ruling and that EyeWonder had submitted a proposed form of a preliminary injunction order, Mr. Abraham could not have expected EyeWonder to continue to "negotiate against itself" and unilaterally eliminate customers from its list.

The second page of Mr. Abraham's letter raises yet another new challenge to an interim injunction pending arbitration. As an initial matter, EyeWonder must protest Mr. Abraham's *seriatim* presentation of new facts and legal theories via "letter briefs" to the Court. Such substantive requests for relief are not appropriately presented by letter, but rather by requests seeking leave to make additional submissions to the Court.

In any event, Mr. Abraham's latest claim – that he was "induced" to sign the contract by representations by EyeWonder that the restrictive covenants were not enforceable – fares no better than his prior litany of objections and was, in fact, rejected by the Court at the May 14 hearing. For the record, EyeWonder denies Mr. Abraham's statement that he was fraudulently induced to sign anything, and will gladly submit a declaration to that effect if desired by the Court. In EyeWonder's view, however, the preliminary injunction record was closed by the time the parties argued EyeWonder's preliminary injunction motion to the

The Honorable George B. Daniels
June 4, 2008
Page 3

Court. In the absence of a directive from the Court, EyeWonder does not consider it appropriate for the parties to continue submitting evidence.

Moreover, as explained in one of the authorities cited by Mr. Abraham, *Concord Finance Corp. v. Wing Fook, Inc.*, No. 96 CIV. 5293 (DLC), 1997 WL 375679, *4 (S.D.N.Y. July 7, 1997), a claim of "promissory fraud" requires specific allegations (and ultimately evidence) that the speaker made a specific representation about future performance of a contract that conflicted with a "preconceived and undisclosed intention of not performing it." No such allegations (or evidence) have been presented by Mr. Abraham here.

Moreover, as *Concord* further explains, a promissory fraud claim fails where the alleged representation is specifically contradicted by written provisions within the contract. 1997 WL 375679, at *5. Here, the Agreement includes not only an "Entire Agreement" clause (disclaiming "all prior discussions and agreements between the parties"), but also an express provision that any failure to enforce any provision of the Agreement at any time shall not be construed as a waiver to enforce a contractual provision in the future. Agmt. ¶ 11 (failure to enforce shall not waive future enforcement).

It is unfortunate that Mr. Abraham has initiated this series of correspondence with the Court. Given that the parties have been unable to negotiate a resolution of this dispute, we respectfully submit that the proper course is, as the Court directed at the May 14 hearing, for the Court to review the proposed "Order Granting Plaintiff's Motion for Preliminary Injunction in Aid of Arbitration" submitted by EyeWonder on May 22. We hope that this letter is the last word that this Court receives from counsel for the parties in this matter.

Best regards,

James F. Bogan III

cc: Jerome F. Connell Jr., Esq.
Joel L. Finger, Esq.