JOEL L. FINGER
ERIC D. WITKIN
LITTLER MENDELSON
A Professional Corporation
Attorneys for Defendant
    John Abraham
900 Third Avenue, 20th Floor
New York, NY 10022
212.583.9600

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EYEWONDER, INC.,

              Plaintiff,

    -against-

JOHN ABRAHAM,

              Defendant.

Civil Action No. 08 CV 3579 (GBD)

ECF CASE

ORAL ARGUMENT REQUESTED

## DEFENDANT'S MEMORANDUM OF LAW (1) IN OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS AND (2) IN SUPPORT OF <u>DEFENDANT'S CROSS-MOTION FOR A STAY OF ARBITRATION</u>

Joel L. Finger
Eric D. Witkin
LITTLER MENDELSON, P.C.
900 Third Avenue, 20th Floor
New York, New York 10022
(212) 583-9600
Attorneys for Defendant
    John Abraham

TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ................................................................................. ii

PRELIMINARY STATEMENT ........................................................................... 1

STATEMENT OF FACTS .................................................................................. 2

A.    Background ................................................................................................ 2

B.    Procedural Posture .................................................................................... 4

ARGUMENT ...................................................................................................... 5

I.    THE COURT MUST DECIDE WHETHER THERE IS A VALID
      ARBITRATION  AGREEMENT BETWEEN THE PARTIES........................ 5

II.   THE COURT MUST RESOLVE THE CHOICE OF LAW ISSUE BEFORE
      DECIDING WHETHER THERE IS A VALID AGREEMENT TO ARBITRATE ........ 7

III.  THE ARBITRATION CLAUSE IS INVALID UNDER CALIFORNIA LAW............. 12

A.    The Dispute Resolution Provision is Procedurally Unconscionable ................ 13

B.    The Dispute Resolution Procedure is Substantively Unconscionable ............. 15

      1.    The Cost-Splitting Provision is Unconscionable ............................... 15

      2.    The Limitations on Discovery and Relief are Unconscionable ........... 16

      3.    The Provision Allowing Only EW Access to Courts is Unconscionable ........... 17

IV.   PLAINTIFF'S MOTION TO DISMISS MUST BE DENIED BECAUSE THE
      COUNTERCLAIMS ARE NOT SUBJECT TO ARBITRATION. ................. 17

V.    THE COURT MUST STAY THE ARBITRATION BECAUSE THE
      ARBITRATION PROVISION IS INVALID. .............................................. 18

CONCLUSION................................................................................................... 19

**TABLE OF AUTHORITIES**

## CASES

*Armendariz v. Found. Health Psychcare Serv.*,
   6 P.3d 669 (2000).................................................................... 12, 13, 15, 16

*Bar-Ayal v. Time Warner Cable Inc.*,
   03 CV 9905, 2006 WL 2990032 (S.D.N.Y. Oct. 16, 2006) ................................ 8

*Berger v. Cantor Fitzgerald Secs.*,
   942 F. Supp. 963 (S.D.N.Y. 1996) ............................................................ 7

*Brennan v. Bally Total Fitness*,
   153 F. Supp. 2d 408 (S.D.N.Y 2001).......................................................... 6

*Brennan v. Bally Total Fitness*,
   198 F. Supp. 2d 377 (S.D.N.Y. 2002)................................................ 7, 11, 17,18

*Buckeye Cash Checking, Inc. v. Cardegna*,
   546 U.S. 440 (2006)............................................................................ 5

*Bus. Incentives Co. v. Sony Corp. of Am.*,
   397 F. Supp. 62 (S.D.N.Y. 1975) ............................................................. 9

*Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel*,
   346 F.3d 360 (2d Cir. 2003)................................................................ 7, 8

*Cargill, Inc. v. Charles Kowsky Res., Inc.*,
   949 F.2d 51 (2d Cir. 1991).................................................................... 8

*Circuit City Stores, Inc. v. Adams*,
   279 F.3d 889 (9th Cir. 2002) ........................................... 8, 12, 13, 15, 16, 17

*Cole v. Burns Intern. Sec. Srv.*,
   105 F.3d 1465 (D.C. Cir. 1997)............................................................. 15

*Doctor's Assoc., Inc. v. Cassarotto*,
   517 U.S. 681 (1996)........................................................................ 7, 12

*Fed. Express Corp. v. Fed. Espresso, Inc.*,
   201 F.3d 168 (2d Cir. 2000)................................................................. 18

*First Options of Chicago, Inc. v. Kaplan*,
   514 U.S. 938 (1995)....................................................................... 5, 12

*Gelow v. Cent. Pac. Mortage Corp.*,
   Civ. S-07-1988, 2008 U.S. Dist. LEXIS 43925 (E.D. Ca. June 3, 2008) .............. 15

*Gilmer v. Interstate/Johnson Lane Corp.*,
   500 U.S. 20 (1991)............................................................................ 16

*Hartford Fire Ins. Co. v. Orient Overseas Container Lines (UK) LTD.*,
   230 F.3d 549 (2d Cir. 2000).................................................................... 8

*Ingle v. Circuit City Stores, Inc.*,
   328 F.3d 1165 (9th Cir. 2003). ....................................................... 13, 15, 16

# TABLE OF AUTHORITIES

PAGE

*Int'l Minerals & Res., S.A. v. Pappas,*
   96 F.3d 586 (2d Cir. 1996)..................................................................................... 8

*Klaxon Co. v. Stentor Elec. Mfg. Co.,*
   313 U.S. 487 (1941).............................................................................................. 8

*Nagrampa v. MailCoups, Inc.*
   469 F.3d 1257 (9th Cir. 2006) ........................................................................ 14, 15

*Opals on Ice Lingerie v. Body Lines, Inc.,*
   320 F.3d 362 (2d Cir. 2003).................................................................................. 7

*Penrod Management Group v. Stewart's Mobile Concepts, LTD.,*
   07 Civ. 10649, 2008 U.S. Dist. LEXIS 11793 (S.D.N.Y. Feb. 16, 2008) ............ 18

*Pokorny v. Quixtar, Inc.,*
   07-00201, 2008 U.S. Dist. LEXIS 28439 (N.D. Cal. Mar. 31, 2008) ................... 15

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.,*
   388 U.S. 395 (1967)................................................................................5, 6, 7, 18

*Production Resource Group, L.L.C. v. Oberman,*
   03 Civ. 5366, 2003 WL 22350939 (S.D.N.Y. Aug. 27, 2003) .......................... 9, 11

*S.G. Cowen Secs. Corp. v. Messih,*
   00 Civ. 3228, 2000 WL 633434 (S.D.N.Y. May 17, 2000), *aff'd,* 224 F.3d 79
   (2d Cir. 2000)................................................................................................... 9, 12

*Stirlen v. Supercuts, Inc.,*
   51 Cal. App. 4th 1519 (1997) ............................................................................... 13

*Threlkeld & Co. v. Metallgesellschaft Ltd.,*
   923 F.2d 245 (2d Cir. 1991)................................................................................. 14

*Triad Fin. Establishment v. Tumpane Co.,*
   611 F.Supp. 157 (N.D.N.Y. 1985).................................................................... 9, 11

*Zurich Ins. Co. v. Shearson Lehman Hutton, Inc.,*
   84 N.Y.2d 309 (1994) ........................................................................................... 9

## STATUTES

9 U.S.C. § 2................................................................................................................ 7

9 U.S.C. § 4.............................................................................................................. 18

## PRELIMINARY STATEMENT

Defendant John Abraham ("Defendant" or "Abraham") respectfully submits this Memorandum of Law (1) in opposition to the July 10, 2008 motion of Plaintiff EyeWonder, Inc. ("Plaintiff" or "EW") to dismiss Defendant's counterclaims ("Motion")[1] and (2) in support of Defendant's instant Cross-Motion for a Stay of the Arbitration ("Cross-Motion") initiated by Plaintiff against Defendant at the American Arbitration Association ("AAA") in Atlanta, Georgia, AAA No. 30 116 00331 08 entitled *EyeWonder, Inc. and John Abraham* ("Arbitration"). For the reasons stated herein, the Court should deny Plaintiff's Motion and grant Defendant's Cross-Motion for a Stay of the Arbitration.

Plaintiff's Motion seeks dismissal of Defendant's counterclaims on the ground that they are arbitrable pursuant to EW's Employment Agreement with Defendant ("Agreement"; Exhibit A to EW's Complaint herein).[2] The Motion incorrectly assumes that the dispute resolution provision (the "arbitration clause" or "arbitration provision") of the Agreement is valid and enforceable. However, the arbitration provision is invalid and unenforceable, as Defendant has pleaded in its Amended Answer and Counterclaims ("Ans." ¶¶ 84-85).

Defendant, a California resident and citizen, was hired and employed by EW in California. After working for EW in California for less than a year, Defendant left EW and began working in California for another company. EW then commenced both this action and the Arbitration. Under California law, the Agreement's arbitration provision is unenforceable because it is both procedurally and substantively unconscionable, *inter alia*, because it is a contract of adhesion that requires Defendant to bear half of the cost of the arbitration. Although

---

[1] Plaintiff's Motion papers include a "Motion" ("P. Mot.") and a Memorandum of Law ("P. Mem.") but no Notice. Defendant's counterclaims are included in his June 20, 2008 Amended Answer and Counterclaims ("Ans.") attached as Exhibit 2 to the August 4, 2008 Affidavit of Eric D. Witkin ("Witkin Aff.") submitted herewith.

[2] EW's Complaint ("Cplt.") is Witkin Aff. Exhibit 1.

the Agreement states that it is governed by New York law, the Court in this diversity case should

conduct a choice-of-law analysis because Defendant alleges that the arbitration clause is invalid.

This analysis must be conducted pursuant to the choice-of-law rules of the state in which the

district court sits.  Application of New York's choice-of-law rules in this case mandates a finding

that California law applies to invalidate the arbitration provision.

Once the Court determines that the arbitration clause is invalid and unenforceable, it

should: (1) deny Plaintiff's Motion because the Counterclaims are not arbitrable; and (2) stay the

Arbitration that is about to commence despite Defendant's objections to it.

## STATEMENT OF FACTS

### A.    Background[3]

In early 2007, while employed in Los Angeles by National Lampoon's on-line magazine,

Defendant was solicited for employment by Michael Rosner, Vice President of Global Sales for

EW, to become director of sales for EW's Southwest region, which included Southern California

(Abraham Decl. ¶ 2).  Rosner advised Defendant that he needed to replace the current sales

director in the Los Angeles market (*id.*).  EW is one of a number of companies that provide video

streaming and "rich media" services to internet advertisers (*id.* ¶ 4).

Defendant is a life-long California resident and citizen (*id.* ¶ 7).  He was a California

resident and citizen throughout his pre-employment discussions with Rosner and his subsequent

employment with EW (*id.*).  Rosner and Defendant discussed the economic terms of Defendant's

employment with EW over the telephone and in person in May 2007 (*id.* ¶ 8).  When speaking

on the telephone, Defendant was always in California (*id.*).  Rosner flew to California to discuss

---

[3] The facts relevant to this Cross-Motion are based on the pleadings and Defendant Abraham's May 13, 2008 Declaration submitted to the Court in opposition to Plaintiff's motion for a preliminary injunction ("Abraham Decl."; Witkin Aff. Ex. 3).

the final details of Defendant's employment and compensation with EW (*id.*). All the economic

terms of Defendant's employment with EW were negotiated while Defendant was in California

(*id.*).

On or about June 1, 2007, Defendant received, via e-mail, an offer letter from Jerome

Connell, the General Counsel of EW (*id.* ¶ 9). The offer letter set forth the terms of Defendant's

employment with EW, stated that it was "contingent upon you completing and signing

EyeWonder's standard form of employment agreement" but made no mention that Defendant

would be required to agree to an arbitration clause or restrictive covenants as a condition of

employment (*id.* ¶ 10; Cplt. Ex. B). On or about June 1, 2007, Defendant signed the offer letter

and e-mailed it back to Connell and thereupon commenced his employment with EW (*id.*).

Later in June 2007, *after* Defendant commenced employment with EW, EW flew

Defendant to Atlanta, Georgia to meet its executive officers, including Connell *(id.* ¶ 12).

Connell presented Defendant with a "standard form employment agreement," which included an

unconscionable dispute arbitration provision and restrictive covenants (Cplt. Ex. A Sec. 8).

After signing the Agreement in Atlanta, Defendant was flown to New York to visit EW's

New York City sales offices, where Rosner's office is located (*id.* ¶ 16). That was the *only* visit

Defendant made to New York on EW business during the whole nine months of employment

with EW (*id.*).

Defendant returned to California after his very brief New York visit (*id.*). He performed

virtually all of his duties for EW in its Los Angeles and San Francisco offices (*id.* ¶ 21).

Defendant never traveled to New York for EW business after his sole initial visit there (*id.*).

In early 2008, Rosner presented Defendant with a new compensation plan for 2008 which

unilaterally set higher sales and billing targets and offered lower payouts (*id.* ¶ 25). Defendant

was required to sign the new 2008 compensation plan as a condition of continued employment with EW, but Defendant declined to do so (*id.*).  Instead, Defendant looked for other employment in which he could use his skills, expertise and contacts that he developed over the decade prior to working for EW (*id.* ¶ 26).  Ultimately, Defendant accepted employment with Eyeblaster, Inc., a competitor of EW, in March 2008 and tendered his resignation with EW (*id.*).

## B.    **Procedural Posture**

On April 14, 2008, Plaintiff commenced this action by filing a "Verified Complaint For Injunctive Relief in Aid of Arbitration" ("Complaint" or "Cplt."; Witkin Aff Ex. 1).  By order to show cause issued on May 9, 2008, this Court scheduled oral argument on Plaintiff's request for injunctive relief to restrain Defendant, *inter alia,* from working for his current employer and violating other restrictive covenants in the Agreement.  Defendant filed opposition to Plaintiff's motion on May 13, 2008.  On May 14, 2008, this Court heard oral argument on Plaintiff's application and orally issued a temporary restraining order on that date.  The Court issued a preliminary injunction on June 9, 2008.  Defendant filed a Notice of Appeal from the injunction on June 16, 2008, and the U.S. Court of Appeals granted Defendant's motion to hear his appeal on an expedited basis.  Oral argument is scheduled for September 22, 2008.

Defendant filed an Answer and Counterclaims on June 11, 2008 and an Amended Answer and Counterclaims as of right on June 20, 2008 (Witkin Aff Ex. 2).  Defendant's June 20, 2008 Amended Answer asserted as the Eighteenth Defense: "The arbitration provisions of the Employment Agreement (Cplt. Ex. A) are invalid and unenforceable because, *inter alia*, the Employment Agreement is an adhesive contract and its arbitration provisions are both procedurally and substantively unconscionable as a matter of law." (Ans. ¶¶ 84-85).  This defense was not before the Court on Plaintiff's application for injunctive relief, and the Court's June 9, 2008 preliminary injunction and Memorandum and Order did not address the issue raised

by this defense.

On July 10, 2008, Plaintiff filed its Motion to Dismiss Defendant's Counterclaims on the grounds that they are subject to binding arbitration. On July 31, 2008, after rejecting Defendant's objections to the manner in which it selected an arbitrator, AAA scheduled a preliminary hearing in the Arbitration for August 4, 2008 (Witkin Aff. Ex. 4). Unless the Arbitration is stayed by this Court, Defendant will be forced to participate in the Arbitration and perhaps pay half of its expenses or risk an adverse ruling by default if he refuses to participate.

Defendant hereby opposes the Motion and submits this Cross-Motion on the grounds that the *arbitration clause* in the Agreement is invalid. For the reasons stated below, the Court should deny Plaintiff's Motion and grant Defendant's Cross-Motion and stay the Arbitration.

## ARGUMENT

I.   **THE COURT MUST DECIDE WHETHER THERE IS A VALID ARBITRATION AGREEMENT BETWEEN THE PARTIES.**

The Agreement at issue herein states: "The United States Arbitration Act and federal arbitration law shall govern the interpretation, enforcement and proceedings pursuant to the arbitration clause set forth in this Section 8." (Cplt. Ex A at § 8(b)). Under the United States Arbitration Act ("FAA"), the general presumption is that the issue of arbitrability should be resolved by the courts. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944-945 (1995). Accordingly, the Court must determine whether the parties have a valid agreement to arbitrate.

Where, as here, a party challenges the validity *of an arbitration clause* governed by the FAA and contained in an employment agreement, the Court, not the arbitrator, must determine whether the arbitration clause is lawful. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967); *Buckeye Cash Checking, Inc. v. Cardegna*, 546 U.S. 440 (2006). Plaintiff agrees that this rule applies here (P. Mem. 5). Plaintiff cites *Buckeye*'s acknowledgement that a

challenge to an arbitration clause itself must be resolved by a court (P. Mem. 5). As Plaintiff acknowledges, "an independent challenge aimed directly at the arbitration agreement itself and not the contract as a whole *does fall within a district court's jurisdiction*." *Brennan v. Bally Total Fitness*, 153 F. Supp. 2d 408, 414 (S.D.N.Y. 2001) (citing *Prima Paint*, 388 U.S. at 404) (emphasis supplied). That distinction is made because "arbitration clauses are, as a matter of law, 'separable' from the contracts in which they are embedded." *Prima Paint*, 388 U.S. at 402. This Cross-Motion is just such an independent challenge aimed at the Agreement's arbitration provision.

Plaintiff incorrectly alleges (P. Mem. 6) that Defendant's "Counterclaims do not contain any allegation that the arbitration clause *itself* is invalid. Rather, Mr. Abraham alleges that the contract as a whole is unenforceable: he argues that the parties' Agreement is procedurally and substantively unconscionable . . and that the contract was procured by fraud and is therefore unenforceable." (*Id.*) Plaintiff then states that "these claims and arguments must be addressed to and ruled upon by the arbitrator." (*Id.*)

Plaintiff's argument completely overlooks and thus fails to address Defendant's defense, incorporated by reference in the Counterclaims, challenging the validity of the arbitration clause itself, *not* the entire Agreement.[4] Indeed, Defendant's Eighteenth Defense states:

> The arbitration provisions of the Employment Agreement (Cplt. Ex. A) are invalid and unenforceable because, *inter alia*, the Employment Agreement is an adhesive contract and its arbitration provisions are both procedurally and substantively unconscionable as a matter of law.

(Ans. ¶¶ 84-85). Defendant's Counterclaims are asserted in this litigation as Defendant contends that they are not subject to arbitration because the arbitration clause is invalid. Defendant's

---

[4] On this Cross-Motion, Defendant challenges the arbitration agreement itself, not the Agreement as a whole. As arbitration clauses are separable from contracts within which they form a part, the validity of the entire Agreement, including its restrictive covenants, would not be determined by a ruling on Defendant's Cross-Motion.

counterclaims, incorporating by reference all of the defenses asserted in Defendant's Answer, are not subject to arbitration, but rather, are within the jurisdiction of this Court.

For these reasons, the Court must decide whether the parties have a valid agreement to arbitrate. *Brennan v. Bally Total Fitness*, 198 F. Supp. 2d 377, 381 (S.D.N.Y. 2002) (before compelling arbitration, "a district court must first consider whether there is an agreement to arbitrate."). *See also Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel*, 346 F.3d 360, 365 (2d Cir. 2003); *Berger v. Cantor Fitzgerald Secs.*, 942 F. Supp. 963, 965 (S.D.N.Y. 1996).

The Court's analysis must include an application of "generally accepted principles of contract law to determine whether parties have agreed to arbitrate." *Brennan*, 198 F. Supp. 2d at 381. "For example, an agreement to arbitrate that was the product of economic duress or coercion is invalid. Similarly, a party will not be bound by an arbitration agreement that is unconscionable." *Id.* These principles are found in 9 U.S.C. § 2, which states that an agreement to arbitrate shall be "valid, irrevocable, and enforceable, *save upon such grounds as exist at law or in equity for the revocation of any contract.*" (emphasis supplied). *See also Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 686-687 (1996). Indeed, the purpose of the FAA was "to make arbitration agreements as enforceable as other contracts, but not more so." *Opals on Ice Lingerie v. Body Lines, Inc.*, 320 F.3d 362, 369 (2d Cir. 2003) (citing *Prima Paint Corp.*, 388 U.S. at 404 n. 12). Therefore, before deciding Plaintiff's Motion to dismiss Defendant's Counterclaims on the ground that they are subject to arbitration, the Court must first address Defendant's defense that the arbitration clause is invalid and unenforceable.

## II. THE COURT MUST RESOLVE THE CHOICE OF LAW ISSUE BEFORE DECIDING WHETHER THERE IS A VALID AGREEMENT TO ARBITRATE.

Defendant contends that the Court must apply California law in analyzing the validity of the arbitration agreement notwithstanding the Agreement's New York choice-of-law provision.

Plaintiff has contended that New York law applies to this dispute.[5]  A genuine conflict-of-law issue thus exists in the instant case because the parties disagree about which state's law should apply, because there is a difference between California law and New York law concerning the validity of arbitration clauses in general, and because the difference may matter.  *Compare Circuit City Stores v. Adams*, 279 F.3d 889, 893-895 (9th Cir. 2002) *with Bar-Ayal v. Time Warner Cable Inc.*, 03 CV 9905, 2006 WL 2990032, at **14-16 (S.D.N.Y. Oct. 16, 2006).  *See also* Point III, *infra*.[6]  Where a party raises a choice-of-law issue in a dispute concerning the validity of an arbitration clause, the Court must resolve the choice-of-law issue prior to deciding whether the parties entered into a valid agreement to arbitrate.  *Cap Gemini*, 346 F.3d at 366.

Federal courts in diversity cases must apply the law of the forum state in analyzing preliminary choice-of-law questions.  *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941).  Accordingly, New York's choice-of-law analysis applies in determining whether California law or New York law should govern the validity of the arbitration clause.

"New York law is clear that in cases involving a contract with an express choice-of-law provision . . . a court is to apply the law selected in the contract *as long as* the state selected has sufficient contacts with the transaction."  *Hartford Fire Ins. Co. v. Orient Overseas Container Lines (UK) LTD.*, 230 F.3d 549, 556 (2d Cir. 2000) (emphasis supplied).  Indeed, under New York law, a court will *not* honor, but rather will "disregard the parties' choice when 'the most significant contacts' with the matter in dispute are in another state."  *Cargill, Inc. v. Charles Kowsky Res., Inc.*, 949 F.2d 51, 55 (2d Cir. 1991); *see also Int'l Minerals & Res., S.A. v. Pappas*,

---

[5]  *See* page 12 of Plaintiff's Memorandum of Law in support of its motion for injunctive relief.

[6]  Although Defendant argued in opposing Plaintiff's preliminary injunction motion that there is a conflict-of-law issue present in the instant case, the Court did not address Defendant's argument in the Court's June 9, 2008 Memorandum and Order.   Defendant thus renews that argument here.  *See* Defendant's Memorandum of Law in Opposition to Plaintiff's Application for a Preliminary Injunction at 10-12.

96 F.3d 586, 592 (2d Cir. 1996).

New York courts are not bound by a contractual choice-of-law provision if application of the chosen state's law would be "contrary to any fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue at bar, and which would be the state of the applicable law in the absence of an effective choice of law by the parties." *Production Resource Group, L.L.C. v. Oberman*, 03 CIV. 5366, 2003 WL 22350939, at * 8 (S.D.N.Y. Aug. 27, 2003) (citing *Bus. Incentives Co. v. Sony Corp. of Am.*, 397 F. Supp. 62, 67 (S.D.N.Y. 1975) (applying California law despite the parties' choice of New York law)). *See also S.G. Cowen Secs. Corp. v. Messih*, 00 Civ. 3228, 2000 WL 633434 (S.D.N.Y. May 17, 2000), *aff'd*, 224 F.3d 79 (2d Cir. 2000) (applying California law despite parties' agreement to New York law).

When determining which state's law should apply, New York courts "weigh the relative interests of the states involved to determine which state has the greatest interest at stake in the absence of a contrary statutory directive." *Triad Fin. Establishment v. Tumpane Co.*, 611 F.Supp. 157, 162 (N.D.N.Y. 1985). Additionally, the Court must also consider which forum has the most significant relationship with the parties and transaction. *Id. See also Zurich Ins. Co. v. Shearson Lehman Hutton, Inc.*, 84 N.Y.2d 309, 317 (1994). "Thus, New York courts do not consider themselves bound by a forum selection clause if its application would override the policies of a state with a materially greater interest in the controversy." *Triad Fin. Establishment*, 611 F. Supp. at 162.

"The New York Court of Appeals has stated that a 'center of gravity test' or 'grouping of contacts' is the appropriate analytical approach to choice of law questions in contract cases." *SG Cowen Secs. Corp.*, 2000 WL 633434, at *3 (citing *Zurich Ins. Co.*, 84 N.Y.2d at 317).

According to this approach, courts consider "the place of contracting, the places of negotiation and performance; the location of the subject matter; and the domicile or place of business of the contracting parties." *Id.*

In the instant case, it is clear that the underlying dispute and the parties have the most significant contacts with California and not New York, and that California has the greatest interest at stake, given the following facts:

- Abraham is a lifelong resident and citizen of California. Abraham Decl. ¶ 7.

- Before, during and since employment with EW, Abraham has continued to live and work in California. *Id.* ¶¶ 3, 21, 27.

- The economic terms of Abraham's employment with EW were negotiated over the telephone and in person in California. *Id.* ¶ 8.

- During his tenure with EW, Abraham was based in California, and he spent no time in New York, save for a single visit at the outset of his employment in June 2007. *Id.* ¶ 21.

- Abraham worked almost exclusively in California, dealing with EW's business in its West Region, including California. *Id.*

- Abraham only supervised employees in California. *Id.* ¶ 18.

- The restrictive covenants at issue were drafted by EW to focus solely on the Internet advertising economy in and around Los Angeles and San Diego. *Id.* ¶ 15; Employment Agreement ¶ 6.

- Abraham's work for his new employer is also based in California. Abraham Decl. ¶ 27.

- EW is a Delaware Corporation (Cplt. ¶ 2).

- EW's principal place of business is in Atlanta, Georgia (Cplt. ¶ 2).

California has a greater interest than New York in the arbitration clause because Defendant is a long-time California resident and citizen, continues to live and work in California, and Plaintiff reached out to Defendant while he was working and living in California to offer him a job at EW in its California office. Moreover, Defendant was solicited in California for employment in California by an out-of-state manager of EW. After negotiating the economic terms of his employment in California, resigning from employment with a California employer, and signing an offer letter and commencing employment with EW in California, Defendant was flown to Atlanta and presented with a standard form employment agreement on a "take-it-or-leave-it basis." That Agreement contains an arbitration provision that is unconscionable under California law. California has a greater interest than New York in protecting its residents and citizens from employers like EW, who engaged in activity to avoid the application of California law. New York has no interest in the arbitration of this dispute. Indeed, Defendant had only one business trip to New York during his employment with EW. Moreover, the application of California law to the arbitration agreement does not violate any policy of New York. *Triad Fin. Establishment*, 611 F. Supp. 163-64. Indeed, the arbitration clause might be invalid under New York law as well. *See Brennan v. Bally Total Fitness*, 198 F. Supp. 2d 377 (granting stay of arbitration after finding arbitration provision unconscionable under New York law).

Given the overwhelming California contacts and the absence of any meaningful New York contacts, California has a materially greater interest than New York in resolving the issues of the validity of both the arbitration clause and the restrictive covenants. *See Production Resource Group*, 2003 WL 22350939, at *10 (California had greater material interest in validity of non-compete agreement because employee was a California resident, working in California

before and after leaving the employer's employ and spent far more time in California during his employment, despite fact that plaintiff's principal place of business was New York, that employee took a "few trips" to New York to discuss the terms of his employment with plaintiff, and that employment contract called for New York law to apply); *SG Cowen Securities Corp.*, 00 Civ. 3228, 2000 WL 633434, at*4 (applying California law to non-compete dispute where employee lived and was hired by employer to work in California, had previously worked for another California bank, and had executed the contract in California, notwithstanding that it was negotiated in both California and New York and employer's headquarters were in New York).

Accordingly, the Court must find that California has a greater interest in the parties' dispute and that, therefore, California law should determine the validity of the arbitration clause.

## III.     THE ARBITRATION CLAUSE IS INVALID UNDER CALIFORNIA LAW.

The dispute resolution clause in Section 8 of the Employment Agreement is unconscionable and therefore invalid under California law.   In determining the validity of agreements to arbitrate, federal courts "should apply ordinary state-law principles that govern the formation of contracts." *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889 (9th Cir. 2002) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).   "[G]eneral contract defenses such as fraud, duress, or unconscionability, grounded in state contract law, may operate to invalidate arbitration agreements." *Adams*, 279 F.3d at 892 (citing *Doctor's Assoc., Inc. v. Cassarotto*, 517 U.S. 681, 687 (1996)).

Under California law, a contract is unenforceable if it is both procedurally and substantively unconscionable. *Adams*, 279 F.3d at 893; *Armendariz v. Found. Health Psychcare Svcs., Inc.*, 6 P.3d 669, 690 (2000).   The arbitration provision herein is both procedurally and substantively unconscionable.   Therefore, the Court must find that it is not valid.

A.     **The Dispute Resolution Provision is Procedurally Unconscionable.**

The dispute resolution provision "is procedurally unconscionable because it is a contract of adhesion: a standard-form contract, drafted by the party with superior bargaining power, which relegates to the other party the option of either adhering to its terms without modification or rejecting the contract entirely." *Adams*, 279 F.3d at 893. *See also Stirlen v. Supercuts, Inc.*, 51 Cal. App. 4th 1519 (1997). Courts have found employment contracts oppressive where, as here, they are drafted by the employer and presented to the employee on a take-it-or-leave it basis. *Stirlen*, 51 Cal. App. 4th at 1532; *Adams*, 279 F.3d 889; *Armendariz*, 6 P.3d at 690 (noting that few applicants are in a position to refuse a job because of an arbitration agreement). That is precisely what occurred here. An adhesive contract is procedurally unconscionable even when the employee has had several days to review it before signing it. *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1172 (9th Cir. 2003). The circumstances that led to Defendant's signing the Agreement satisfy the elements of a contract of adhesion.

In *Stirlen*, Supercuts had employed Stirlen as its vice-president and chief financial officer for more than a year when he was terminated. Stirlen brought an action alleging that he was wrongfully discharged and sought a judicial declaration that an arbitration clause in his employment contract was unenforceable on the grounds of unconscionability. The Court found the arbitration clause an unconscionable contract of adhesion because Stirlen had no realistic ability to modify the terms of the contract, which were cast in generic and gender-neutral language, were presented to him *after* he accepted employment; he was advised that the standard provisions were not negotiable; and the contract was presented to him on a "take it or leave it" basis. *Stirlen*, 51 Cal. App. 4th at 1535.

Similarly here, Defendant, a California resident and citizen, was employed there by National Lampoon's on-line magazine when he was solicited by Michael Rosner, EW's Vice

President of Global Sales to become director of sales for EW's Southwest region, including Southern California, to replace the current sales director in the Los Angeles market. (Abraham Decl. ¶ 2). Defendant received an offer letter on June 1, 2007 containing economic terms, which he signed and on that same day commenced employment with EW (*id.* ¶¶ 8-9). After accepting the job and starting his employment with EW in California, Defendant was presented with EW's standard form contract that included the arbitration clause (*id.* ¶ 12). Defendant was not able to negotiate the terms of the Agreement or present it to an attorney for review (*id.* ¶¶ 13-14). Indeed, the Agreement, including the arbitration provision, was a "take or leave it" contract that Defendant could not leave because it was presented to him after he had already quit his job and commenced employment with EW. For these reasons, and based on *Stirlen*, the Court must find that the arbitration provision in the contract is an unconscionable contract of adhesion.

The fact that the arbitration clause herein is contained in an employment agreement does not detract from the fact that the arbitration clause *itself* is a contract of adhesion. Indeed, on this Cross-Motion, Defendant does not seek to invalidate the entire Agreement. Rather, Defendant seeks a ruling that the *arbitration clause* is invalid. When a party to an employment agreement challenges an arbitration clause as unconscionable, the Court will consider the arbitration clause separate and apart from the entire agreement. *Nagrampa v. MailCoups, Inc.* 469 F.3d 1257, 1271 (9th Cir. 2006) ("the federal court must decide claims attacking the validity of the arbitration provision, even if substantive state law requires an examination of the making of the entire contract as part of that analysis.") (collecting Circuit Court cases holding the same, including *Threlkeld & Co. v. Metallgesellschaft Ltd.*, 923 F.2d 245, 249 (2d Cir. 1991) (considering whether arbitration clause which was part of larger agreement was unconscionable)).

**B.**    **The Dispute Resolution Procedure is Substantively Unconscionable.**

The Court should also find that the arbitration provision is substantively unconscionable.

Indeed, California Courts require that:

> When an arbitration agreement is required by the employer as part of the employment contract, the agreement must contain five minimum elements in order to be lawful: (1) reference to a neutral arbitrator, (2) provision for more than minimal discovery, (3) requirement that award decision must be written, (4) provision for all of the types of relief that may be awarded by the court, and (5) it 'does not require employees to pay either unreasonable costs or any arbitrator's fees and expenses as a condition of access to the arbitration forum.'

*Gelow v. Cent. Pac. Mortgage Corp.*, Civ. S-07-1988, 2008 U.S. Dist. LEXIS 43925 (E.D. Cal. June 3, 2008) (citing *Armendariz v. Found. Health Psychcare Serv.*, 6 P.3d 669 (2000)).  *See also Cole v. Burns Intern. Sec. Srv.*, 105 F.3d 1465, 1482 (D.C. Cir. 1997).

**1.**    **The Cost-Splitting Provision is Unconscionable.**

That the arbitration provision requires Defendant to split the cost of the Arbitration is alone enough to render the arbitration clause substantively unconscionable.  *See Gelow*, 2008 U.S. Dist. LEXIS 43925, at **20-22; *Adams*, 279 F.3d at 894 ("This fee allocation scheme alone would render an arbitration agreement unenforceable.").  Such provisions favor the employer and discourage the employee from bringing his claims, especially where, as here, the employee must pay the fees even if he succeeds on the merits.  *Gelow*, 2008 U.S. Dist. LEXIS 43925, at * 21. This provision "blatantly offends basic principles of fairness." *Ingle*, 328 F.3d at 1177-78.[7]

Moreover, although the arbitration provision provides that each party is responsible for its own attorneys' costs, fees and expenses, it qualifies that with a proviso, "unless the arbitrators otherwise determine," thus exposing Defendant to the risk of having to pay EW's attorneys' fees. That too is unconscionable.  *See Pokorny v. Quixtar, Inc.*, 07-00201, U.S. Dist. LEXIS 28439, at

---

[7] The cost-splitting provision may also render the arbitration provision void on public policy grounds. *Nagrampa*, 469 F. 3d at 1292 (citing *Armendariz*, 6 P. 3d at 687-688).

\*\*57-59 (N.D. Cal. Mar. 31, 2008) (finding that a "loser pays" provision makes arbitration a much greater financial risk than litigation).

### 2.    The Limitations on Discovery and Relief are Unconscionable.

The arbitration provision here does not meet the minimal requirements set forth in *Gelow* and *Armendariz*. *See* Agreement, ¶ 8, Cplt. Ex. A. Indeed, the arbitration clause does not provide for more than minimal discovery, does not require that the award decision be written, does not allow for all types of relief that may be awarded by a court and it requires the employee to "share all costs of arbitration." *Id.*

The arbitration clause covers "[a]ny controversy or claim arising out of or relating to this Agreement, or the breach thereof, including but not limited to a claim based on or arising from an alleged tort." *Id.* For an arbitration clause to be lawful, it must allow for all types of relief that may be awarded by a court. But the arbitration clause here limits the relief available:

> The arbitrator shall have no authority to award punitive damages or any other damages not measured by the prevailing party's actual damages, nor shall any party seek punitive damages relating to any matter arising from this Agreement in any other forum.

Agreement ¶ 8(a). Thus, not only does the arbitration provision limit Defendant's ability to seek punitive damages in an arbitral forum, it also limits his ability to seek punitive damages in *any* forum. Courts have invalided arbitration agreements that do not allow an employee to recover punitive damages that are permitted by statute on the grounds of substantive unconscionability. *Ingle*, 328 F.3d at 1178-79; *Adams*, 279 F.3d at 895. *See also Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28 (1991) (arbitral forum must allow employee to adequately pursue statutory rights). In fact, Defendant could pursue punitive damages in a judicial forum with respect to his Counterclaims founded in intentional tort, but the arbitration clause purports to limit this relief, not only in an arbitral forum, but in any forum. Thus, enforcing the arbitration

provision would prevent Defendant from seeking all of the relief that he would otherwise be entitled to pursue.  Accordingly, the limitation on punitive damages in arbitration clause at issue herein is substantively unconscionable.

### 3. The Provision Allowing Only EW Access to Courts is Unconscionable.

Moreover, the arbitration provision is one-sided in that it does not apply to "any action to prevent any violation or threatened violation of the covenants in Section 6." *See* ¶ 8(c) of the Agreement, Cplt. Ex. A.  Paragraph 6 of the Agreement provides for restrictive covenants that are only applicable to the employee, not the employer.  Therefore, the dispute resolution agreement allows the employer to file an action against the employee to enforce the restrictive covenants, but provides that all disputes the employee may have against the employer must be submitted to arbitration.  Such one-sided arbitration clauses have been struck down as substantively unconscionable. *Adams*, 279 F.3d at 893-894.

For the above reasons, the Court must find that the dispute resolution provision in the Agreement is both procedurally and substantively unconscionable and therefore invalid.

### IV. PLAINTIFF'S MOTION TO DISMISS MUST BE DENIED BECAUSE THE COUNTERCLAIMS ARE NOT SUBJECT TO ARBITRATION.

Plaintiff bases its Motion to Dismiss Defendant's Counterclaims "on the grounds that the Court lacks subject matter jurisdiction over the Counterclaims and that the Counterclaims fail to state a claim upon which relief can be granted because, allegedly, the Counterclaims are "subject to binding arbitration under Paragraph 8(a) of the Agreement." *See* P. Mot. ¶ 6.  However, as demonstrated above, the arbitration clause in the Agreement is invalid because it is both procedurally and substantively unconscionable.  Defendant's Counterclaims are thus not subject to arbitration.  Therefore, the Court has subject matter jurisdiction over the Counterclaims and is in a position to grant relief on those Counterclaims. *See Adams*, 279 F.3d at 896 (denying

employer's motion to compel arbitration and stay proceedings in federal court). Accordingly Plaintiff's Motion to dismiss must be denied in its entirety.

## V.  THE COURT MUST STAY THE ARBITRATION BECAUSE THE ARBITRATION PROVISION IS INVALID.

As demonstrated above, the arbitration provision is unconscionable and therefore unenforceable. Accordingly, the Court must stay the Arbitration, because there is no valid agreement to arbitrate. *Brennan v. Bally Total Fitness*, 198 F. Supp. 2d 377, 384 (S.D.N.Y. 2002) (granting Plaintiff's cross-motion to strike the defense of arbitration and stay arbitration). The stay of arbitration is appropriate under the FAA, 9 U.S.C. § 4. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967) ("[I]t is inconceivable that Congress intended [9 U.S.C. § 4] to differ depending upon which party to the arbitration agreement first invokes the assistance of the federal court.").

Furthermore, if AAA persists in moving forward with the Arbitration notwithstanding this Cross-Motion, Defendant may be forced to ask the Court to stay the Arbitration pending this Court's decision on whether the arbitration provision is enforceable. *Penrod Management Group v. Stewart's Mobile Concepts, LTD.*, 07 Civ. 10649, 2008 U.S. Dist. LEXIS 11793, at **10-11 (S.D.N.Y. Feb. 16, 2008) (citing *Fed. Express Corp. v. Fed. Espresso, Inc.*, 201 F.3d 168, 173 (2d Cir. 2000)). *See also Brennan, supra*, 198 F. Supp. 2d 377 (granting stay of arbitration after finding arbitration provision unconscionable under New York law). Defendant has demonstrated a likelihood of success on the merits of its defense that the arbitration clause is not valid, and the balance of the hardships tips decidedly in Defendant's favor (Points I through III, *supra*).

Defendant will be irreparably harmed if forced to expend time and resources arbitrating Plaintiff's claims that Defendant breached the Agreement, as well as Defendant's Counterclaims.

None of those claims is subject to arbitration.  Yet Defendant may be forced to split the costs of

the arbitration of Plaintiff's claims against him.  In the Arbitration, Defendant may also not be

able to obtain the full discovery he needs to defend himself and, were he to lose, would not have

all of the grounds for appealing an adverse decision as he would have were he to appeal from a

court decision.  Moreover, in arbitration, Defendant would not be able to receive all of the

remedies a court could afford him on his Counterclaims, including punitive damages.  *Penrod*,

2008 U.S. Dist. LEXIS 11793, at * 10-11.  For these reasons, and the reasons stated above, the

Court must stay the Arbitration.

## CONCLUSION

For these reasons, the Court must find that the arbitration provision in the Agreement is

invalid and unenforceable, deny Plaintiff's Motion to dismiss Defendant's Counterclaims, grant

Defendant's Cross-Motion to Stay the Arbitration, and award Defendant such other and further

relief as this Court deems just and proper.

Date:   August 4, 2008          LITTLER MENDELSON
New York, New York          A Professional Corporation

By:   _____

      Joel L. Finger
      Eric D. Witkin
900 Third Avenue, 20th Floor
New York, NY  10022
212.583.9600

Attorneys for Defendant
John Abraham

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Defendant's Memorandum of Law (1) In Opposition to Plaintiff's Motion to Dismiss Defendant's Counterclaims and (2) In Support of Defendant's Cross-Motion for a Stay of Arbitration was served via Federal Express Next Business Day Delivery and the Court's electronic filing system upon the following:

James F. Bogan, III, Esq.
Kilpatrick Stockton, LLP
1100 Peachtree Street
Suite 2800
Atlanta, Georgia 30309
jbogan@kilpatrickstockton.com

On this 4th day of August, 2008.

/s/
Anna Maria Loiacono