**KILPATRICK STOCKTON LLP**
Lisa Pearson (LP 4916)
31 West 52nd Street, 14th Floor
New York, NY 10019
Telephone:  (212) 775-8700
Facsimile:  (212) 775-8815

James F. Bogan III
Georgia Bar No. 065220
*Admitted pro hac vice*
1100 Peachtree Street, Suite 2800
Atlanta, Georgia  30309
Telephone: (404) 815-6467
Facsimile: (404) 541-3133

*Counsel for Plaintiff EyeWonder, Inc.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| EYEWONDER, INC., | ) Civil Action No. 08 CV 3579 (GBD) |
| Plaintiff, | ) |
| | ) ECF CASE |
| v. | ) |
| | ) **MEMORANDUM (A) IN OPPOSITION** |
| | ) **TO DEFENDANT'S CROSS-MOTION** |
| JOHN ABRAHAM, | ) **FOR A STAY OF ARBITRATION AND** |
| | ) **(B) IN REPLY IN SUPPORT OF** |
| Defendant. | ) **PLAINTIFF'S MOTION TO DISMISS** |
| | ) **DEFENDANT'S COUNTERCLAIMS** |

## I.    INTRODUCTION

Since this Court entered its preliminary injunction in aid of arbitration, Defendant John

Abraham has done everything in his power to stymie the progress of the parties' arbitration

proceeding.  First, Mr. Abraham raised no less than *four* separate challenges to the qualifications

of the arbitrator appointed by the American Arbitration Association ("AAA"), all of which were

untimely, and none of which had any merit (as confirmed by the AAA again and again).  *See*

Exhibit A (composite exhibit containing correspondence from AAA rejecting each of Mr.

Abraham's challenges to the arbitrator).  Second, Mr. Abraham has demanded that the arbitrator authorize time-consuming and expensive discovery from EyeWonder, Inc. ("EyeWonder"), essentially seeking to transform a simple two-party arbitration (and one that does not even qualify as a "complex arbitration" under the AAA rules) into a complex litigation proceeding. *See* Exhibit B & C (Mr. Abraham's letter to the arbitrator regarding discovery and EyeWonder's response).  Third, after having an oral request to suspend the arbitration denied by the arbitrator on August 4, Mr. Abraham filed his cross-motion to stay the arbitration in this Court and thereafter lodged another, duplicative request with the AAA, this time styled as a written "Motion to Suspend Arbitration Proceedings Pending the Court's Ruling on Respondent's Motion for a Stay of Arbitration."  That request was likewise rejected by the arbitrator.  *See* Exhibit D.

Mr. Abraham's cross-motion to stay the arbitration is yet another procedural wrangle. Despite his failure to challenge to the validity of the parties' arbitration agreement prior to this Court's entry of its injunction in aid of arbitration, and despite having failed to timely raise this objection in his answer in the arbitration, Mr. Abraham now asks this Court to backtrack and examine whether the arbitration clause that already has been enforced is "unconscionable."

This latest challenge is too little, too late.  Pursuant to the parties' agreement and the rules to which the parties agreed, Mr. Abraham's challenges to the arbitration provision should have been presented to the arbitrator.  Mr. Abraham, however, waived this objection by omitting it from his answer in the arbitration proceeding.  *See* Exhibit E (Mr. Abraham's answer in the arbitration).  In any event, his claims of unconscionability are groundless.

Accordingly, Mr. Abraham's cross-motion for a stay of arbitration should be denied, and EyeWonder's motion to dismiss his counterclaims (as being subject to compulsory arbitration) should be granted.

## II.    MR. ABRAHAM SHOULD HAVE PRESENTED HIS ARBITRABILITY CHALLENGE TO THE ARBITRATOR, BUT INSTEAD WAIVED THEM

The parties' arbitration agreement specifies that "[t]he United States Arbitration Act and federal arbitration law shall govern the interpretation, enforcement and proceedings pursuant to the arbitration clause set forth in this Section 8."  Agmt. § 8(b).  The Agreement further provides that the arbitration shall be "in accordance with the Commercial Arbitration Rules of the American Arbitration Association ('AAA') then in effect."  *Id.* § 8(a).  Although the Agreement also selects New York substantive law (*id.* § 9), that clause does not supplant the parties' express invocation of federal arbitration law and does not impact the preemptive effect of the Federal Arbitration Act ("FAA").  *See, e.g., Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 64, 115 S. Ct. 1212, 1219 (1995) ("[T]he choice-of-law provision covers the rights and duties of the parties, while the arbitration clause covers arbitration."); *UHC Management Co., Inc. v. Computer Sciences Corp.*, 148 F.3d 992, 996 (8th Cir. 1998) ("A number of post-*Mastrobuono* cases have interpreted that decision as … rejecting the notion that a general state choice-of-law clause appended to a contract that also includes an arbitration provision will preempt the applicability of the FAA … ") (citing, *inter alia*, *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Belco Petroleum Corp.*, 88 F.3d 129, 134-35 (2d Cir. 1996)).  Thus, the FAA and federal law govern the determination of the enforceability of the parties' arbitration agreement.

Although, as Mr. Abraham notes, it is generally presumed that parties do not assign arbitrability disputes to the arbitrator, this presumption is easily overcome where "there is 'clear and unmistakable' evidence that they did so."  *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S. Ct. 1920, 1924 (1995) (quoting *AT&T Techs., Inc. v. Communications Workers*, 475 U.S. 643, 649, 106 S. Ct. 1415, 1418-1419 (1986)).  Here, there is "clear and unmistakable" evidence of just such an agreement between EyeWonder and Mr. Abraham.

The arbitration clause in the parties' Agreement broadly provides that

> Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, including but not limited to a claim based on or arising from an alleged tort, shall be settled by binding arbitration held in Atlanta, Georgia *in accordance with the Commercial Arbitration Rules* ….

Agreement § 8(a) (emphasis added).  AAA Commercial Arbitration Rule 7(a), in turn, unambiguously commits "arbitrability" disputes to the arbitrator:  "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement."  Finally, the AAA rules provide an unambiguous time limit for arbitrability challenges:  "A party must object to the jurisdiction of the arbitrator or to the arbitrability of a claim or counterclaim no later than the filing of the answering statement to the claim or counterclaim that gives rise to the objection."  AAA Commercial Arbitration Rule 7(c).

The Second Circuit repeatedly has held that substantially similar arbitration agreements require arbitrability disputes to be presented to and resolved by the arbitrator.  In *Shaw Group Inc. v. Triplefine Intern. Corp.*, 322 F.3d 115, 120-124 (2d Cir. 2003), for example, the parties had agreed to a broad arbitration clause; had selected New York substantive law to govern their dispute; and had agreed to arbitration rules providing that the arbitrator would resolve disputes as to arbitrability.  The Court of Appeals had little trouble concluding that, under these facts, a party's challenge to arbitrability had to be presented to the arbitrator in the first instance, and accordingly *reversed* the district court's order enjoining the arbitration.  *See esp. id.* at 124-125 ("[B]ecause the parties' arbitration agreement is broadly worded to require the submission of 'all disputes' concerning the Representation Agreement to arbitration, and because it provides for arbitration to be conducted under the rules of the ICC, which assign the arbitrator initial

responsibility to determine issues of arbitrability, we conclude that the agreement clearly and

unmistakably evidences the parties' intent to arbitrate questions of arbitrability.").

The Court of Appeals followed *Shaw* in *Contec Corp. v. Remote Solution, Co., Ltd.*, 398

F.3d 205, 208 (2d Cir. 2005), where the parties had selected the AAA's Commercial Arbitration

Rules to govern their dispute:  "We have held that when, as here, parties explicitly incorporate

rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear

and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator."  *Id.* at

208 (citing *Shaw* and *PaineWebber Inc. v. Bybyk*, 81 F.3d 1192, 1202 (2d Cir. 1996)).

Numerous other courts have ruled in similar fashion.  *See, e.g., Terminix Intern. Co., LP

v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332-1333 (11th Cir. 2005) ("By incorporating the

AAA Rules … into their agreement, the parties clearly and unmistakably agreed that the

arbitrator should decide whether the arbitration clause is valid.") (citing, in addition to *Contec*,

decisions of the First Circuit Court of Appeals, various federal district courts, the Arizona

Supreme Court, a California state appellate court, and a New York state appellate court).  And

this Court has, of course, followed *Contec*.  *See, e.g., Spirit & Sanzone Distributors Co., Inc. v.

Coors Brewing Co.*, No. 08 Civ. 0251 (LLS), 2008 WL 612622, at *2 (S.D.N.Y. Mar. 3, 2008)

(finding that parties' broad arbitration clause and invocation of AAA Commercial Arbitration

Rules "satisfy the conditions of *Contec*" and required denial of motion to stay arbitration); *Bar-

Ayal v. Time Warner Cable Inc.*, No. 03 CV 9905 (KMW), 2006 WL 2990032, at *7-*8

(S.D.N.Y. Oct. 16, 2006) (similarly concluding that broad arbitration clause and incorporation of

AAA rules manifested the parties' intent to have the arbitrator decide arbitrability issues).

In light of these authorities, Mr. Abraham could and should have presented his specific

"arbitrability" challenge to the arbitrator.  He failed to raise his "unconscionability" challenge in

his May 27 answer, however, and instead challenged only the "enforceability" of the Agreement as a whole (based on an allegation of fraudulent inducement), and the arbitrator's power to award injunctive relief. *See* Exhibit E, at 2. Accordingly, because Mr. Abraham should have presented this arbitrability dispute to the arbitrator, and because he waived that objection in the arbitration itself, his motion for this Court to stay the arbitration should be rejected.

## III.  THE AGREEMENT IS NOT SUBSTANTIVELY UNCONSCIONABILE

Even assuming Mr. Abraham had not waived his unconscionability challenge, and even if he could show that the Agreement was procedurally unconscionable (a claim that is meritless),[1] each of his substantive objections to the arbitration agreement – his challenges to the cost-splitting provision, the limitations on discovery and punitive damages, and the injunctive relief exception – should be rejected outright. At a minimum, this Court need not resolve those issues, because they should be referred to the arbitrator in the first instance.

### A.    The Cost-Splitting Provision

The "cost-splitting" clause provides as follows: "The parties shall share all costs of arbitration, but each party shall be responsible for its respective attorneys' costs, fees and expenses, unless the arbitrators determine otherwise." Agreement § 8(a). Particularly given that EyeWonder initiated the arbitration and paid the filing fee, this provision is not oppressive: Mr.

---

[1] Contrary to Mr. Abraham's contentions, a contract presented as a condition of continued employment will not be deemed a "contract of adhesion" unless the employee "would be unable to find suitable employment if she refused to sign." *Cooper v. MRM Invest. Co.*, 367 F.3d 493, 502 (6th Cir. 2004); *Ciago v. Ameriquest Mort. Co.*, 295 F. Supp. 2d 324, 329 (S.D.N.Y. 2003). Here, of course, this entire case is based on Mr. Abraham's leaving EyeWonder and going to work for its arch-competitor Eyeblaster. Moreover, while Mr. Abraham seeks to avoid his agreement to arbitrate, he has made no offer to return the $160,000+ in salary and bonuses he received under his Employment Agreement with EyeWonder in exchange for, among other things, agreeing "to a non-judicial dispute resolution." *See Oblix, Inc. v. Winiecki*, 367 F.3d 493, 490-491 (7th Cir. 2004) (explaining that "arbitration was as much a part of this deal as … salary and commissions").

Abraham – a highly-compensated sales executive paid a six-figure salary by EyeWonder – need only share the further costs of the arbitration and pay his own attorneys' fees, which he might recover in the event he prevails in the arbitration.  Nevertheless, and despite the fact that Mr. Abraham himself has complicated these court proceedings and the arbitration itself (increasing significantly the expenses borne by both parties), he challenges this routine cost-splitting provision, asserting that it "favor[s] the employer and discourage[s] the employee from bringing his claims."  Mem. in Supp. of Mot. for Stay, at 15.

As the Supreme Court has explained, such conclusory assertions are insufficient to demonstrate that an arbitral fee arrangement is unconscionable.  In *Green Tree Financial Corp.- Alabama v. Randolph*, 531 U.S. 79, 90, 121 S. Ct. 513, 522 (2000), a consumer who had agreed to an arbitration provision in a form contract asserted that it was unenforceable, due to the alleged "'risk' that [the consumer] will be required to bear prohibitive arbitration costs if she pursues her claims in an arbitral forum."  The Court found that the mere assertion of such a "risk," without an adequately developed evidentiary record, was "too speculative to justify the invalidation of an arbitration agreement."  *Id.* at 91, 121 S. Ct. at 522.  Accordingly, the Court held that a party seeking to invalidate an arbitration agreement on the grounds of prohibitive expense "bears the burden of showing the likelihood of incurring such costs."  *Id.* at 92, 121 S. Ct. at 522-523.

Later cases have confirmed the extensive burden that must be met by a party seeking to challenge an arbitration cost arrangement.  In *Musnick v. King Motor Co. of Fort Lauderdale*, 325 F.3d 1255 (11th Cir. 2003), for example, the Eleventh Circuit explained that the party challenging the provision must make an individualized showing that he "'likely will incur prohibitive costs,'" noting that a similar "case-by-case" evidentiary analysis was employed by the

First, Third, Fifth, Sixth, Eighth, and D.C. Circuits. *Id.* at 1258-59.[2]  To meet this standard, the

party challenging the provision must show that he faces such "'high costs if compelled to

arbitrate" that he is "effectively precluded from vindicating" his rights in the arbitral forum,

including evidence showing both the "amount of fees he is likely to incur, as well as of his

inability to pay those fees." *Id.* at 1260 (holding that an unsupported affidavit regarding potential

fee award to opposing counsel was insufficient).  Although the Second Circuit has not addressed

this specific issue, "[m]ost district courts in the Second Circuit have adopted [a] case-by-case

analysis that focuses on the claimant's ability to pay the arbitration fees and costs and the

expected cost differential between arbitration and litigation." *EEOC v. Rappaport, Hertz,*

*Cherson & Rosenthal, P.C*, 448 F. Supp. 2d 458, 463 (N.D.N.Y. 2006) (citations omitted).

In this case, there is absolutely no evidence that the arbitration agreement has

"discourage[d] the employee from bringing his claims."  Mem. in Supp. of Mot. for Stay, at 15.

To the contrary, Mr. Abraham has launched every claim imaginable in every possible forum:  in

this Court, in the Second Circuit Court of Appeals, and in the parties' arbitration proceeding.[3]

Moreover, Mr. Abraham has not presented a shred of evidence showing either the amount of fees

he is likely to incur nor his ability to pay, and he has submitted no evidence showing "the

---

[2] The Eleventh Circuit noted that the Ninth Circuit stood alone in adhering to a "*per se*" rule after
*Green Tree*. *Id.* at 1259 n.3 (citing *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 894 n.5 (9th
Cir. 2002)).  Later Ninth Circuit cases have recognized that cost-splitting provisions such as that
contained in the Agreement – requiring the parties to split the costs of the arbitration and bear
their own attorneys' fees – are not facially unconscionable.  *See Nagrampa v. MailCoups, Inc.*,
469 F.3d 1257, 1285 (9th Cir. 2006) (noting that such a cost-splitting arrangement is the "default
rule of arbitration" and is authorized by Cal. Civ. Proc. Code § 1284.2); *see also id.* at 1303
(O'Scannlain, J., dissenting) (agreeing that fee-shifting provision was not unconscionable).

[3] Indeed, during the scheduling conference held in the arbitration on August 4, EyeWonder
proposed a one-day final hearing, while Mr. Abraham asked for a hearing lasting ***five*** days,
which confirms that the "cost" of the arbitration is not dissuading him from vigorously litigating
in the least.  Furthermore, as shown in the attached invoice from the AAA (*see* Exhibit D), Mr.
Abraham's total "share" of the anticipated costs of the arbitration is only $6,000, hardly an
oppressive sum for a sales executive with a six-figure salary.

expected cost differential between arbitration and litigation." *Rappaport*, 448 F. Supp. 2d at 463. Indeed, it appears that Mr. Abraham's current employer, Eyeblaster, is funding his litigation efforts (Mr. Abraham has submitted no evidence regarding who is actually paying his legal fees).

If anything, the evidence of record shows that Mr. Abraham could not himself show that the cost-splitting provision "effectively precludes" him from arbitrating the parties' dispute. While employed at EyeWonder, Mr. Abraham had a base salary of $120,000 and an incentive bonus structure that yielded over $70,000 in bonuses during the period of July-December 2007. Agreement § 5; Verified Compl. ¶ 24. Mr. Abraham allegedly left EyeWonder after being presented with a new compensation plan that he deemed unacceptable, and thus he presumably is even more highly compensated by Eyeblaster. *See* Mot. for Stay, at 3-4. *See, e.g., Bradford v. Rockwell Semiconductor Systems, Inc.*, 238 F.3d 549, 558 & n.6 (4th Cir. 2001) (rejecting claim that fee-splitting provision was prohibitive where employee had earned $115,000 base salary and $53,000 in yearly bonuses prior to arbitration). Finally, if he prevails in the arbitration, the arbitrator is empowered to award Mr. Abraham all of his fees; this fact alone undermines his claim of unfairness. *Cf. Anders v. Hometown Mortg. Servs., Inc.*, 346 F.3d 1024, 1028-1029 (11th Cir. 2003).

In sum, Mr. Abraham has made no effort to satisfy his burden of submitting evidence substantiating his naked allegation that the fee-splitting clause at issue effectively precludes him from arbitrating the parties' dispute. This contention should be rejected out-of-hand.

**B.      The Limitations on Discovery and Punitive Damages**

Mr. Abraham also challenges the sufficiency of the discovery mechanisms available to him in the arbitration proceeding, as well as the enforceability of the Agreement's punitive damages limitation. *See* Mot. for Stay, at 16-17. Both of these claims should be presented to the arbitrator and, in any event, are meritless.

**1.      Discovery in the Arbitration**

Although the parties' arbitration clause does not specifically address discovery, it does incorporate the Commercial Arbitration Rules. *See* Agmt. § 8(a). Those rules in turn require the parties to "exchange copies of all exhibits they intend to submit at the hearing" at least five days before the hearing, and further authorize the arbitrator to direct "the production of documents and other information" and "the identification of any witnesses to be called." Commercial Arbitration Rule 21. In accordance with these provisions, the arbitrator has authorized a pre-hearing exchange of exhibits and identification of witnesses in the arbitration, and the parties have also submitted letter briefs to the arbitrator regarding the appropriate scope of additional discovery. *See* Exhibits B, C & D.

Mr. Abraham's own actions, including his submission of an eight-page letter to the arbitrator describing the arbitrator's power to provide discovery and the purported relevance of the materials he requests (Exhibit B), confirm that the question of discovery in the arbitration can and should be presented to the arbitrator, who is in the best position to evaluate the evidentiary needs of the case and to adjust discovery accordingly. *See generally Bar-Ayal*, 2006 WL 2990032, at *16 (fact that arbitration generally involves limited discovery is not a basis for invalidating arbitration agreement) (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31, 111 S. Ct. 1647, 1654-1655 (1991)). Given that AAA rules and the arbitrator's pending

consideration of Mr. Abraham's discovery requests, he already has been granted "more than minimal discovery" rights.  Mr. Abraham cites no authority to the contrary.[4]

### 2.    The Limitation on Punitive Damages

As Mr. Abraham acknowledges, the Agreement's limitation on punitive damages does not apply only to the parties' arbitration, but to proceedings in any forum.  *See* Mem. in Supp. of Mot. for Stay, at 16 (quoting Agreement § 8(a)).  Thus, his challenge to the provision is like any other challenge to the agreement as a whole, rather than to the arbitration clause itself.  As such, the issue is for the arbitrator.  *See id.* at 5-6 (where Mr. Abraham agrees that arbitrator should address challenges to the contract as a whole).

Even if the clause only limited punitive damages in the arbitration, the enforceability of such a limitation still should be presented to the arbitrator.  In *PacifiCare Health Systems, Inc. v. Book*, 538 U.S. 401, 123 S. Ct. 1531 (2003), for example, parties sought to resist arbitration on the ground that the arbitration provisions prohibited punitive damages that otherwise would have been available on their RICO claims.  Reversing the refusal to compel arbitration, the Supreme Court held that the enforceability of the limitations should have been addressed by the arbitrator. *Id.* at 406-07, 123 S. Ct. at 1535-36 (ruling that "mere speculation" that the arbitrator would construe provisions in an unenforceable way was insufficient to preclude arbitration).

The Courts of Appeals have similarly ruled.  In *Hawkins v. Aid Ass'n for Lutherans*, 338 F.3d 801 (7th Cir. 2003), the party resisting arbitration raised a host of "unconscionability" challenges to the arbitration clause, including one based on a limitation of punitive damages. The Seventh Circuit held that "complaints about the unavailability of such remedies must first be

---

[4] Although California arbitration law is not relevant, California requires only that discovery be sufficient to "adequately arbitrate" a claim.  *See Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal. 4th 83, 102, 106, 6 P.3d 669, 684, 99 Cal. Rptr. 2d 745, 761 (2000).

presented to the arbitrator." *Id.* at 807. "Because the adequacy of arbitration remedies has

nothing to do with whether the parties agreed to arbitrate or if the claims are within the scope of

that agreement, these challenges must first be considered by the arbitrator." *Id.* (collecting

cases); *accord Faber v. Menard, Inc.*, 367 F.3d 1048, 1052 (8th Cir. 2004) (utilizing similar

reasoning). Accordingly, the Court affirmed the district court's order compelling arbitration.

In this case, it is particularly appropriate to refer this challenge to the arbitrator, for

several reasons. First and foremost, despite having filed his answer in the arbitration back on

May 27, 2008, Mr. Abraham did not elect to file any counterclaims in the arbitration. *See*

Exhibit E. Unless and until he seeks to pursue counterclaims in the arbitration, he has no basis to

challenge the punitive damages limitation, because he simply has no claims pending there that

would support an award of punitive damages. Second, assuming Mr. Abraham asserts

counterclaims in the arbitration on which punitive damages could be awarded, such claims would

be vulnerable to legal attack by EyeWonder, for failure to state a cognizable claim. His oft-

repeated "fraud" allegation, for example, which is based on alleged extra-contractual statements

at the time the contract was signed, fails in light of the express language of the restrictive

covenants and the merger clause in the Agreement. *See* Agreement § 13; *see also, e.g., Feeley v.*

*Whitman Corp.*, 65 F. Supp. 2d 164, 173 (S.D.N.Y. 1999) ("Under New York law, plaintiff could

not have reasonably relied upon Midas's alleged misrepresentations where these

misrepresentations clearly contradicted the express terms of the parties' written contracts and

these contracts included integration clauses.")

In any event, the punitive damages limitation is not "one-sided" in favor of EyeWonder,

but, in neutral fashion, protects ***both*** parties from an award of punitive damages. *See, e.g., Bar-*

*Ayal*, 2006 WL 2990032, at *16 (rejecting numerous substantive unconscionability challenges to

arbitration agreement because the provisions at issue "affect[ed] both parties"). Although EyeWonder presently is not asserting any tort claims against Mr. Abraham, employers sometimes seek punitive damages from departing employees in connection with claims for misappropriation of trade secrets and other business torts. Thus, Mr. Abraham and other employees – who are generally less able to pay punitive damages than their employer – benefit as much or more from the limitation than does EyeWonder.

Accordingly, the punitive damages limitation in no way supports an extreme finding such as substantive unconscionability, and in any event should be referred to the arbitrator.

### C.    Mr. Abraham Misrepresents the Injunctive Relief Exception

Mr. Abraham's final challenge to the arbitration agreement is predicated on a misrepresentation of the injunctive relief exception to the parties' arbitration clause. According to Mr. Abraham, the injunction exception is "one-way" because it "allows the employer to file an action against the employee to enforce the restrictive covenants, but provides that all disputes the employee may have against the employer must be submitted to arbitration." Mot. for Stay, at 17. Mr. Abraham misquotes the injunction provision, however, omitting critical "bilateral" language:

> Notwithstanding the foregoing, the provisions of this **Section 8** [governing arbitration] shall not apply to ***any action for injunctive or other preliminary relief to maintain the status quo until a dispute can be finally resolved***, or any action to prevent to prevent any violation or threatened violation of the covenants in **Section 6**.

Agreement § 8(c) (emphasis added). The bolded language – which was omitted from Mr. Abraham's quotation of the injunctive relief clause (*see* Mem. in Supp. of Mot. for Stay, at 17) – confirms that ***either party*** remains free to seek judicial injunctive relief as necessary to maintain the *status quo* pending arbitration, with the remaining language merely clarifying that this included efforts by EyeWonder to preliminarily enjoin Mr. Abraham from violating his

restrictive covenants.  *See 1-800 Radiator of Wis., LLC v. 1-800 Radiator Franchise, Inc.*, No. 08-C-362, 2008 WL 2782894, at *4-*5 (E.D. Wis. July 15, 2008) (discussing similar injunctive relief exception and rejecting contention that it was "one-sided").

In any event, and even giving credence to Mr. Abraham's characterization of this contractual provision, there still would be no basis for vitiating the parties' arbitration agreement, because the clause is limited to "remedies in which judicial involvement is particularly appropriate," and EyeWonder can avail itself of the exception only in narrow circumstances.  *See Meyers v. Univest Home Loan, Inc.*, No. C-93-1783, 1993 WL 307747, at *4 (N.D. Cal. 1993) (rejecting unconscionability argument and upholding clause that permitted defendant to seek judicial relief in cases of foreclosure or repossession of property, because, other than this narrow exception, all other claims of the defendant would still be subject to arbitration); *1-800 Radiator*, 2008 WL 2782894, at *4-*5; *Gill v. Jim Walter Homes of L.A., Inc.,* 187 F. Supp. 2d 618, 622 (W.D. La. 2002); *Quinn v. EMC Corp.*, 109 F. Supp. 2d 681, 683 (S.D. Tex. 2000).

Here, both parties are obliged to submit "[a]ny controversy or claim" to arbitration, with the only exception being claims for injunctive relief to maintain the *status quo*.  The reference to EyeWonder's right to protect against violations of the restrictive covenants is merely a specific example of this general power, and one that would be appropriate under the circumstances even if the injunction exception was "one-sided" (which it is not).  Accordingly, the injunction exception provides no basis for setting aside the arbitration agreement.

## IV.    THE COURT SHOULD DISMISS MR. ABRAHAM'S COUNTERCLAIMS WITHOUT PREJUDICE TO PROCEEDINGS IN THE ARBITRATION

Other than his meritless "unconscionability" arguments, Mr. Abraham has identified no reason for this Court to resolve counterclaims that are unambiguously covered by the parties' agreement to arbitrate "[a]ny controversy or claim arising out of or relating to this Agreement, or

the breach thereof, including but not limited to a claim based on or arising from an alleged tort."

Agreement § 8(a). Accordingly, Mr. Abraham's counterclaims should be dismissed without

prejudice to Mr. Abraham's ability to plead those counterclaim in the arbitration.[5]

    At the end of his Motion, Mr. Abraham briefly argues that this Court should stay the

arbitration on an interim basis pending its resolution of his "unconscionability" challenge, citing

*Brennan v. Bally Total Fitness*, 198 F. Supp. 2d 377 (S.D.N.Y. 2002). Contrary to Mr.

Abraham's assertions, the *Brennan* case did not endorse a court injunction of a pending

arbitration, but rather involved cross-motions regarding arbitration filed in a pending

harassment/discrimination lawsuit. *Id.* at 378. Although the *Brennan* court ultimately refused to

compel arbitration on the grounds of unconscionability, it did so because of extremely one-sided

provisions (allowing unilateral modification of the contract by the employer and eliminating

court jurisdiction over pending lawsuits). *Id.* at 384. With respect to provisions similar to those

---

[5] EyeWonder reserves the right to dispute Mr. Abraham's continued reliance on California law, which he invokes pursuant to New York's choice-of-law rules. Leaving aside that the arbitration issues are governed by federal law and the FAA, the parties' choice of New York substantive law was "***without regard to its conflict of laws rules***." Agreement § 9 (emphasis added). Similarly-worded choice-of-law clauses regularly are enforced without analysis of conflicts of law issues. *See, e.g., RJE Corp. v. Northville Industries Corp.*, 329 F.3d 310, 314 (2d Cir. 2003) (enforcing similar clause without analysis: "It is the general policy of New York courts to enforce choice of law provisions, and we therefore apply New York contract law …."); *In re Aerovias Nacionales de Colombia, S.A. Avianca*, 323 B.R. 879, 887 n.5 (Bankr. S.D.N.Y. 2005). Moreover, recent authorities (including a decision cited by Mr. Abraham and a later ruling in another case he cites) confirm that a New York choice-of-law clause will be enforced where (a) New York has some relationship to the dispute and (b) there is no showing of fraudulent inducement of the clause itself or a violation of New York's public policy. *See, e.g., Cap Gemini Ernst & Young U.S. LLC v. Nackel*, No. 02 CV 16872 (DLC), 2004 WL 569554, at *4-*5 (S.D.N.Y. Mar. 23, 2004) (explaining that "analysis of which state has the most significant contacts with the dispute" is relevant only where "the contract does not contain a choice-of-law clause"), *aff'd*, 98 Fed. Appx. 65 (2d Cir. 2004); *see also International Minerals and Resources, S.A. v. Pappas*, 96 F.3d 586, 592 (2d Cir. 1996) ("[A]bsent fraud or violation of public policy, contractual selection of governing law is generally determinative so long as the State selected has sufficient contacts with the transaction.") (cited in Mot. for Stay, at 8-9). In this case, New York indisputably has some relationship to the dispute, and there is no claim that the choice-of-law clause was fraudulently induced or that it somehow offends New York's public policy. *See id.*

challenged by Mr. Abraham (limiting the damages available to the employee and otherwise restricting certain remedies), the *Brennan* court held: "While these particular terms favor Bally, they are not unreasonable or unconscionable." *Id.* at 384. Thus, this is yet another decision supporting EyeWonder's position, rather than Mr. Abraham's.

## V.    CONCLUSION

For the foregoing reasons and the reasons stated in EyeWonder's opening brief in support of its motion to dismiss, Mr. Abraham's counterclaims should be dismissed, and his cross-motion to stay the arbitration should be denied.

Respectfully submitted this 21st day of August, 2008.

**KILPATRICK STOCKTON LLP**

By: /s/ James F. Bogan III_____

Lisa Pearson (LP 4916)
31 West 52nd Street, 14th Floor
New York, NY  10019
(212) 775-8700

James F. Bogan III
Georgia Bar No. 065220
*Admitted pro hac vice*
1100 Peachtree Street, Suite 2800
Atlanta, GA  30309
(404) 815-6500

*Counsel for Plaintiff EyeWonder, Inc.*

## CERTIFICATE OF SERVICE

This is to certify that, on August 21, 2008, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system, which will send notification of such filing to:

Joel L. Finger
jfinger@littler.com
Eric D. Witkin
ewitkin@littler.com
Littler Mendelson, P.C.
900 Third Avenue, 20th Floor
New York, New York  10022

Counsel for Defendant John Abraham

By:    /s/ James F. Bogan III_____
James F. Bogan III
Counsel for Plaintiff

# EXHIBIT A

**American Arbitration Association**
*Dispute Resolution Services Worldwide*

*Southeast Case Management Center*
John M. Bishop
Vice President
Linda Beyea
Assistant Vice President

July 15, 2008

VIA FACSIMILE ONLY

2200 Century Parkway, Suite 300, Atlanta, GA 30345
telephone: 404-325-0101 facsimile: 404-325-8034
internet: http://www.adr.org/

Allen Garrett
1100 Peachtree Street
Suite 2800
Atlanta, GA 30309

James F. Bogan
Kilpatrick Stockton LLP
Suite 2800
1100 Peachtree Street
Atanta, GA 30309-4530

Joel L. Finger
Littler Mendelson, P.C.
900 Third Avenue
New York, NY 10022

Jerry C. Newsome
Littler Mendelson, P.C.
3348 Peachtree Road, NE
Suite 1100
Atlanta, GA 30326-1008

Re: 30 116 00331 08
EyeWonder, Inc.
and
John Abraham

Dear Parties:

After careful consideration of the parties' contentions, the Association has determined that Mark C. Travis will be reaffirmed as an arbitrator in the above matter.

For the purpose of scheduling the preliminary hearing conference , Arbitrator Travis is available on the following dates:

> July 18, 2008 at 9:00 AM; 10:00 AM and 3:00 PM (EST)
> July 21, 2008 at 9:00 AM and 10:00 AM
> July 22 & 23, 2008 at 9:00 AM

The parties are requested to advise the undersigned of their availability on or before July 17, 2008.

Sincerely,

*Kai Sullivan*

Kai Sullivan
Case Manager
877-320-5140
SullivanK@adr.org
*Supervisor Information: Lauryn A. Hall, 888 320 3518, HallL@adr.org*

Encl.

**American Arbitration Association**
*Dispute Resolution Services Worldwide*

*Southeast Case Management Center*
John M. Bishop
Vice President
Linda Beyea
Assistant Vice President

2200 Century Parkway, Suite 300, Atlanta, GA 30345
telephone: 404-325-0101 facsimile: 404-325-8034
internet: http://www.adr.org/

July 23, 2008

**VIA ELECTRONIC MAIL**

Allen Garrett
1100 Peachtree Street
Suite 2800
Atlanta, GA  30309

James F. Bogan
Kilpatrick Stockton LLP
Suite 2800
1100 Peachtree Street
Atanta, GA  30309-4530

Joel L. Finger
Littler Mendelson, P.C.
900 Third Avenue
New York, NY  10022

Jerry C. Newsome
Littler Mendelson, P.C.
3348 Peachtree Road, NE
Suite 1100
Atlanta, GA  30326-1008

Re: 30 116 00331 08
    EyeWonder, Inc.
    and
    John Abraham

Dear Parties:

This will acknowledge receipt of electronic mail dated July 17, 2008 from Respondent.  This will also acknowledge receipt of electronic mail dated July 22, 2008 from Claimant.

After careful consideration of the parties' contentions, please be advised that pursuant to R-17 of the Commercial Arbitration Rules and Mediation Procedures, the Association's determination to reaffirm the appointment of Mark Travis as arbitrator is conclusive.

Please call should you have any questions.

Sincerely,

/s/Lauryn Hall-Thompson for

Kai Sullivan
Case Manager
877-320-5140
SullivanK@adr.org

*Supervisor Information: Lauryn A. Hall, 888 320 3518, HallL@adr.org*

**American Arbitration Association**
*Dispute Resolution Services Worldwide*

*Southeast Case Management Center*
John M. Bishop
Vice President
Linda Beyea
Assistant Vice President

July 25, 2008

2200 Century Parkway, Suite 300, Atlanta, GA 30345
telephone: 404-325-0101 facsimile: 404-325-8034
internet: http://www.adr.org/

Via Electronic Mail
Allen Garrett
1100 Peachtree Street
Suite 2800
Atlanta, GA  30309

James F. Bogan
Kilpatrick Stockton LLP
Suite 2800
1100 Peachtree Street
Atanta, GA  30309-4530

Joel L. Finger
Littler Mendelson, P.C.
900 Third Avenue
New York, NY  10022

Jerry C. Newsome
Littler Mendelson, P.C.
3348 Peachtree Road, NE
Suite 1100
Atlanta, GA  30326-1008

Re: 30 116 00331 08
    EyeWonder, Inc.
    and
    John Abraham

Dear Counsel:

This will acknowledge receipt of letters dated July 22 and July 23, 2008, from Mr. Newsome, copies of which were exchanged with Claimant's representatives.

As stated in the Association's letters dated July 15 and July 23, 2008, the Association has considered the parties' contentions regarding the service of arbitrator Mark Travis and has determined that he is reaffirmed.

Referring to Mr. Newsome's concerns about the appointment process in this case, I have reviewed the file and have determined that our administrative appointment of Mr. Travis was made in accordance with the Commercial Rules.

We consider the issue resolved and are proceeding with the next step in the arbitration.

The arbitrator is available to hold the Preliminary Hearing by conference call on the following dates:

Tuesday, July 29 anytime
Monday, August 4 anytime

Please advise your case manager of your availability by Monday, July 28, 2008.  Absent a response, the Preliminary Hearing will be scheduled.

If you have any questions, please do not hesitate to contact me.

Sincerely,

*/s/ Linda L. Beyea*


Linda L. Beyea
Assistant Vice President
866.686.6024
Beyeal@adr.org



**American Arbitration Association**
*Dispute Resolution Services Worldwide*

*Southeast Case Management Center*
John M. Bishop
Vice President
Linda Beyea
Assistant Vice President

2200 Century Parkway, Suite 300, Atlanta, GA 30345
telephone: 404-325-0101 facsimile: 404-325-8034
internet: http://www.adr.org/

July 29, 2008

**<u>VIA EMAIL ONLY</u>**

Allen Garrett
1100 Peachtree Street
Suite 2800
Atlanta, GA  30309

James F. Bogan
Kilpatrick Stockton LLP
Suite 2800
1100 Peachtree Street
Atanta, GA  30309-4530

Joel L. Finger
Littler Mendelson, P.C.
900 Third Avenue
New York, NY  10022

Jerry C. Newsome
Littler Mendelson, P.C.
3348 Peachtree Road, NE
Suite 1100
Atlanta, GA  30326-1008

Re: 30 116 00331 08
    EyeWonder, Inc.
    and
    John Abraham

Gentlemen:

This will acknowledge receipt of Mr. Newsome's email dated July 28, 2008.

In accordance with the AAA's rules, the Association is empowered to determined whether the arbitrator should be disqualified upon objection of a party.  The Association rendered its determination after careful review of the parties' contentions as set forth in their correspondence.

This matter has again been carefully reviewed and I wish to confirm our prior decision to reaffirm Arbitrator Mark Travis.  We consider this matter addressed and pursuant to Section 17 of the Rules, binding and conclusive.

The case manager is in the process of setting the preliminary hearing which will be confirmed under separate cover.

Sincerely,


Molly Bargenquest
Vice President
800-426-8792
bargenquestm@adr.org

MB/rjr

cc:  Linda L. Beyea, **<u>VIA EMAIL ONLY</u>**

**EXHIBIT B**

**LITTLER MENDELSON®**

A PROFESSIONAL CORPORATION

ALABAMA

ARIZONA

ARKANSAS

CALIFORNIA

COLORADO

CONNECTICUT

DISTRICT OF COLUMBIA

FLORIDA

GEORGIA

ILLINOIS

INDIANA

MASSACHUSETTS

MINNESOTA

MISSOURI

NEVADA

NEW JERSEY

NEW YORK

NORTH CAROLINA

OHIO

OREGON

PENNSYLVANIA

RHODE ISLAND

SOUTH CAROLINA

TEXAS

VIRGINIA

WASHINGTON

August 11, 2008

Jerry C. Newsome
Direct: 404.760.3907
Direct Fax: 404.759.2173
jnewsome@littler.com

**VIA EMAIL AND FIRST CLASS MAIL**

Mark C. Travis
Wimberly Lawson Seale Wright & Davis, PLLC
1420 Neal Street, Suite 201
Cookeville, TN 38503-0655

RE:    EyeWonder, Inc. v. John Abraham
        AAA Case No. 30 116 00441 08

Dear Mr. Travis:

As discussed during the August 4, 2008 Preliminary Hearing in this matter, my client, Respondent John Abraham ("Respondent" or "Abraham"), submits this letter outlining certain discovery which he seeks to obtain from EyeWonder, Inc. ("EyeWonder") in this arbitration and seeking permission to take such discovery from EyeWonder.[1]

Pre-hearing discovery is permitted under the Commercial Arbitration Rules, and as Arbitrator in this matter you may order such discovery. Indeed, an arbitrator may "direct the production of documents and other information" (R-21(a)(i)) and order the parties to "produce such evidence as the arbitrator may deem necessary to an understanding and determination of the dispute" (R-31(a)). An arbitrator may also subpoena witnesses or documents upon the request of any party or independently. (R-31(d))

Due to the nature of the dispute in this case, pre-hearing discovery beyond the routine exchange of hearing exhibits is necessary in order to ensure a fair hearing for Abraham. As

---

[1]    Respondent expressly states that he does not waive his objection to the arbitrability of this matter and submits this letter without prejudice to that objection. As stated in "Respondent's Motion to Suspend Arbitration Proceedings Pending the Court's Ruling on Respondent's Motion for a Stay of Arbitration," Abraham has filed a motion with the United States District Court for the Southern District of New York seeking a stay of these arbitration proceedings because the arbitration provision between the parties is invalid and not enforceable. However, assuming *arguendo* that both the Arbitrator and the AAA deny Abraham's request to suspend these proceedings pending the Court's ruling on the Motion to Stay and that the Court denies Abraham's Motion to Stay, (i.e., if Abraham is forced to arbitrate this matter), Abraham should be entitled to engage in certain discovery prior to the final hearing.

Mark C. Travis
August 11, 2008
Page 2

explained in Respondent's Motion to Suspend Arbitration Proceedings,[2] the law requires that more than minimal discovery be allowed in arbitrations of this nature:

> When an arbitration agreement is required by the employer as part of the employment contract, the agreement must contain five minimum elements in order to be lawful: (1) reference to a neutral arbitrator, *(2) provision for more than minimal discovery*, (3) requirement that award decision must be written, (4) provision for all of the types of relief that may be awarded by the court, and (5) it 'does not require employees to pay either unreasonable costs or any arbitrator's fees and expenses as a condition of access to the arbitration forum.' *Gelow v. Cent. Pac. Mortgage Corp.*, 2008 U.S. Dist. LEXIS 43925 (E.D. Cal. June 3, 2008) (emphasis added) (citing *Armendariz v. Found. Health Psychcare Serv.*, 6 P.3d 669 (Cal. 2000)); *Cole v. Burns Intern. Sec. Serv.*, 105 F.3d 1465, 1481-82 (D.C. Cir. 1997).

Not only does the failure of the arbitration provision to provide for more than minimal discovery invalidate the agreement to arbitrate, failure to allow for more than minimal discovery in this arbitration would also be grounds for any arbitration award to be vacated.

In this Arbitration, EyeWonder alleges that it has been damaged by Abraham's alleged violation of certain restrictive covenants in his Employment Agreement. EyeWonder's initial monetary demand is for $100,000.[3] In addition to the monetary relief sought, EyeWonder also seeks to enforce a broad non-competition covenant that essentially prevents Abraham from competing against EyeWonder in any capacity and effectively prevents Abraham from working in the industry. EyeWonder has also alleged that Abraham should not be allowed to solicit from or perform work for many of EyeWonder's alleged customers (including but not limited to 42 customers previously identified by EyeWonder's counsel) under the non-solicitation covenant in the Employment Agreement.

EyeWonder argued at the Preliminary Hearing that the parties should not engage in *any* discovery apart from the exchange of information to be used during the final hearing. Thus, EyeWonder contends that the *only* information it should be required to disclose to Abraham is the information which EyeWonder itself desires to use at the final hearing. EyeWonder's position is patently unfair given the fact that it is EyeWonder who is in possession of nearly all the relevant documents and information in this matter. To allow EyeWonder to simply reveal only the documents and information it desires to use at the final hearing (presumably

---

[2]    Respondent's Motion to Suspend Arbitration Proceedings was submitted to the Arbitrator and the AAA via overnight delivery on August 8, 2008.

[3]    Of course, Abraham has no assurances that EyeWonder's claim for monetary damages will not increase, perhaps dramatically, at the final hearing.

Mark C. Travis
August 11, 2008
Page 3

revealing only the information favorable to EyeWonder while withholding information favorable to Abraham), is unfairly prejudicial to Abraham's ability to defend against EyeWonder's claims.  EyeWonder should not be the final arbiter or what documents and information it will or will not disclose.

Although Abraham has not fully determined all discovery that he might need to obtain (because EyeWonder has not yet fully disclosed the details of its allegations), there are clearly three major substantive areas to which Abraham should entitled to discovery.  First, Abraham should be entitled to discovery related to EyeWonder's recruitment and solicitation of Abraham to leave his prior employment and join EyeWonder and the drafting, negotiation, and execution of both the initial letter agreement and the Employment Agreement between Abraham and EyeWonder.  Included within these categories of discovery, EyeWonder should be entitled to discovery regarding the fact that EyeWonder's recruitment and employment of Abraham took place almost exclusively in California, and, therefore, California law should determine the enforceability of the restrictive covenants and arbitration provision in the Employment Agreement.  The choice of law issue is a threshold issue in this case, and Abraham should be entitled to discovery on such issue well before a final hearing on the merits.  Abraham contends that the Employment Agreement, including the restrictive covenants and arbitration provision therein, is unenforceable for several reasons.  EyeWonder and its employees are in exclusive possession of information that may show that the Employment Agreement is unenforceable (e.g., whether by fraud in the inducement, contract of adhesion, unconscionability, etc.) and Abraham should be entitled to obtain that information.  Abraham should not be limited to information which EyeWonder itself chooses to disclose.

Second, Abraham should be entitled to discovery related to the scope of EyeWonder's business as well as the scope of services performed by Abraham while employed by EyeWonder.  EyeWonder seeks to enforce a broad non-competition covenant that would prevent Abraham from competing against EyeWonder in the same or similar capacity with which we worked for EyeWonder.  It is clear that information regarding EyeWonder's business activities, customer base, and geographic area, as well as the scope of Abraham's employment are all directly relevant not only to the enforceability of the restrictive covenants, but also the scope of the restrictions to which Abraham would be subject if the covenants were found to be enforceable.  Again, EyeWonder and its employees are in exclusive possession of this critical information, and Abraham is entitled to discover what information exists (whether it be helpful or harmful to his defense).

Third, Abraham should entitled to discovery related to EyeWonder's relationship (including but not limited to the nature and scope of services provided and revenue and profit information) with any customers it seeks to prevent Abraham from soliciting or doing business with (including but not limited to the 42 customers previously identified by

Mark C. Travis
August 11, 2008
Page 4

EyeWonder's counsel). Even if the non-solicitation and non-competition covenants were enforceable (which they are not), Abraham is entitled to test EyeWonder's conclusory allegations as to the number and identity of the customers which Abraham would be prohibited from soliciting. The term "Customer" in the non-solicitation covenant states that Abraham is prohibited from soliciting any company that "during the one-year period before the termination of employment, (i) was solicited or serviced by [Abraham] or another [EyeWonder] employee supervised by [Abraham], or (ii) about which [Abraham] had confidential information" (Employment Agreement, ¶ 6(a)(ii) and ¶ 6(e)). Once again, it is EyeWonder which has exclusive possession of the information that would prove or disprove that any certain customer meets the definition of "Customer" in the non-solicitation covenant.

Moreover, to the extent that EyeWonder claims that Abraham has damaged its relationships with any of these customers, Abraham should be entitled to information related to EyeWonder's revenues and profits (and lost revenues and profits) from such customers. Again, EyeWonder is claiming that Abraham is liable for at least $100,000 in damages. Abraham should be entitled to obtain documents and information which will either prove or disprove that he has in fact caused damage to EyeWonder. Without pre-hearing discovery, Abraham will not be able to do so because EyeWonder has exclusive control over all such evidence.

Consistent with these major substantive areas, there are certain depositions that Abraham should be allowed to take and certain documents that he should be allowed to obtain. Abraham is not asking for unreasonable discovery, but rather limited discovery that is directly relevant to the major issues in this case.

## DEPOSITIONS:

Abraham requests that limited depositions be allowed in this arbitration proceeding. Specifically, Abraham requests permission to take depositions from the following:

     1.    <u>Michael Rosner, EyeWonder's Senior Vice President of Sales</u>. Mr. Rosner was directly involved in the recruitment and hiring of Abraham and has relevant information regarding the enforceability of the Employment Agreement. Mr. Rosner also has information regarding the scope of EyeWonder's business, the scope of Abraham's employment with EyeWonder, EyeWonder's customers (including any alleged customers with which EyeWonder now seeks to prevent Abraham from doing business), EyeWonder's claims that Abraham has violated the restrictive covenants in the Employment Agreement, and EyeWonder's alleged damages in this matter. All of these subjects are directly relevant to the issues that must be determined in this arbitration. Abraham should be able to

Mark C. Travis
August 11, 2008
Page 5

determine what information and documents Mr. Rosner has *prior* to the final hearing in this matter, so that Abraham can prepare his defense against EyeWonder's claims.

2.     Jerome Connell, EyeWonder's General Counsel.  Mr. Connell has relevant information regarding the drafting and execution of the Employment Agreement, including the restrictive covenants, between Abraham and EyeWonder.  Specifically, Mr. Connell has knowledge of comments he made to Abraham that in part constitute the basis of Abraham's defense against the enforceability of the Employment Agreement.  For example, when Mr. Connell presented the Employment Agreement to Abraham, Abraham expressed his concern to Mr. Connell that the restrictive covenants appeared to be very one-sided in EyeWonder's favor.  Mr. Connell replied to Abraham, "Don't worry, you're in California.  It's a right-to-work state."  Clearly, Mr. Connell's aim was to induce Abraham to sign the Employment Agreement by leading him to believe that the restrictive covenants would never be enforced because he is a citizen of California.  Of course, EyeWonder is now attempting to enforce those restrictive covenants.  Abraham should be able to determine what information and documents Mr. Connell has so that Abraham can prepare his defense against EyeWonder's claims.

3.     EyeWonder's Corporate Representative.   EyeWonder has alleged that Abraham has violated the restrictive covenants in the Employment Agreement, that he should be prohibited from soliciting or doing business with certain customers, including but not limited to a list of 42 customers which EyeWonder claims fit within the definition of "Customer" as defined in the Employment Agreement, and that he should be prevented from competing with EyeWonder within certain geographical areas.  EyeWonder has also alleged that it is entitled to at least $100,000 as a result of Abraham's actions.  Abraham should be entitled to discover information, through a corporate representative of EyeWonder, regarding EyeWonder's claims that he has violated the restrictive covenants and the basis of EyeWonder's claims that Abraham has caused at least $100,000 in damages to EyeWonder.  Moreover, Abraham should be entitled to discovery related to the nature and extent of EyeWonder's business relationship with any customer which EyeWonder now contends Abraham cannot solicit or do business with and whether such customers are actually covered by the restrictions set forth in the Employment Agreement.  EyeWonder has *exclusive* access to all of this critical information.  If Abraham is not allowed to obtain discovery of this information *prior* to the final hearing, he will be unfairly prejudiced in preparing to defend against EyeWonder's conclusory allegations at the hearing.

**DOCUMENT REQUESTS:**

In addition to the three depositions listed above, Abraham requests that EyeWonder produce all documents covered by the following documents requests:

Mark C. Travis
August 11, 2008
Page 6

1.    Any and all documents related to or evidencing any business dealings, from January 1, 2006 through the present, between EyeWonder and the companies EyeWonder claims Abraham is prohibited from soliciting, including but not limited to the 42 companies previously identified by EyeWonder's counsel.  This request includes but is not limited to correspondence (including but not limited to emails), contracts, invoices, billing statements, order histories, price quotes, and revenue/profit information for each company.

2.    Any and all documents related to or evidencing EyeWonder's attempts, from January 1, 2006 though the present, to solicit business from, or market EyeWonder's products and services to, the companies EyeWonder claims Abraham is prohibited from soliciting, including but not limited to the 42 companies previously identified by EyeWonder's counsel.

3.    Any and all documents relating to or evidencing any business done or revenue generated by Abraham for EyeWonder.

4.    Any and all documents related to or evidencing any business dealings between EyeWonder and any company located with, or within 20 miles of, the city limits of Los Angeles or San Diego, California from January 1, 2006 through the present.  This request includes but is not limited to correspondence (including but not limited to emails), contracts, invoices, billing statements, order histories, purchase orders, price quotes, and revenue/profit information for each company.

5.    Any and all documents related to or evidencing EyeWonder's offer of employment to Abraham, including but not limited to any pre-employment correspondence between Abraham and any employee or representative of EyeWonder regarding Abraham's employment with EyeWonder, and also including any employment applications, resumes, offer letters, agreements and contracts (including preliminary drafts of such agreements and contracts).

6.    Any and all documents related to or evidencing EyeWonder's compensation or compensation structure, including any commission agreements or commission plans, for Abraham.

7.    Any and all documents related to or evidencing any employment policies or procedures which govern the terms and conditions of Abraham's employment with EyeWonder.

8.    To the extent not provided by another one of these requests for production, any and all employment records maintained by EyeWonder for Abraham, including but not

Mark C. Travis
August 11, 2008
Page 7

limited to personnel files, job descriptions, job duties, sales territories, customer lists, and the like.

     9.    Any and all expense reports submitted by or on behalf of Abraham and any other documents that reflect expenses incurred by or on behalf of Abraham during his employment with EyeWonder.

     10.    Any and all documents relating to or evidencing the compensation (including but not limited to salary, signing or other bonuses, and commissions) paid by EyeWonder to Abraham.

     11.    Any and all correspondence (including but not limited to emails) in EyeWonder's possession, custody, or control to or from Abraham.

     12.    Any and all documents evidencing EyeWonder's claims that Abraham has breached the restrictive covenants in the Employment Agreement and how such alleged breach has caused damages and/or irreparable harm to EyeWonder.

EyeWonder's attempt to prevent Abraham from obtaining critical information through pre-hearing discovery is simply the latest example of its unconscionable efforts to circumvent the law. First, after EyeWonder induced Abraham to quit his former job, it presented him with an Employment Agreement that was a "take it or leave it" contract of adhesion. Abraham had no ability to negotiate the terms of the Employment Agreement, and because he had already quit his previous job and started working for EyeWonder, he had no bargaining power with EyeWonder. When Abraham expressed his concern to EyeWonder's General Counsel (Jerome Connell) that the restrictive covenants appeared to be very one-sided in EyeWonder's favor, Mr. Connell replied to Abraham, "Don't worry, you're in California. It's a right-to-work state." The purpose and effect of Mr. Connell's statement was to fraudulently induce Abraham to sign the Employment Agreement because, in California, the restrictive covenants would not be enforceable.

Indeed, under California law, the restrictive covenants and arbitration provision *are* clearly unenforceable. However, EyeWonder is now attempting to enforce the restrictive covenants against Abraham under *New York* law. This is despite the fact that Abraham is a lifelong resident and citizen of California, worked for EyeWonder almost exclusively in California, and has virtually no relevant contacts with New York.

Now, EyeWonder is attempting to further take advantage of its unequal bargaining power by refusing to provide the documents and information, *exclusively in EyeWonder's possession*, that are necessary for Abraham's defense. If Abraham is forced to arbitrate this case despite the fact that the arbitration provision and restrictive covenants are unenforceable under

Mark C. Travis
August 11, 2008
Page 8


California law, he should at least be permitted to obtain the information necessary to defend against EyeWonder's claims in this forum.

These limited depositions and document requests are reasonable and are directly relevant to the issues that must be decided in this case. Because EyeWonder is in exclusive possession of this information, and Abraham has no other way to obtain this information, Abraham respectfully requests that he be allowed to take the depositions, and EyeWonder be ordered to produce the documents, requested above.

Thank you for your consideration of this matter.

Sincerely,

Jerry Newsome (by MTD)

Jerry C. Newsome

JCN/mtd

cc:    Kai Sullivan (via email)
       James F. Bogan (via email)
       Allen Garrett (via email)
       Joel L. Finger (via email)

**EXHIBIT C**

KILPATRICK
STOCKTON LLP

Attorneys at Law

Suite 2800  1100 Peachtree St.
Atlanta GA 30309-4530
t 404 815 6500  f 404 815 6555
www.KilpatrickStockton.com

direct dial 404 815 6467
direct fax 404 541 3133
JBogan@KilpatrickStockton.com

August 18, 2008

**VIA ELECTRONIC AND U.S. MAIL**

Mark C. Travis, Esq.
Wimberly Lawson Seale Wright & Davis PLLC
1420 Neal Street, Suite 201
Cookeville, Tennessee  38503

  Re:  *EyeWonder, Inc. v. John Abraham*
    *AAA Case No. 30-116-00441-08*

Dear Mr. Travis:

  Pursuant to the schedule set at the August 4 preliminary conference, Claimant EyeWonder, Inc. ("EyeWonder") hereby responds to Respondent John Abraham's August 11 letter regarding discovery in this arbitration proceeding.

  This is a straightforward case involving the departure of a single employee from EyeWonder and the enforcement of a few restrictive covenants in a single contract – the seven-page Employment Agreement between EyeWonder and Mr. Abraham (the "Agreement").  Resolving EyeWonder's claims against Mr. Abraham essentially requires understanding the following discrete sets of facts:

    (1) Mr. Abraham's work responsibilities at EyeWonder;
    (2) Mr. Abraham's exposure to EyeWonder's confidential information;
    (3) the circumstances of Mr. Abraham's departure from EyeWonder (including his virtually immediate solicitation of other EyeWonder employees to leave EyeWonder); and
    (4) Mr. Abraham's work responsibilities at EyeBlaster, Inc. ("Eyeblaster").

  Mr. Abraham in turn has made allegations regarding a single conversation between him and Jerome Connell (EyeWonder's General Counsel) at the time he executed the Agreement – a "swearing contest" with respect to which there are no relevant documents.

US2008 405612.1

Mark C. Travis, Esq.
August 18, 2008
Page 2

Consistent with his ongoing efforts to delay and complicate this proceeding in any way imaginable, however, Mr. Abraham asks to engage in a mammoth discovery effort that would require EyeWonder to turn over **all** of its confidential information relating to **all** of its customers to a former employee who now works for an arch-competitor.  Essentially, Mr. Abraham seeks to turn EyeWonder's effort to enforce the contract he agreed to on its head, by asking for the production of far more confidential information than he ever would have been exposed to during his employment.

Mr. Abraham's effort to transform this arbitration proceeding into a complex litigation proceeding is improper.  As explained below, pre-hearing discovery should be narrowly tailored to the specific issues presented by this dispute, and Mr. Abraham's attempt to engage in wide-ranging discovery of EyeWonder's confidential information should be rejected.

## A.    Standard of Review

The parties' arbitration agreement specifies that "[t]he United States Arbitration Act and federal arbitration law shall govern the interpretation, enforcement and proceedings pursuant to the arbitration clause set forth in this Section 8."  Agmt. § 8(b).  The Agreement further provides that the arbitration shall be "in accordance with the Commercial Arbitration Rules of the American Arbitration Association ("AAA") then in effect."  *Id.* § 8(a).

Although the Agreement also selects New York substantive law (*id.* § 9),[1] that clause does not supplant the parties' express invocation of federal arbitration law and does not impact the preemptive effect of the Federal Arbitration Act ("FAA").  *See, e.g., Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 64, 115 S. Ct. 1212, 1219 (1995) ("the choice-of-law provision covers the rights and duties of the parties, while the arbitration clause covers arbitration"); *UHC Management Co., Inc. v. Computer Sciences Corp.*, 148 F.3d 992, 996 (8th Cir. 1998) ("A number of post-*Mastrobuono* cases have interpreted that decision as … rejecting the notion that a general state choice-of-law clause appended to a contract that also includes an arbitration provision will preempt the applicability of the FAA … ") (citing, *inter alia*, *National Union Fire Ins. Co. of Pittsburgh, PA. v. Belco Petroleum Corp.*, 88 F.3d 129, 134-35 (2d Cir. 1996)).  Thus, the arbitrator's discovery power and discretion comes from the FAA and the AAA rules to which the parties agreed.

---

[1] Mr. Abraham's letter, as with several of his other filings, invokes California law, which he contends applies pursuant to New York's conflict of laws rules.  The parties' choice of New York law, however, was "without regard to its conflict of law rules."  *Id.* § 9.  In any event, the applicable state substantive law need not be determined for purposes of determining the appropriate scope of discovery in this FAA-governed arbitration.

Mark C. Travis, Esq.
August 18, 2008
Page 3

AAA Rule R-21 governs the exchange of information between arbitrating parties:

(a)    At the request of any party or at the discretion of the arbitrator, consistent with the expedited nature of arbitration, the arbitrator may direct

  i)    the production of documents and other information, and

  ii)    the identification of any witnesses to be called.

(b)    At least five business days prior to the hearing, the parties shall exchange copies of all exhibits they intend to submit at the hearing.

Neither party has objected to the typical exhibit exchange under Rule 21(b).  The only question is the extent to which additional discovery will be allowed under Rule 21(a).

In light of the Rule's mandate that discovery should be "consistent with the expedited nature of arbitration," the arbitrator should remain mindful that one of the key benefits of arbitration is the "'unavailability of the full panoply of discovery devices, with their attendant burdens of time and expense.'"  *Integrity Ins. Co., in Liquidation v. American Centennial Ins. Co.*, 885 F. Supp. 69, 72 (S.D.N.Y. 1995) (quoting *Commonwealth Ins. Co. v. Beneficial Corp.*, No. 87-Civ.-5056, 1987 WL 17951 (S.D.N.Y. Sept. 29, 1987)); *see also Commercial Solvents Corp. v. Louisiana Liquid Fertilizer Corp.*, 20 F.R.D. 359, 361 (S.D.N.Y. 1957) ("The fundamental differences between the fact-finding process of a judicial tribunal and those of [an arbitrator] demonstrate the need of pretrial discovery in the one and its superfluity and utter incompatibility in the other."); 1 DOMKE ON COMMERCIAL ARBITRATION § 32:1 (same).[2]

_____
[2] Although California law is not relevant to the scope of discovery here, California law generally is in accord.  *See, e.g., Coast Plaza Doctors Hosp. v. Blue Cross of Cali.*, 83 Cal. App. 4th 677, 689-90, 99 Cal. Rptr. 2d 809, 818-19 (2d Dist. 2000) (stating that "limited discovery rights are the hallmark of arbitration").  Mr. Abraham cites *Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal. 4th 83, 102, 6 P.3d 669, 682, 99 Cal. Rptr. 2d 745, 759 (2000) and similar cases for the proposition that "more than minimal discovery" is appropriate, but that case involved an employee's right to litigate a statutory discrimination claim – in which the employer would have exclusive possession of key evidence – rather than a restrictive covenant claim, in which both parties would have access to the information essential to resolve the dispute.  Furthermore, even in discrimination arbitrations, discovery need only be "sufficient to adequately arbitrate [the] claim."  *Id.* at

Mark C. Travis, Esq.
August 18, 2008
Page 4

The Supreme Court similarly has recognized the benefits of limited arbitral discovery:

> Although [discovery] procedures might not be as extensive as in the federal courts, by agreeing to arbitrate, a party trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration.  Indeed, an important counterweight to the reduced discovery in … arbitration is that arbitrators are not bound by the rules of evidence.

*Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31, 111 S. Ct. 1647, 1655 (1991).

Thus, in exercising discretion to allow some discovery in furtherance of the arbitral process, great care must be taken to limit discovery to avoid sacrificing "the simplicity, informality, and expedition of arbitration" to which the parties agreed.  It must also be kept in mind that this proceeding does not qualify as a "complex arbitration" under the AAA rules; to authorize the same discovery here as would be authorized in a complex arbitration would be to ignore the AAA rules that the parties agreed would govern this dispute.

## B.    EyeWonder's Responses to Mr. Abraham's Broad Discovery Requests

Mr. Abraham has served far-reaching requests to produce and has asked to take multiple depositions (from two EyeWonder employees and via a "30(b)(6)-type" notice to EyeWonder itself).  According to Mr. Abraham, his discovery broadly encompasses the following categories of information:  (1) "EyeWonder's business activities, customer base, and geographic area"; (2) EyeWonder's "revenue and profit information"; and (3) extensive details of EyeWonder's relationships with the very customers EyeWonder seeks to prohibit Mr. Abraham from soliciting.  *See* Mr. Abraham's Ltr., at 3-4.

EyeWonder is willing to provide Mr. Abraham with discovery of information relevant to the specific issues presented in this arbitration.  It is not, however, willing to hand over its most confidential and competitively-valuable customer information to Mr. Abraham and Eyeblaster, Mr. Abraham's new employer and one of the few companies in the world that competes directly with EyeWonder in the rich media industry.  Indeed, it would defeat the point of this arbitration for EyeWonder to hand over to Mr. Abraham now much more confidential information that he ever accessed as an employee.  With these principles in mind, EyeWonder responds below to Mr. Abraham's specific discovery requests.

---

106, 6 P.3d at 684, 99 Cal. Rptr. 2d at 761.  The discovery to which EyeWonder agrees is more than sufficient for Mr. Abraham to "adequately arbitrate" the parties' claims.

Mark C. Travis, Esq.
August 18, 2008
Page 5


### 1.    Mr. Abraham's Deposition Requests

Regarding his deposition requests, Mr. Abraham provides no explanation as to why he needs to depose Messrs. Rosner and Connell (as opposed to calling them as witnesses at the final hearing).  Nor does he offer any adequate explanation as to why a "30(b)(6)-type" deposition of EyeWonder is needed.  As explained in the landmark *Commercial Solvents* case, depositions are precisely the type of "formal and technical preparation of a case for the usual procedure of a judicial trial" that is inappropriate for arbitration.  20 F.R.D. at 361.

To the extent Mr. Abraham is allowed deposition discovery, EyeWonder likewise should be entitled to conduct deposition discovery (indeed, as noted below, any discovery rights granted to Mr. Abraham should be balanced by reciprocal discovery for EyeWonder).  But authorizing such reciprocal discovery would impose a burdensome discovery framework on this arbitration proceeding and likely lead to discovery disputes over the production of competitively-sensitive information that would quickly overwhelm this dispute.


### 2.    Mr. Abraham's Requests to Produce

Before addressing Mr. Abraham's document requests, EyeWonder must reiterate its need for an appropriate confidentiality agreement to govern production of any information in this proceeding.  Given Mr. Abraham's employment with Eyeblaster and his broad requests for EyeWonder's most competitively-sensitive information, any document production must be preceded by an agreement: (a) providing that review of the information will be limited to Mr. Abraham and his lawyers; (b) acknowledging that such information will be used strictly for the purpose of this arbitration proceeding; and (c) requiring that all confidential information be returned to EyeWonder immediately upon the conclusion of the arbitration.

Requests Nos. 1-2.  A short summary of the background facts and proceedings to date is necessary to place Mr. Abraham's first two document requests in context.

On March 14, 2008 (while Mr. Abraham was still employed by EyeWonder), he prepared a list of the customers in EyeWonder's western sales region (which Mr. Abraham supervised) that he anticipated would generate the most revenue for EyeWonder in the second quarter of 2008.  The list included the customers' identities as well as the revenues Mr. Abraham expected to generate from each entity.  This document was submitted to EyeWonder's Senior Vice President of Sales and was intended to be a "forecast" of Mr. Abraham's projected business activity for the ensuing three months.

Mark C. Travis, Esq.
August 18, 2008
Page 6

When Mr. Abraham abruptly terminated his employment with EyeWonder literally one week later, his own list provided an obvious starting point for the entities most likely to be solicited on behalf of his new employer.  Accordingly, EyeWonder asked Mr. Abraham to agree to refrain from contacting the entities on his own list as well as other EyeWonder clients whose relationships he had serviced or supervised.

Mr. Abraham, however, refused, prompting EyeWonder to seek injunctive relief pending arbitration from the Southern District of New York.  EyeWonder again used the list prepared by Mr. Abraham, and even agreed during discussions to reduce the list from 52 to 42 covered entities.  Still Mr. Abraham would not agree to refrain from soliciting these customers, prompting Judge Daniels to enter a preliminary injunction in aid of arbitration.

Thus, the critical document establishing Mr. Abraham's connection with the entities at the heart of the parties' non-solicitation dispute is his own creation and one he knows fully.  Nevertheless, Mr. Abraham broadly seeks discovery of "any business dealings" between EyeWonder and the 42 specific customers Mr. Abraham has been enjoined from soliciting.

For purposes of the non-solicitation provision, the only relevant question is whether or not an entity constitutes a "Customer," *i.e.*, an entity that "(i) was solicited or serviced by [Mr. Abraham] or another Company employee supervised by [Mr. Abraham], or (ii) about which [Mr. Abraham] had Confidential Information."  Agmt. § 6(a)(ii).  The only data pertinent to these issues are documents showing Mr. Abraham's contact with these customers; Mr. Abraham's supervision of other EyeWonder employees who contacted these customers; and his awareness of "Confidential Information" regarding these customers.

Mr. Abraham should already know the customers he dealt with, the customers his subordinates dealt with, and the customers about whom he knew confidential information.  Nevertheless, EyeWonder is willing to produce copies of all e-mails and other files available on Mr. Abraham's computer at the time he terminated his employment with EyeWonder.

Mr. Abraham likewise has no basis for discovering EyeWonder's efforts to solicit these customers (Request No. 2), separate and apart from Mr. Abraham's own participation in or direction of such efforts.  This is one of many requests that appears geared to seek the production of competitively-valuable information with no real connection to this dispute.

Request No. 3.  While EyeWonder does not dispute that Mr. Abraham reasonably may review information relative to his own work for EyeWonder, it is somewhat difficult to understand why Mr. Abraham would need to be told what activities he himself was engaged in during his employment.  Mr. Abraham, of course, has personal knowledge about his work experience before he came to EyeWonder and what he learned during his time there.

Mark C. Travis, Esq.
August 18, 2008
Page 7

In any event, EyeWonder will provide information specific to Mr. Abraham's employment (including materials in his personnel file and his own e-mails), as well as information showing the confidential information to which he was exposed during his time at EyeWonder. EyeWonder respectfully requests reciprocal discovery of all documents defining Mr. Abraham's work responsibilities with Eyeblaster, including but not limited to his employment agreement with Eyeblaster and any restrictive covenants he entered in connection with that position.

Request No. 4. Mr. Abraham has no justification for production of all documents referencing "any business dealings" between EyeWonder and all customers within the geographic scope of the non-competition covenant. Again, this appears calculated to yield competitively-valuable information for Eyeblaster, Mr. Abraham's new employer.

Nevertheless, EyeWonder would agree to provide redacted contracts establishing its business relationships with entities within this geographic area, provided that Mr. Abraham is required to identify all entities within that geographical area for whom he has done work while employed at EyeWonder or at Eyeblaster.

Requests Nos. 5, 8, 9, 10, 11. EyeWonder is willing to provide Mr. Abraham with all materials from his own employee file, including pre-employment correspondence, his expense reports, his salary, and his own correspondence. EyeWonder also expects reciprocal production from Mr. Abraham as to this category of information, including his pre-employment correspondence with Eyeblaster, a copy of his employment agreement with Eyeblaster, and any other materials relevant to the scope of his employment with Eyeblaster.

Request No. 6. Mr. Abraham articulates no basis for discovery of EyeWonder's "compensation or compensation structure." Again, this appears to be a naked effort by Mr. Abraham to use discovery in this arbitration to acquire competitively-sensitive information from EyeWonder for the benefit of Eyeblaster, Mr. Abraham's current employer.

Request No. 7. EyeWonder is willing to provide Mr. Abraham with copies of any "employment policies or procedures which govern the terms and conditions of Abraham's employment with EyeWonder." EyeWonder requests reciprocal production of any similar policies or procedures provided to Mr. Abraham by Eyeblaster.

Request No. 12. EyeWonder is willing to provide Mr. Abraham with materials evidencing his attempt to solicit additional EyeWonder employees to go to work for Eyeblaster and the damages EyeWonder suffered as a result. EyeWonder also will produce information regarding the significant additional expenses and foregone opportunity costs it

Mark C. Travis, Esq.
August 18, 2008
Page 8

experienced as it endeavored to compensate for Mr. Abraham's unexpected breaches of his contract. EyeWonder also will produce, at an appropriate time, attorney's fees and other cost invoices pertinent to this arbitration and the related litigation between the parties, which it seeks as damages here. EyeWonder's fees and costs properly are recoverable not only as the direct damages of Mr. Abraham's breach, but also pursuant to the parties' arbitration agreement and the AAA's Rules. *See* Agreement § 8(a) (allowing fees to be shifted by arbitrator); AAA Commercial Arbitration Rules 43, 49, 50, 51.

Mr. Abraham attempts to legitimate some of his most far-reaching discovery on the ground that EyeWonder's revenues and profits from its West Coast customers are relevant to establishing EyeWonder's damages from Mr. Abraham's actual and threatened breaches of his restrictive covenants. At present, however, EyeWonder is not aware that Mr. Abraham has violated the district court's injunction and has solicited any of the 42 customers specified by the district court. EyeWonder has no information at this time to produce relative to any claim for lost profits arising from breach of the non-solicitation of customers clause.

## C.    Conclusion

Mr. Abraham has proposed a significantly burdensome discovery process that could not be completed by the December 1 hearing date. He has sought wide-ranging discovery into EyeWonder's files that is not relevant to the narrow issues presented here. And to the extent such discovery is allowed, EyeWonder should be entitled to equivalent discovery regarding Mr. Abraham's new position with a direct competitor. Such a discovery approach would virtually ensure that the arbitrator would become involved in time-consuming and costly discovery disputes.

On the limited issues truly pertinent to this dispute – most notably, Mr. Abraham's work for EyeWonder and the information to which he had access during that time – Mr. Abraham has as much or more knowledge of the facts than EyeWonder. Indeed, EyeWonder has *no* information concerning Mr. Abraham's activities at Eyeblaster. While EyeWonder is willing to produce certain information prior to the hearing, as discussed above, EyeWonder should be provided equivalent discovery from Mr. Abraham.

Ultimately, this is not a complicated case. It involves legal questions regarding the enforceability of restrictive covenants, factual issues regarding one employee's work and knowledge, and determination of the proper amount of damages arising from the breaches. The parties agreed to arbitrate, and that agreement – with its concomitant limitation on discovery – should be respected.

Mark C. Travis, Esq.
August 18, 2008
Page 9


Thank you for your consideration of this letter, and please do not hesitate to contact us with any other questions or comments.

Regards,

 /s/ James F. Bogan III (by CAG)
James F. Bogan III


cc:    Kai Sullivan, AAA (by electronic mail)
       Joel L. Finger (by electronic mail)
       Jerry C. Newsome (by electronic mail)
       C. Allen Garrett Jr. (by electronic mail)

**EXHIBIT D**



**American Arbitration Association**
*Dispute Resolution Services Worldwide*

*Southeast Case Management Center*
John M. Bishop
Vice President
Linda Beyea
Assistant Vice President

August 21, 2008

2200 Century Parkway, Suite 300, Atlanta, GA 30345
telephone: 404-325-0101 facsimile: 404-325-8034
internet: http://www.adr.org/

Allen Garrett
James F. Bogan
Kilpatrick Stockton LLP
Suite 2800
1100 Peachtree Street
Atanta, GA  30309-4530

Joel L. Finger
Littler Mendelson, P.C.
900 Third Avenue
New York, NY  10022

Jerry C. Newsome
Mark T. DeLoach
Littler Mendelson, P.C.
3348 Peachtree Road, NE
Suite 1100
Atlanta, GA  30326

Re: 30 116 00331 08
    EyeWonder, Inc.
    and
    John Abraham

Dear Parties:

This will confirm a management conference in the above matter was held on August 4, 2008. Enclosed please find the scheduling order established during the management conference.

Take note:  <u>The Association does not require a set of exhibits for our file.</u>

The hearing has been set for December 3-5, 2008, pursuant to the enclosed Notice of Hearing.

This will confirm the parties agreed to use the Accelerated Exchange Program. The parties should directly submit to the arbitrator any correspondence, motions, briefs, etc., that require his attention. Always send a copy to all other parties in the same manner, allowing all recipients to receive the communication at the same time. The Association only requires a copy of the parties' cover letter for its file. The arbitrator may communicate in writing with the parties and send a copy of the communication to the Association as well. There shall be no direct oral communication between the parties and the arbitrator, except at the hearings.

The arbitrator's email address and fax number is:

Mark C. Travis, Esq.
931-372-9181 Fax
mtravis@wimberlylawson.com

The Accelerated Exchange Program does not provide for:
*Ex-parte* communications of any kind, via mail, telephone, or any other form of electronic communication.
Discussion between the parties and the arbitrators regarding compensation, fees, and expenses.
Discussion concerning arbitrator disclosures and/or challenges, locale disputes, or settlement negotiations.

All deadlines shown herein will be strictly enforced. After such deadline, the parties may not file such motions except with the permission of the arbitrator, good cause having been shown.

This order shall continue in effect unless and until amended by subsequent order.

You may also share and manage correspondence through AAA's WebFile. The Case Manager will determine who should receive viewing privileges and grant access accordingly.

Each party has been billed $5,798.00 as a deposit to cover the arbitrator's anticipated compensation and expenses for this matter. This amount was determined by the arbitrator and based on the overall case schedule that the parties arrived at during the Management Conference. As we discussed at the conclusion of the Management Conference, payment is to be received by the Association no later than November 3. 2008, which is thirty days prior to the first evidentiary hearing. You will be receiving an automatically generated invoice within two weeks and every thirty days thereafter, until the balance is paid. A copy is included to facilitate immediate payment. This will also confirm our discussion that we will be informing the arbitrator of the amount on deposit as of the due date, and if full deposits are not on hand the arbitrator may suspend this proceeding pending the parties' compliance with the rules.

Additionally, each party's invoice will reflect any applicable administrative fees due the Association.

You may also view case financial information, as well as make payments with a credit card online via AAA's WebFile.

If you have any questions, please do not hesitate to call.

Sincerely,

*Kai Sullivan*

Kai Sullivan
Case Manager
877-320-5140
SullivanK@adr.org

*Supervisor Information: Lauryn A. Hall, 888 320 3518, HallL@adr.org*

Encl.

cc:    Mark C. Travis, Esq.

# American Arbitration Association

Preliminary Hearing Scheduling Order # One (1)                                    Case #30-116-00331-08

## REPORT OF PRELIMINARY HEARING AND SCHEDULING ORDER

Pursuant to the Commercial Arbitration Rules of the American Arbitration Association (AAA), a preliminary hearing was held on August 4, 2008, before Arbitrator Mark C. Travis. Appearing at the hearing were James F. Bogan as counsel for Claimant Eye Wonder, and Jerry C. Newsome and Mark DeLoach as counsel for Respondent John Abraham.

By Agreement of the parties and Order of the Arbitrator, the following is now in effect.

1. The oral motion of Respondent at the preliminary hearing, as well as the Respondent's Motion to Suspend Arbitration Proceedings Pending the Court's Ruling on Respondent's Motion for Stay of Arbitration, relative to the collateral proceedings in the Southern District of New York (hereinafter, the "lawsuit"), directed to the undersigned arbitrator on August 8, 2008, is hereby denied. However, attached to said motion to the arbitrator, as Exhibit C, is Respondent's Motion to Stay Arbitration filed in the lawsuit, which was referenced at the preliminary hearing conference. Counsel for Claimant Eye Wonder is directed to forward a copy of Eye Wonder's response to said motion, when it is otherwise filed in the lawsuit pursuant to rules of that court.

2. The undersigned arbitrator is advised that the court in the lawsuit has entered a preliminary injunction, of which the undersigned arbitrator has subsequently received a copy, to which an appeal has been made. The parties are further directed to notify the undersigned arbitrator of any further dispositions, whether interlocutory or final, relative to the lawsuit.

3. An additional preliminary hearing shall be held if needed, by mutual agreement later.

4. Pursuant to the direction of the Arbitrator, all parties shall amend/specify claims and/or counterclaims (monetary amounts) and file any motion to join additional parties by September 3, 2008.

5. The parties shall file a stipulation of uncontested facts by September 3, 2008.

6. a) Pursuant to the direction of the Arbitrator, Claimant shall serve and file a disclosure of all witnesses reasonably expected to be called by the Claimant on or before November 3, 2008.

b) Pursuant to the direction of the Arbitrator, Respondent shall serve and file a disclosure of all witnesses reasonably expected to be called by the Respondent on or before November 7, 2008.

c) The disclosure of witnesses shall include the full name of each witness, a short summary of anticipated testimony, copies of any experts reports, and written C.V. of experts. If certain required information is not available, the disclosures shall so state. Each party shall be responsible for updating its disclosures as such information becomes available. The duty to update this information continues up to and including the date that hearing(s) in this matter terminate.

d) The parties shall make arrangements to schedule the attendance of witnesses so that the case can proceed with all due expedition and without any unnecessary delay.

7. The party presenting evidence shall give notice to the other party the day before of the names of the witnesses who will be called to testify the next day and the order in which the witnesses will be called.

8. a) Not later than November 3, 2008, Claimant will provide Respondent, copies of (or, when appropriate, make available for inspection) all exhibits to be offered and all schedules, summaries, diagrams and charts to be used at the hearing. Not later than November 7, 2008, Respondent will provide Claimant the same. Each proposed exhibit shall be premarked for identification using the following designations:

| PARTY | EXHIBIT # to EXHIBIT # |
|---|---|
| | |
| | |
| | |
| | |

b) The parties shall attempt to agree upon and submit a jointly prepared consolidated and comprehensive set of joint exhibits.

9. Hearings in this matter will commence before the Arbitrator at the offices of the American Arbitration Association, 2200 Century Parkway, Suite 300, Atlanta, Georgia, on December 3, 2008, at 9:00 a.m. It is anticipated that this case will require three (3) days of hearing time, inclusive or arguments.

10. Any and all documents to be filed with or submitted to the Arbitrator outside the hearing shall also be sent simultaneously to the opposing party, with copies to the AAA Case Manager, pursuant to the AAA Accelerated Exchange Program. There shall be *no* direct oral *or* written communication between the parties and the arbitrator, except at oral hearings.

11. On or before November 19, 2008, each party shall serve and file a prehearing brief on all significant disputed issues, setting forth briefly the party's position and the supporting arguments and authorities.

12. a) The form of the award shall be Findings of Fact and Conclusions of Law

b) The parties will utilize a court reporter.

13. Pursuant to the direction of the Arbitrator, any other preliminary matters not otherwise provided for herein shall be raised by November 12, 2008.

14. All deadlines stated herein will be strictly enforced. After such deadline, the parties may not file such motions except with the permission of the Arbitrator, good cause having been shown.

15. Counsel for Respondent has made a request at the preliminary hearing conference to conduct certain prehearing discovery, to which Claimant has objected. It is the ruling of the Arbitrator that Counsel for Respondent shall, within seven (7) days of the preliminary hearing conference, file with the Arbitrator and opposing counsel, a detailed listing of the documents within the possession of Claimant which Counsel desires to obtain, with an explanation relative to such request; to which Counsel for Claimant shall respond within seven (7) days thereafter. The Arbitrator will rule on said requests within seven (7) days of the receipt of Claimant's response.

16. This order shall continue in effect unless and until amended by subsequent order of the Arbitrator.

Dated: August 18, 2008

Mark C. Travis, Esq.

Arbitrator

# AMERICAN ARBITRATION ASSOCIATION
## Notice of Hearing

August 21, 2008

Allen Garrett
James F. Bogan
Kilpatrick Stockton LLP

Joel L. Finger
Littler Mendelson, P.C.

Jerry C. Newsome
Mark T. DeLoach
Littler Mendelson, P.C.

Re: 30 116 00331 08
    EyeWonder, Inc.
    and
    John Abraham

PLEASE TAKE NOTICE that a hearing in the above-entitled arbitration will be held as follows:

Place:  American Arbitration Association
        2200 Century Parkway
        Suite 300
        Atlanta, GA 30345

Date:   December 03, 2008
Time:   09:00 AM

Date:   December 04, 2008
Time:   09:00 AM

Date:   December 05, 2008
Time:   09:00 AM
Before: Mark C. Travis

NOTE:
        .

Please attend promptly with your witnesses and be prepared to present your proofs.

        Kai Sullivan
        Case Manager
        877-320-5140

NOTICE: The arbitrator have arranged their schedule and reserved the above date(s). Therefore, every effort should be made
to appear on the date(s) scheduled.  In the event that unforeseen circumstances make it impossible to attend the hearing as
scheduled, a party requesting a postponement should obtain the agreement of the other party(s).  If there is no mutual
agreement, the arbitrator will make a determination.  All requests for postponements must be communicated to the Case
Manager, not the arbitrator.  There should be no direct communication between the parties and the neutral arbitrator.  In some
instances, postponements are subject to cancellation fees by the arbitrator.  Any party wishing a stenographic record must make
arrangements directly with the stenographer and notify the other party(s) of the arrangements in advance of the hearings.

cc:     Mark C. Travis, Esq.

**American Arbitration Association**
*Dispute Resolution Services Worldwide*

2200 Century Parkway
Suite 300
Atlanta, GA 30345

| STMT DATE | AMOUNT DUE |
|---|---|
| 08/21/2008 | 6048.00 |

| CASE# |
|---|
| 30-116-00331-08 02 KASU-R |

# INVOICE/STATEMENT

**Payment Due Upon Receipt**

Joel L. Finger
Littler Mendelson, P.C.
900 Third Avenue
New York NY 10022

Representing John Abraham
Re: EyeWonder, Inc.

---

**Please Detach and Return with Payment to the Above Address**      **Please Indicate Case No. on check**

**American Arbitration Association**
*Dispute Resolution Services Worldwide*

2200 Century Parkway
Suite 300
Atlanta, GA 30345

**NAME**    Joel L. Finger
Littler Mendelson, P.C.
900 Third Avenue
Now York NY 10022

Representing John Abraham
Re: EyeWonder, Inc.

| STMT DATE | CASE# | PREVIOUS BALANCE | CURRENT CREDITS | NEW CHARGES | TOTAL BALANCE DUE |
|---|---|---|---|---|---|
| 08/21/2008 | 30-116-00331-08 02 KASU-R | 0.00 | 0.00 | 6048.00 | 6048.00 |

| DATE | REF# | DESCRIPTION | AMOUNT | CREDITS | BALANCE |
|---|---|---|---|---|---|
| 06/23/2008 | 9648940 | Your Share of the Neutral Compensation Deposit covering 2 hours of Preliminary Matters | 250.00 | | 250.00 |
| 08/21/2008 | 9677735 | Your Share of the Neutral Compensation Deposit covering 3 days of Hearing | 2625.00 | | 2625.00 |
| 08/21/2008 | 9677738 | Your Share of the Neutral Compensation Deposit covering 22 hours of Study | 2750.00 | | 2750.00 |
| 08/21/2008 | 9677741 | Your share of the arbitrator expense deposit | 423.00 | | 423.00 |

**Remarks:** For any inquiry please call: 877-320-5140
This is a full statement showing all financial activity on this case.

| TOTAL BALANCE DUE | 6048.00 |
|---|---|

Please Indicate Case No. on check

| INVOICE SUMMARY: | | NET BILLED | NET PAID | NET DUE |
|---|---|---|---|---|
| | INITIAL/COUNTER-CLAIM FEES | 0.00 | 0.00 | 0.00 |
| | HEARING/POSTPONEMENT/ROOM/PROCESSING FEES | 0.00 | 0.00 | 0.00 |
| | REALLOCATION AT CASE END FEES | 0.00 | 0.00 | 0.00 |
| | NEUTRAL COMPENSATION/EXPENSES | 6048.00 | 0.00 | 6048.00   EIN: 13-0429745 |

#1

**American Arbitration Association**
*Dispute Resolution Services Worldwide*

2200 Century Parkway
Suite 300
Atlanta, GA 30345

| STMT DATE | AMOUNT DUE |
|-----------|-----------|
| 08/21/2008 | 7148.00 |

| CASE# |
|-------|
| 30-116-00331-08 01 KASU-R |

**Payment Due Upon Receipt**

## INVOICE/STATEMENT

James F. Bogan
Kilpatrick Stockton LLP
Suite 2800
1100 Peachtree Street
Atanta GA 30309-4530

Representing EyeWonder, Inc.
Re: John Abraham

**Please Detach and Return with Payment to the Above Address**        **Please Indicate Case No. on check**

- - - - - - - - - - - - - - -

**American Arbitration Association**
*Dispute Resolution Services Worldwide*

2200 Century Parkway
Suite 300
Atlanta, GA 30345

**NAME**   James F. Bogan
Kilpatrick Stockton LLP
Suite 2800
1100 Peachtree Street
Atanta GA 30309-4530

Representing EyeWonder, Inc.
Re: John Abraham

| STMT DATE | CASE# | PREVIOUS BALANCE | CURRENT CREDITS | NEW CHARGES | TOTAL BALANCE DUE |
|-----------|-------|------------------|-----------------|-------------|-------------------|
| 08/21/2008 | 30-116-00331-08 01 KASU-R | 0.00 | 2050.00- | 9198.00 | 7148.00 |

| DATE | REF# | DESCRIPTION | AMOUNT | CREDITS | BALANCE |
|------|------|-------------|--------|---------|---------|
| 04/30/2008 | 9624533 | Initial Administrative Fee | 1800.00 | | |
| 04/30/2008 | VPEF2B261BC7 | Payment recvd from : Jerome Connell | | 1800.00 - | |
| 06/23/2008 | 9648939 | Your Share of the Neutral Compensation Deposit covering 2 hours of Preliminary Matters | 250.00 | | |
| 08/18/2008 | 456189 | Payment recvd from : KILPATRICK STOCKTON LLP | | 250.00 - | |
| 08/18/2008 | 9675672 | Case Service Fee | 750.00 | | |
| | | | | | 750.00 |
| 08/21/2008 | 9677734 | Your Share of the Neutral Compensation Deposit covering 3 days of Hearing | 2625.00 | | |
| | | | | | 2625.00 |
| 08/21/2008 | 9677737 | Your Share of the Neutral Compensation Deposit covering 22 hours of Study | 2750.00 | | |
| | | | | | 2750.00 |
| 08/21/2008 | 9677740 | Your share of the arbitrator expense deposit | 423.00 | | |
| | | | | | 423.00 |
| 08/21/2008 | 9677742 | Rental Fee for AAA Hearing Room | 600.00 | | |
| | | | | | 600.00 |

**Remarks:**  For any inquiry please call: 877-320-5140
This is a full statement showing all financial activity on this case.

| TOTAL BALANCE DUE | 7148.00 |
|---|---|

Please Indicate Case No. on check

| INVOICE SUMMARY: | NET BILLED | NET PAID | NET DUE |
|------------------|-----------|----------|---------|
| INITIAL/COUNTER-CLAIM FEES | 2550.00 | 1800.00 | 750.00 |
| HEARING/POSTPONEMENT/ROOM/PROCESSING FEES | 600.00 | 0.00 | 600.00 |
| REALLOCATION AT CASE END FEES | 0.00 | 0.00 | 0.00 |
| NEUTRAL COMPENSATION/EXPENSES | 6048.00 | 250.00 | 5798.00  EIN: 13-0429745 |

**EXHIBIT E**

US2008 411551.1



LITTLER MENDELSON®

A PROFESSIONAL CORPORATION

ALABAMA

ARIZONA

ARKANSAS

CALIFORNIA

COLORADO

CONNECTICUT

DISTRICT OF
COLUMBIA

FLORIDA

GEORGIA

ILLINOIS

INDIANA

MASSACHUSETTS

MINNESOTA

MISSOURI

NEVADA

NEW JERSEY

NEW YORK

NORTH CAROLINA

OHIO

OREGON

PENNSYLVANIA

RHODE ISLAND

SOUTH CAROLINA

TEXAS

VIRGINIA

WASHINGTON

Joel L. Finger
Direct: 212.497.8485
Direct Fax: 646.417.7534
jfinger@littler.com

May 27, 2008

**VIA EMAIL AND FIRST-CLASS MAIL**

Ms. Kai Sullivan
American Arbitration Association
Southeast Case Management Center
2200 Century Parkway, Suite 300
Atlanta, Georgia 30345

Re:   30 166 00331 08: EyeWonder, Inc. and John Abraham

Dear Ms. Sullivan:

Our law firm represents John Abraham ("Mr. Abraham") in connection with the Demand for Arbitration you sent on May 7, 2008 ("Demand") to his former counsel. We submit this Answer on Mr. Abraham's behalf.

A.    Answer

Mr. Abraham denies all allegations of wrongdoing, breach of obligations or damages under a June 1, 2007 Employment Agreement ("Agreement") alleged in the Demand of Claimant EyeWonder, Inc. ("Claimant"). Mr. Abraham has dealt with Claimant in accordance with all of his legal and contractual rights and lawful obligations. In any event, Claimant fraudulently induced Mr. Abraham to sign the Agreement by misrepresenting the lawfulness and enforceability of those of its provisions that Claimant accuses Mr. Abraham of breaching – the restrictive covenants of ¶ 6.

Claimant has sued Mr. Abraham in the U.S. District Court for the Southern District of New York, *EyeWonder, Inc. v. John Abraham* (No. 08 CV 3579) ("action"). In that action, Claimant, as in its Demand, seeks injunctive relief against Mr. Abraham.

Ms. Kai Sullivan
May 27, 2008
Page 2

B.     Separate Defenses

    1.     Lack of Jurisdiction; Lack of Arbitrability

        a.     Before he signed the Agreement, Mr. Abraham was assured by Claimant's general counsel that the restrictive covenants of its ¶ 6 were not enforceable. Accordingly, those covenants and the Agreement in its entirety, including its Dispute Resolution ¶ 8, are null and void *ab initio*, and thus there is no enforceable agreement by Mr. Abraham to arbitrate the dispute in Claimant's Demand.  The dispute initiated by the Demand is thus not arbitrable, and the AAA has no jurisdiction over the Demand.  Mr. Abraham will not be bound by a determination of the Demand's claims, nor will he be responsible for any of the costs of a proceeding based on the Demand.

        b.     In addition, the Demand's sole claim for relief is that Claimant "seeks a ruling requiring Mr. Abraham to comply with all of his obligations under the Agreement." The Demand thus seeks injunctive relief.  However, the Agreement expressly excludes from arbitration such a claim for relief.  The AAA and any arbitrator it appoints are without authority to grant injunctive relief under the Agreement.

    2.     Fraud in the Inducement  The Agreement and all of its provisions, including its restrictive covenants, are null, void and unenforceable, because Claimant fraudulently induced Mr. Abraham to sign the Agreement based on misrepresentations of law and/or fact by Claimant's general counsel.

    3.     Unclean Hands  Claimant comes to the arbitration with unclean hands, because it induced Mr. Abraham to sign the Agreement based on material misrepresentations of law and/or fact.

    4.     Failure to State a Claim  The Demand fails to state a claim upon which relief can be granted in arbitration by the AAA.

    5.     Covenants Void  The "Restrictive Covenants" in Agreement ¶ 6 are void, unenforceable and against public policy.

    6.     Covenants Unreasonable  The "Restrictive Covenants" in Agreement ¶ 6 are unreasonable, unenforceable and against public policy.

    7.     Covenants Overbroad  The "Restrictive Covenants" in Agreement ¶ 6 are overbroad, unenforceable and against public policy.

Ms. Kai Sullivan
May 27, 2008
Page 3


8.    <u>California Law Governs</u>    Notwithstanding the Agreement's choice of law provision, California law applies to the terms and conditions of Mr. Abraham's employment by Claimant and to any disputes under the Agreement, because, *inter alia,* Mr. Abraham was at all times hereto a resident of California, worked exclusively in California for Claimant during his employment by Claimant, did no work for Claimant in Georgia or New York, and negotiated the terms of his employment by Claimant in California.  The dispute in the Demand has nothing to do with the laws of New York, Georgia or any other jurisdiction other than California, and Claimant's general counsel represented to Mr. Abraham that the Agreement's restrictive covenants were unenforceable under California law.

9.    <u>Estoppel</u>    To induce Mr. Abraham to agree to the restrictive covenants in the Agreement, Claimant's general counsel told Mr. Abraham that they were not enforceable because California law governed and that they were not enforceable under California law.  Mr. Abraham relied on those representations in signing the Agreement.   Claimant is accordingly estopped from seeking to enforce those restrictive covenants against Mr. Abraham and/or from contending that any law other than California law governs the Agreement.

10.    <u>Estoppel</u>    Claimant, by its commencement of the action, *EyeWonder, Inc. v. John Abraham,* No. 08 CV 3579 (USDC SDNY), is estopped from pursuing injunctive relief in this arbitral forum.

Pursuant to the AAA Rules, Mr. Abraham reserves the right to amend this Answer and to assert a Counterclaim.

Very truly yours,

Joel L. Finger

JLF/jm

cc:    Jay Bogan, Esq.
       Mr. John Abraham