UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EYEWONDER, INC., <br><br>               Plaintiff, <br><br>     -against- <br><br>JOHN ABRAHAM, <br><br>               Defendant. | Civil Action No. 08 CV 3579 (GBD) <br><br>ECF CASE <br><br>ORAL ARGUMENT REQUESTED |

**DEFENDANT'S REPLY MEMORANDUM OF LAW IN SUPPORT OF HIS CROSS-MOTION FOR A STAY OF ARBITRATION**

                                                        LITTLER MENDELSON, P.C.
                                                        Joel L. Finger
                                                        Eric D. Witkin
                                                        900 Third Avenue, 20th Floor
                                                        New York, New York 10022
                                                        (212) 583-9600
                                                        Attorneys for Defendant
                                                                 John Abraham

## TABLE OF CONTENTS

                                                                          **PAGE**

TABLE OF AUTHORITIES .................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT .............................................................................................................................. 1

    I.    THE COURT, NOT THE ARBITRATOR, MUST DECIDE WHETHER THERE IS A VALID ARBITRATION AGREEMENT BETWEEN THE PARTIES. ............................................................................................................... 1

        A.    The Court Must Apply the Second Circuit's Analysis in *Cap Gemini*. ................................................................................................. 1

        B.    EyeWonder's Reliance on *Shaw* and *Contec* Is Erroneous. ................ 3

    II.    CALIFORNIA LAW, NOT FEDERAL LAW, GOVERNS THE VALIDITY OF THE ARBITRATION AGREEMENT. ........................................ 5

        A.    EyeWonder's Choice-Of-Law/Conflicts of Law Analysis Is Wrong. ................................................................................................... 5

        B.    EyeWonder's "Federal Law" Cases on Unconscionability Are Inapposite. .............................................................................................. 6

    III.    THE ARBITRATION CLAUSE IS INVALID UNDER CALIFORNIA LAW. .................................................................................................................. 7

        A.    The Clause is Unconscionable Based on Cost-Splitting, Fees, Discovery and Relief. ........................................................................... 7

        B.    The Clause is Unconscionable Based on One-Sided Access to the Courts. ............................................................................................ 10

CONCLUSION ........................................................................................................................ 10

## TABLE OF AUTHORITIES

PAGE

### CASES

*1-800-Radiator of Wisconsin, LLC v. 1-800-Radiator Franchise, Inc.*,
   No. 08-C-362, 2008 WL 2782894 (E.D. Wis. July 15, 2008) ............................................. 7, 10

*Aerovias Nacoionales de Colombia, S.A. Avianca*,
   323 B.R. 879 (Bankr. S.D.N.Y. 2005) .................................................................................... 5

*Anders v. Hometown Mortgage Srvs., Inc.*, 346 F.3d 1024 (11th Cir. 2003) .......................... 7, 9

*Armendariz v. Found. Health Psychcare Svcs., Inc.*,
   6 P.3d 669, 690 (2000) (D. Mem. 13-14) ........................................................................ 7, 8, 9

*Bar-Ayal v. Time Warner Cable, Inc.*,
   2006 U.S. Dist. LEXIS 75972, 2006 WL 2990032 (S.D.N.Y. Oct. 16, 2006) ................... 4, 7

*Bradford v. Rockwell Semiconductor Sys., Inc.*,
   238 F.3d 549 (4th Cir. 2001) ............................................................................................. 7, 9

*Cap Gemini Ernst & Young U.S., L.L.C. v. Nackel*,
   346 F.3d 360 (2d Cir. 2003) .............................................................................................. 1-5

*Cap Gemini Ernst & Young v. Nackel*,
   No. 02 CV 6872 (S.D.N.Y. Mar. 23, 2004), 2004 WL 569554 ......................................... 3, 5

*Cargill Inc. v. Charles Kowsky Res. Inc.*,
   949 F.2d 51 (2d Cir. 1991) ..................................................................................................... 5

*Ciago v. Ameriquest Mort. Co.*,
   295 F. Supp. 2d 324 (S.D.N.Y. 2003) ................................................................................... 7

*Circuit City Stores v. Adams*,
   279 F.3d 889 (9th Cir.), *cert. denied*, 535 U.S. 1112 (2002) ........................................ 2, 7, 8

*Cohen v. Wedbush, Noble, Cooke, Inc.*,
   841, F.2d 282 (9th Cir. 1988) ............................................................................................... 10

*Contec Corp. v. Remote Solution Co. Ltd.*,
   398 F.3d 205 (2d Cir. 2005) ............................................................................................... 3-4

*Cooper v. MRM Invest. Co.*,
   367 F.3d 493 (6th Cir. 2004) ................................................................................................. 7

*Discover Bank v. Superior Court*,
   36 Cal. 4th 148 (Cal. 2005) ................................................................................................... 7

*Doctor's Assocs., Inc. v. Casarotto*,
   517 U.S. 681 (1996) ........................................................................................................... 2, 6

*Dream Theater Inc. v. Dream Theater*,
   21 Cal. Rptr. 3d 322 (Ct. App. 2004) ................................................................................... 5

*EEOC v. Rappaport, Hertz, Cherson & Rosenthal, P.C.*,
   448 F. Supp. 2d 458 (N.D.N.Y. 2006) ............................................................................... 7, 9

## TABLE OF AUTHORITIES
### (CONTINUED)

**PAGE**

*Faber v. Menard, Inc.*,
  367 F.3d 1048 (8th Cir. 2004) ..................................................................................7

*Feeley v. Whitman Corp.*,
  65 F. Supp. 2d 164 (S.D.N.Y. 1999) ........................................................................7

*First Options of Chicago, Inc. v. Kaplan*,
  514 U.S. 938 (1995) .................................................................................................6

*Gelow v. Cent. Pac. Mortgage Corp.*,
  No. Civ. S-07-1988, 2008 U.S. Dist. LEXIS 43925 (E.D. Cal. June 3, 2008) ...... 8, 9

*Gill v. Jim Walter Homes of La., Inc.*,
  187 F.Supp. 2d 618 (W.D. La. 2002) .......................................................................7

*Gilmer v. Interstate/Johnson Lane Corp.*,
  500 U.S. 20 (1991) ...................................................................................................7

*Green Tree Fin. Corp.- Alabama v. Randolph*,
  531 U.S. 79 (2000) ................................................................................................7, 9

*Hartford Fire Ins. Co. v. Orient Overseas Containers Lines*,
  230 F.3d 549 (2d Cir. 2000) .....................................................................................5

*Hawkins v. Aid Assoc. for Lutherans*,
  338 F.3d 801 (7th Cir. 2003) ....................................................................................7

*Ingle v. Circuit City Stores, Inc.*,
  328 F.3d 1165 (9th Cir. 2003) ..................................................................................2

*Mago v. Shearson Lehman Hutton, Inc.*,
  956 F.2d 932 (9th Cir. 1992) ..................................................................................10

*Mastrobuono v. Shearson Lehman Hutton, Inc.*,
  514 U.S. 52 (1995) ...................................................................................................6

*Meyers v. Univest Home Loan, Inc.*,
  No. C-93-1783, 1993 WL 307747 (N.D. Cal. August 4, 1993) .........................7, 10

*Mitchell v. American Fair Credit Ass'n, Inc.*,
  99 Cal. App. 4th 1345 (Cal. App. 1st Dist. 2002) ....................................................7

*Morrell & Co. v. Lehr Construction Corp.*,
  287 A.D.2d 257 (1st Dep't 2001) .............................................................................5

*Murphy v. Check 'N Go of California*,
  156 Cal. App. 4th 138 (Cal. App. 1st Dist. 2007) ....................................................8

*Musnick v. King Motor Co.*,
  325 F.3d 1255 (11th Cir. 2003) ............................................................................7, 9

*Nagrampa v. MailCoups, Inc.*,
  469 F.3d 1257 (9th Cir. 2006) ..........................................................................7, 8, 9

*National Union Fire Ins. Co. of Pittsburgh, Pa. v. Belco Petroleum Corp.*,
  88 F.3d 129 (2d Cir. 1996) .......................................................................................6

## TABLE OF AUTHORITIES
### (CONTINUED)

**PAGE**

*Nichols v. Washington Mutual Bank*,
   No. 07-CV-3216, 2007 U.S. Dist. LEXIS 85936 (E.D.N.Y. Nov. 21, 2007) ...... 4-5

*Oblix, Inc. v. Winiecki*,
   374 F.3d 488 (7th Cir. 2004) ...... 7

*PacifiCare Health Sys., Inc. v. Book*,
   538 U.S. 401 (2003) ...... 7, 9

*Perry v. Thomas*,
   482 U.S. 483 (1987) ...... 2

*Pokorny v. Quixtar, Inc.*,
   07-00201, U.S. Dist. LEXIS 28439 (N.D. Cal. Mar. 31, 2008) ...... 9

*Quinn v. EMC Corp.*,
   109 F. Supp. 2d 681 (S.D. Tx. 2000) ...... 7

*RJE Corp. v. Northville Indus. Corp.*,
   329 F.3d 310 (2d Cir. 2003) ...... 5

*S.G. Cowen Secs. Corp. v. Messih*,
   00 Civ. 3228, 2000 WL 633434 (S.D.N.Y. May 17, 2000), *aff'd*, 224 F.3d 79
   (2d Cir. 2000) ...... 6

*Shaw Group v. Triplefine Intern. Corp.*,
   322 F.3d 115 (2d Cir. 2003) ...... 3, 7

*Spirit & Sanzone Distributors Co., Inc. v. Coors Brewing Co.*,
   No. 08 Civ. 0251, 2008 WL 612622 (S.D.N.Y. March 3, 2008) ...... 4

*Stirlen v. Supercuts, Inc.*,
   51 Cal. App. 4th 1519 (1997) ...... 8

*Terminix Int'l Co., LP v. Palmer Ranch Ltd Partnership*,
   432 F.3d 1327 (11th Cir. 2005) ...... 4

*Ticknor v. Choice Hotels Intl., Inc.*,
   265 F.3d 931 (9th Cir. 2001) ...... 10

*UHC Management Co., Inc. v. Computer Sciences Corp.*,
   148 F.3d 992 (8th Cir. 1998) ...... 6

## PRELIMINARY STATEMENT

Defendant John Abraham ("Abraham") respectfully submits this reply memorandum of law in support of his August 4, 2008 Cross-Motion for a Stay of Arbitration ("Cross-Motion").[1]

The Second Circuit holds that when a party objects to the validity of an arbitration provision (as Abraham does), the district court – not the arbitrator – must first conduct choice-of-law and conflicts-of-law analyses and then apply the relevant state law contract principles to determine whether a valid arbitration agreement exists. *Cap Gemini Ernst & Young U.S., L.L.C. v. Nackel*, 346 F.3d 360 (2d Cir. 2003). Applying *Cap Gemini*, this Court should find that California law governs, and that the arbitration provision of Abraham's employment agreement with Plaintiff EyeWonder is invalid under California law (D. Mem. 7-17).

## ARGUMENT

### I. THE COURT, NOT THE ARBITRATOR, MUST DECIDE WHETHER THERE IS A VALID ARBITRATION AGREEMENT BETWEEN THE PARTIES.

#### A. The Court Must Apply the Second Circuit's Analysis in *Cap Gemini*.

Ignoring *Cap Gemini*, EyeWonder argues that the commercial rules of the American Arbitration Association ("AAA") referred to in the arbitration provision, require the arbitrator, not this Court, to determine the validity of that provision (P. Mem. 3-6).[2] EyeWonder is wrong. Both *Cap Gemini* and the instant case involve: (1) an arbitration clause in an employment contract incorporating by reference the AAA commercial arbitration rules (346 F.3d at 364 n.3

---

[1] Abraham's Cross-Motion was supported by his August 4, 2008 Memorandum of Law in Opposition to Plaintiff's motion to dismiss his counterclaims and in support of his Cross-Motion ("D. Mem.") and an Affidavit of Eric D. Witkin ("Witkin Aff."). Abraham also submits a Reply Affidavit of Eric D. Witkin herewith ("Witkin Reply Aff.").

[2] "P. Mem." refers to Plaintiff's August 21, 2008 Memorandum in Opposition to the Cross-Motion. The inapposite cases on which EyeWonder relies do not even cite *Cap Gemini*, let alone distinguish or overturn it (Point B, *infra*). Plaintiff asserts that Abraham waived a defense based on the invalidity of the arbitration provision by not presenting it to the arbitrator (P. Mem. 5-6). Plaintiff is incorrect. The defense was properly and timely asserted in this proceeding (Witkin Aff. Ex. 2), so it was not waived. To protect against a waiver argument, on September 3, 2008, the deadline set by the arbitrator for amending pleadings, Abraham also timely filed an amended answer with counterclaims that include the defense that the arbitration provision is invalid (Witkin Reply Aff. ¶ 2: Ex. 1).

Agmt. § 8); (2) an employee's challenge to the validity of the arbitration clause based on state contract law of unconscionability; and (3) choice-of-law and conflict-of-law questions.

In *Cap Gemini*, the plaintiff employee challenged the validity of the arbitration clause on the grounds that it was unconscionable under California law. Plaintiff's employment agreement had a New York choice of law provision nearly identical to the provision in § 9 of Abraham's Employment Agreement with EyeWonder ("Agreement"). *Id.* at 364. The Second Circuit did not follow the AAA rules and empower the arbitrator to rule on objections to the validity of the arbitration agreement, as EyeWonder urges here. Rather, the Second Circuit held that, before compelling arbitration, the district court must analyze the plaintiff's challenge to the validity of the arbitration clause using state contract law principles. *Id.* at 364 (citing *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). *See also Perry v. Thomas*, 483 U.S. 483, 492-93 n.9 (1987) ("state law . . . is applicable [in a FAA action] if that law . . . govern[s] issues concerning the validity, revocability, and enforceability of contracts generally.").

Therefore, *Cap Gemini* held, "the district court must first determine two threshold issues that are governed by state rather than federal law: (1) Did the parties enter into a contractually valid arbitration agreement? And (2) If so, does the parties' dispute fall within the scope of the arbitration agreement?" *Id.* at 364-65 ("It is clear that questions of contractual validity relating to the unconscionability of the underlying arbitration agreement must be resolved first, as a matter of state law, before compelling arbitration pursuant to the FAA."). *Cap Gemini* noted that under California law, courts may refuse to enforce an unconscionable arbitration agreement. 346 F.3d at 364-65 (citing *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165 (9th Cir. 2003) and *Circuit City Stores v. Adams*, 279 F.3d 889 (9th Cir.), *cert. denied*, 535 U.S. 1112 (2002)).

*Cap Gemini* directed that if, after conducting a choice-of-law analysis, the district court

2

found that California law applied, it would be necessary to consider whether the arbitration provision was unenforceable under California law. 346 F.3d at 366 n. 4. The Court thus held:

> It may well be true, as the District Court found, that 'the plain language of the arbitration clause at issue . . . evidences a clear and unmistakable intent to refer the issue of arbitrability to the arbitrators.' However, *before* proceeding to determine the scope of the arbitration agreement, the *court must first confirm that the agreement is valid and enforceable*. Because this question may rest on a choice-of-law analysis that has not been fully developed to permit adequate review, we VACATE the order of the District Court and REMAND for additional findings on the choice-of-law analysis.

*Id.* at 366 (emphasis supplied).[3]

This Court thus must first decide the validity of the arbitration provision in Abraham's employment agreement as a matter of state law after determining the appropriate state law to apply to that analysis. That determination rests on a choice of law analysis (Point II below).

### B. EyeWonder's Reliance on *Shaw* and *Contec* Is Erroneous.

EyeWonder cites *Shaw Group v. Triplefine Intern. Corp.*, 322 F. 3d 115 (2d Cir. 2003) and C*ontec Corp. v. Remote Solution Co. Ltd.*, 398 F.3d 205 (2d Cir. 2005) for the proposition that Abraham should have presented his challenge to the validity of the arbitration provision to the arbitrator and not to this Court (P. Mem. 4-5). EyeWonder is wrong. Both *Shaw* and *Contec* are distinguishable because they were commercial disputes and did not involve the issue of whether a valid arbitration agreement existed, so neither cited *Cap Gemini*. The "arbitrability" question in *Shaw* involved the scope of the arbitration, *i.e.*, whether or not the parties had agreed to arbitrate a particular issue. The existence of a valid arbitration agreement was presumed in *Contec*, but one litigant claimed it was not bound to arbitrate because its opponent did not actually sign the entire underlying agreement, which was signed by the opponent's corporate

---

[3] On remand, the district court conducted a choice-of-law analysis, concluded that, based on New York contacts, New York law applied, and then found that the arbitration agreement was enforceable under New York state law. *Cap Gemini Ernst & Young U.S., L.L.C. v. Nackel*, No. 02 Civ. 6872, (S.D.N.Y. Mar. 23, 2004), 2004 WL 569554.

3

predecessor. As the arbitration agreement incorporated the AAA commercial rules, the court held that the continued existence, validity, and scope of the agreement were arbitrable.

*Contec* was distinguished in *Nichols v. Washington Mutual Bank*, No. 07-CV-3216, 2007 U.S. Dist. LEXIS 85936 (E.D.N.Y. Nov. 21, 2007), which follows *Cap Gemini* and supports Abraham's position that this Court, not the arbitrator, determines the validity of the arbitration agreement. In *Nichols*, as here, the validity of the arbitration agreement **was** in issue. Although the agreement incorporated the AAA commercial rules as in *Contec*, Judge Gleeson held: "the particular challenges Nichols makes must be decided by a court," because:

> [where a party challenges] the existence or validity of the arbitration clause itself, courts must determine whether the arbitration clause itself exists, and whether it is valid. *Cap Gemini Ernst & Young U.S., L.L.C. v. Nackel*, 346 F.3d 360, 366 (2d Cir. 2003) (noting that inquiry into enforceability of arbitration clause preceded question of whether that clause could refer the issue of arbitrability to the arbitrators); see also *Bar-Ayal v. Time Warner Cable, Inc.*, 2006 U.S. Dist. LEXIS 75972, 2006 WL 2990032 (S.D.N.Y. Oct. 16, 2006) at *8 & n. 21 (deciding to review question of existence of arbitration clause as if arbitrability had not been referred to arbitrator). Nichols's challenges are to the existence and validity of the arbitration clause, and so I must decide them.

*Id.* at **22-23. In *Bar-Ayal*, cited above, this Court also decided that it was required to resolve a challenge to the validity of the arbitration clause as unconscionable, because, following *Cap Gemini*, "questions of contractual validity relating to the underlying arbitration agreement must be resolved first, as a matter of state law, before compelling arbitration pursuant to the FAA." *Id.* at *15. Both *Nichols* and *Bar-Ayal*, following *Cap Gemini*, thus support Abraham's position that this Court must determine the validity of the arbitration agreement (*contra* P. Mem. 5).[4]

---

[4] Also distinguishable are the other cases EyeWonder cites for the proposition that the arbitrator decides the validity of the arbitration agreement (P. Mem. 5). *Spirit & Sanzone Distributors Co., Inc. v. Coors Brewing Co.*, No. 08 Civ. 0251, 2008 WL 612622 (S.D.N.Y. March 3, 2008), a commercial dispute, cited *Contec* in holding plaintiff agreed to arbitrate arbitrability issues because the arbitration clause incorporated the AAA commercial rules. The party challenging the arbitration agreement attacked the entire contract. The case thus neither distinguishes nor cites *Cap Gemini*, *Nichols* or *Bar-Ayal*. *Terminix Int'l Co., LP v. Palmer Ranch Ltd Partnership*, 432 F.3d 1327 (11th Cir. 2005), by another Circuit, does not control here. That case is distinguishable because Palmer Ranch sought to invalidate the arbitration agreement not on contract principles, but because it "illegally deprived [it] of statutory

Accordingly, *contra* P. Mem. 3-6, the Court must proceed with the choice of law analysis and then determine the validity of the arbitration provision under the appropriate state law.

## II. CALIFORNIA LAW, NOT FEDERAL LAW, GOVERNS THE VALIDITY OF THE ARBITRATION AGREEMENT.

### A. EyeWonder's Choice-Of-Law/Conflicts of Law Analysis Is Wrong.

California law, not what EyeWonder calls "federal law," controls the determination of the validity of the arbitration clause (D. Mem. 7-12).[5] *Cap Gemini* held:

> while it is undisputed that a choice-of-law clause providing that the agreement shall be construed in accordance with New York law, the parties' contract does not automatically settle the choice-of-law question. For although New York courts generally defer to the choice of law made by the parties to a contract . . . New York law allows a court to disregard the parties' choice when the most significant contacts with the matter in dispute are in another state.

346 F.3d at 365 (citing *Cargill Inc. v. Charles Kowsky Res. Inc.*, 949 F.2d 51, 55 (2d Cir. 1991) and *Hartford Fire Ins. Co. v. Orient Overseas Containers Lines*, 230 F.3d 549, 556 (2d Cir. 2000)). The choice of New York law was enforceable if New York was Cap Gemini's principal place of business and the site of its headquarters. *Id.* at 366. On remand, district court so found, which was sufficient to "establish a reasonable relationship between the law of New York and the Employment Agreement." *Cap Gemini Ernst & Young v. Nackel*, No. 02 CV 6872, 2004 WL 569554, at *4 (S.D.N.Y. Mar. 23, 2004).

---

remedies and rights." The "New York State appellate court decision" (P. Mem. 5) *Terminix* cites, *Morrell & Co. v. Lehr Construction Corp.*, 287 A.D.2d 257 (1st Dep't 2001), concerned the arbitrability of an attorneys' fees claim, not the validity of an arbitration agreement. The "California state appellate court decision" *Terminix* cites, *Dream Theater Inc. v. Dream Theater*, 21 Cal. Rptr. 3d 322 (Ct. App. 2004), concerned the arbitrability of a claim, not the validity of the arbitration agreement. *Terminix* did not cite *Cap Gemini* or the distinction of *Contec* made in *Nichols*.

[5] EyeWonder ignores the appropriate choice-of-law/conflicts of law analysis and argues that "the FAA and federal law govern the determination of the enforceability of the parties' arbitration agreement" (P. Mem. 3, 15 n.5). That is wrong. *See* II.B, *infra*, and *Cap Gemini*, which made clear that the FAA does not preempt a state-law determination of the validity of the arbitration agreement. *RJE Corp. v. Northville Indus. Corp.*, 329 F.3d 310, 314 (2d Cir. 2003) and *In re Aerovias Nacoionales de Colombia, S.A. Avianca*, 323 B.R. 879, 887 n.5 (Bankr. S.D.N.Y. 2005), cited at P. Mem. 15 n. 5, are inapposite. Those cases enforced the New York choice-of-law provisions where no party raised a conflicts of law argument. *Cap Gemini* requires a conflicts-of-law/choice-of-law analysis notwithstanding a New York choice of law provision where, as here, parties disagree about which state's law should apply, there is a difference between those states' laws about the validity of arbitration provisions, and the difference may matter.

Here, EyeWonder lacks a "reasonable relationship" to New York because it is a Delaware corporation with its headquarters and principal place of business in Atlanta, Georgia (Cplt. ¶ 2). Abraham, a lifelong resident and citizen of California, visited EyeWonder's New York office only once (Abraham Decl. ¶¶ 3, 7, 21, 27; Witkin Aff. Ex. 3). He negotiated the economic terms of his EyeWonder employment in California (*id.* ¶ 8). While with EyeWonder, he was based in California and worked there almost exclusively dealing with EyeWonder's West Region, including California (*id* ¶¶ 18, 21). The restrictive covenants of his Employment Agreement ("Agreement") focus on California (*id.* ¶ 15; Agreement ¶ 6). *See* D. Mem. 7-12.

On these facts, the Court must do a contacts analysis and find that California, not New York, has the most significant contacts with the Agreement (D. Mem. 7-12).[6]

B.  **EyeWonder's "Federal Law" Cases on Unconscionability Are Inapposite.**

EyeWonder cites § 8 of Abraham's Agreement and *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 64 (1995); *UHC Management Co., Inc. v. Computer Sciences Corp.*, 148 F.3d 992, 996 (8th Cir. 1998) and *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Belco Petroleum Corp.*, 88 F.3d 129, 134-35 (2d Cir. 1996) for the proposition that "the FAA and federal law govern the enforceability of the parties' arbitration agreement" (P. Mem. 3). But the issue here is not "enforceability" but rather the "validity" of the arbitration agreement, which is a matter of state contract law, not federal law. *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996); *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (to determine the validity of an arbitration agreement, courts "should apply ordinary state-law principles that

---

[6] EyeWonder argues that a contacts analysis is relevant only if the contract contains no choice of law provision (P. Mem. 15 n.5). That is not accurate. A New York choice of law provision will not automatically be enforced unless New York has a reasonable relationship to the parties and the contract. Here EyeWonder's headquarters and principal place of business are in Georgia, and the contract involves a California resident employed in California, so there is no "reasonable relationship." The Court thus must do a contacts analysis and determine that California law governs. *See S.G. Cowen Secs. Corp. v. Messih,* 00 Civ. 3228, 2000 WL 633434 at *3 (S.D.N.Y. May 17, 2000), *aff'd,* 224 F.3d 79 (2d Cir. 2000) (D. Mem. 7-12).

govern the formation of contracts."); *Shaw Group Inc. v. Triplefine*, 322 F.3d at 123..[7]

Moreover, most of the cases EyeWonder cites to support its argument that the arbitration clause is not unconscionable apply state contract law principles, not federal law (P. Mem. 6-14).[8] Those applying federal law do so because the claims sought to be arbitrated arose under federal statutes.[9] Accordingly, this Court must apply California contract law principles, not so-called "federal law," in analyzing whether the arbitration provision is unconscionable.

## III.   THE ARBITRATION CLAUSE IS INVALID UNDER CALIFORNIA LAW.

### A.   The Clause is Unconscionable Based on Cost-Splitting, Fees, Discovery and Relief.

EyeWonder purports to "reserve" its right to dispute, but does not dispute, Abraham's contention that California contract law invalidates the arbitration clause (P. Mem. 15 n.5). EyeWonder does not dispute that, if California law applies, the clause is invalid under California

---

[7] EyeWonder argues that the choice-of-law provision does not "impact the preemptive effect of the [] FAA." (P. Mem. 3). There is no basis for FAA preemption here. The FAA will "preempt" state law only if the state law treats arbitration clauses differently than other contracts. California contract law governing whether contracts are unconscionable applies to all contracts under California law, not just arbitration agreements. *Circuit City Stores v. Adams*, 279 F.3d 889, 892-93 (9th Cir. 2002). Therefore, the FAA does not preempt California state contract law. *See Discover Bank v. Superior Court*, 36 Cal. 4th 148, 165 (Cal. 2005). *See also Mitchell v. American Fair Credit Ass'n, Inc.*, 99 Cal. App. 4th 1345, 1356-58 (Cal. App. 1st Dist. 2002).

[8] *E.g., Cooper v. MRM Invest. Co.*, 367 F.3d 493, 502 (6th Cir. 2004) (Tennessee); *Ciago v. Ameriquest Mort. Co.*, 295 F. Supp. 2d 324, 329 (S.D.N.Y. 2003) (New York); *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257 (9th Cir. 2006 (California); *Bar-Ayal v. Time Warner Cable, Inc.*, No. 03 CV 9905, 2004 WL 2990332 (S.D.N.Y. 2006) (New York); *Hawkins v. Aid Assoc. for Lutherans*, 338 F.3d 801 (7th Cir. 2003) (Wisconsin); *Armendariz v. Found. Health Psychare Servs., Inc.*, 24 Cal. 4th 83 (2000) (California); *Faber v. Menard, Inc.*, 367 F.3d 1048, 1052 (8th Cir. 2004) (Iowa); *Feeley v. Whitman Corp.*, 65 F. Supp. 164 (S.D.N.Y. 1999) (New York); *1-800-Radiator of Wisconsin, LLC v. 1-800-Radiator Franchise, Inc.*, No. 08-C-362, 2008 WL 2782894 (E.D. Wis. July 15, 2008) (Wisconsin); *Gill v. Jim Walter Homes of La., Inc.*, 187 F.Supp. 2d 618 (W.D. La. 2002) (Louisiana); *Quinn v. EMC Corp.*, 109 F. Supp. 2d 681 (S.D. Tx. 2000) (Texas). *Oblix, Inc. v. Winiecki*, 374 F.3d 488, 491 (7th Cir. 2004) is distinguishable because the entire agreement, not just the arbitration clause, was attacked as unconscionable.

[9] *Green Tree Fin. Corp.- Alabama v. Randolph*, 531 U.S. 79 (2000) (Truth in Lending Act); *Musnick v. King Motor Co.*, 325 F.3d 1255 (11th Cir. 2003) (Title VII), *EEOC v. Rappaport, Hertz, Cherson & Rosenthal, P.C.*, 448 F. Supp. 2d 458, 463 (N.D.N.Y. 2006) (Title VII); *PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401 (2003) (RICO); *Bradford v. Rockwell Semiconductor Sys., Inc.*, 238 F.3d 549 (4th Cir. 2001) (ADEA); *Anders v. Hometown Mortgage Srvs., Inc.*, 346 F.3d 1024 (11th Cir. 2003) (Real Estate Settlement Procedures Act and Truth in Lending Act); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991) (ADEA); *Meyers v. Univest Home Loan, Inc.*, No. C-93-1783, 2003 WL 307747 (N.D. Cal. Aug. 4, 1993) (Truth in Lending Act).

law because it is procedurally and substantively unconscionable (D. Mem. 12-17).[10]

Under California law, the arbitration clause is procedurally unconscionable because "it is a contract of adhesion: a standard-form contract, drafted by the party with superior bargaining power, which relegates to the other party the option of either adhering to its terms without modification or rejecting the contract entirely." *Circuit City Stores v. Adams*, 279 F.3d 889, 893 (9th Cir. 2002). *See also Stirlen v. Supercuts, Inc.*, 51 Cal. App. 4th 1519, 1532 (1997); *Armendariz v. Found. Health Psychcare Svcs., Inc.*, 6 P.3d 669, 690 (2000) (D. Mem. 13-14).

The arbitration provision here also is substantively unconscionable under California law. When an arbitration agreement is required by the employer as part of the employment contract, California requires that the agreement contain five minimum elements in order to be lawful:

> (1) reference to a neutral arbitrator, (2) provision for more than minimal discovery, (3) requirement that award decision must be written, (4) provision for all of the types of relief that may be awarded by the court, and (5) it 'does not require employees to pay either unreasonable costs or any arbitrator's fees and expenses as a condition of access to the arbitration forum.'

*Gelow v. Cent. Pac. Mortgage Corp.*, No. Civ. S-07-1988, 2008 U.S. Dist. LEXIS 43925 (E.D. Cal. June 3, 2008) (citing *Armendariz*, 6 P.3d at 669). The arbitration provision herein is unconscionable because of its cost-splitting provisions, limitations on discovery, limitations on relief and one-sided provision giving only EyeWonder access to the courts (D. Mem. 15-17).[11]

Indeed, the Ninth Circuit, applying California law, holds that a contract that requires the employee to split the arbitrator's fees with the employer is a scheme that *alone* would render an arbitration agreement unenforceable. *Circuit City Stores v. Adams*, 279 F.3d 889, 894, n.5 (9th

---

[10] "In California, the prevailing view is that procedural and substantive unconscionability need not both be present to the same degree: 'Essentially a sliding scale is invoked . . .'" *Nagrampa.*, 469 F.3d 1257, 1280.

[11] Abraham has already received a bill exceeding $6,000 from the AAA (Witkin Reply Aff. Ex. 3). Under California law, the arbitration provision is also unconscionable because it purports to give the arbitrator the authority to decide a challenge to the validity of the arbitration agreement. *Murphy v. Check 'N Go of California*, 156 Cal. App. 4th 138 (Cal. App. 1st Dist. 2007).

Cir. 2001) (distinguishing *Green Tree* because its contract was silent on allocation of fees).[12] The arbitration clause is unconscionable under California state contract law principles.[13]

Abraham's moving brief argued that the arbitration provision was unconscionable because it exposed Abraham to the risk of having to pay EyeWonder's attorneys' fees (D. Mem. 15, citing *Pokorny v. Quixtar, Inc.*, 07-00201, U.S. Dist. LEXIS 28439, at **57-59 (N.D. Cal. Mar. 31, 2008)). This issue is no longer hypothetical. EyeWonder now asserts that it will seek attorneys' fees against Abraham in the arbitration (Witkin Reply Aff. Exs. 2, 5).

Also, the arbitration provision's silence on discovery is prejudicing Abraham. The arbitrator has precluded him from deposing Jerome Connell, EyeWonder's general counsel who Abraham claims fraudulently induced him into signing the Agreement (Witkin Reply Aff. Ex. 4). EyeWonder acknowledges that under California law, discovery must be sufficient to "adequately arbitrate" a claim (P. Mem. 11), but Abraham will not have adequate discovery in an arbitration.

Moreover, the arbitration provision limits the relief that the arbitrator is empowered to grant. California law requires that an arbitration agreement in an employment context must provide for all kinds of relief, including punitive damages, to be enforceable. *Gelow, supra,* (citing *Armendariz v. Found. Health Psychcare Serv.*, 6 P.3d 669 (2000)) (D. Mem. 16). EyeWonder's "federal law" cases are inapposite because they rely on the law of other states or

---

[12] Citing *Nagrampa v. MailCoups, Inc.* 469 F.3d 1257, 1271 (9th Cir. 2006), EyeWonder argues that after *Adams*, the Ninth Circuit held that a cost-splitting provision is not facially unconscionable. But *Adams* involved an employment agreement, so its analysis relied on *Armendariz*. *Nagrampa* involved a franchise (not an employment) agreement, so the California Civil Procedure Code governed.

*Green Tree* and its progeny are distinguishable because federal statutory rights were at issue because of potential "steep" arbitration costs. *Id.* at 90. Here Abraham does not seek to vindicate statutory rights (*contra* P. Mem. 7).

[13] *Musnick, Bradford; Anders* and *PacifiCare Health Sys., Inc.* (cited by EyeWonder at P. Mem. 7, 9, 11) are inapposite. In those cases, the arbitration agreements were challenged on the ground that the limitations on remedies prohibited the party from vindicating statutory rights, not that it was unconscionable under California contract law.

EyeWonder cites *EEOC v. Rappaport, Hertz, Cherson & Rosenthal, P.C.*, 448 F. Supp. 2d 458, 463 (E.D.N.Y. 2006), for the proposition that analysis of fee-splitting provisions focuses on the claimant's ability to pay the arbitration fees and costs (P. Mem. 8-9). But that decision rejected that approach on a claim based on plaintiff's federal statutory rights and held that arbitration costs ranging from $6,000 to $11,250 were prohibitively expensive compared with the filing fee required to commence a federal court action. 448 F. Supp. at 464.

law developed under federal statutes (nn. 8, 9, above; P. Mem. 11-12).[14]

### B.     The Clause is Unconscionable Based on One-Sided Access to the Courts.

EyeWonder ignores the plain meaning of the Agreement that the arbitration provision "shall not apply" to "any action to prevent any violation or threatened violation of the covenants in Section 6." Agmt. § 8(c) (*contra* P. Mem. 13-14). EyeWonder ignores: That provision is one-sided and unconscionable under California law because it allows EyeWonder to bring an action against Abraham to enforce the restrictions in Section 6, while it requires that any claims Abraham has against EyeWonder must be brought in an arbitral forum.[15]

### CONCLUSION

For the foregoing reasons, and those set forth in Abraham's other papers in support of his Cross-Motion and in opposition to EyeWonder's motion, the Court must find that the arbitration provision in the Agreement is invalid and unenforceable, deny Plaintiff's Motion to Dismiss Defendant's Counterclaims, grant Defendant's Cross-Motion to Stay the Arbitration, and award Defendant such other and further relief as this Court deems just and proper.

Dated: New York, New York  
       September 5, 2008

LITTLER MENDELSON, P.C.

By: _____  
Joel L. Finger  
Eric D. Witkin  
900 Third Avenue, 20th Floor  
New York, NY 10022  
212-583-9600  
Attorneys for Defendant John Abraham

---

[14] EyeWonder argues that Abraham has not asserted Counterclaims in the arbitration (P. Mem. 12), ignoring that Abraham asserted Counterclaims in this action. Abraham also filed an amended answer asserting those counterclaims in the arbitration (Witkin Reply Aff. ¶ 2; Ex. 1).

[15] *1-800-Radiator of Wisconsin, LLC v. 1-800-Radiator Franchise, Inc.*, No. 08-C-362, 2008 WL 2782894 (E.D. Wis. July 15, 2008) (Wisconsin), does not support EyeWonder's reading of this provision. EyeWonder cites *Meyers v. Univest Home Loan, Inc.*, No. C-93-1783, 1993 WL 307747 (N.D. Cal. 1993), but it is not good law as it relied on *Cohen v. Wedbush, Noble, Cooke, Inc.*, 841, F.2d 282 (9th Cir. 1988) and *Mago v. Shearson Lehman Hutton, Inc.*, 956 F.2d 932, 934 (9th Cir. 1992) which were overturned in *Ticknor v. Choice Hotels Intl., Inc.*, 265 F.3d 931 (9th Cir. 2001).

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Defendant's Reply Memorandum Of Law In Support Of His Cross-Motion For A Stay Of Arbitration was served via Federal Express Next Business Day Delivery and the Court's electronic filing system upon the following:

> James F. Bogan, III, Esq.
> Kilpatrick Stockton, LLP
> 1100 Peachtree Street
> Suite 2800
> Atlanta, Georgia 30309
> jbogan@kilpatrickstockton.com

On this 5th day of September, 2008.

/s/
Anna Maria Loiacono