JOEL L. FINGER
ERIC D. WITKIN
LITTLER MENDELSON, P.C.
Attorneys for Defendant
    John Abraham
900 Third Avenue, 20th Floor
New York, NY 10022
212.583.9600

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EYEWONDER, INC., <br><br>                 Plaintiff, <br><br>      -against- <br><br> JOHN ABRAHAM, <br><br>               Defendant. | Civil Action No. 08 CV 3579 (GBD) <br><br> **REPLY AFFIDAVIT OF ERIC D. WITKIN IN SUPPORT OF DEFENDANT'S CROSS-MOTION FOR A STAY OF ARBITRATION** <br><br> **ECF CASE** <br><br> **ORAL ARGUMENT REQUESTED** |

STATE OF NEW YORK    )
                         ) SS.:
COUNTY OF NEW YORK  )

       ERIC D. WITKIN, being duly sworn, deposes and says:

       1.     I am an attorney admitted to practice in New York and before this Court and Special Counsel to the law firm of Littler Mendelson, P.C., attorneys for Defendant John Abraham ("Defendant" or "Abraham") in the above captioned action. I make this reply affidavit in further support of Defendant's Cross-Motion for a stay of the arbitration Plaintiff herein ("Cross-Motion"), EyeWonder, Inc. ("Plaintiff"), initiated against him at the American Arbitration Association ("AAA") in Atlanta, Georgia, AAA No. 30 116 00331 08 entitled *EyeWonder, Inc. and John Abraham,* ("Arbitration"). On August 4, 2008, at a preliminary hearing conference in that Arbitration, Mr. Abraham's attorneys requested that the Arbitration be

suspended pending this Court's ruling on the Cross-Motion. The arbitrator denied that request for purposes of that preliminary hearing conference, subject to later reconsideration.

2.    I attach as Exhibit 1 a copy of Mr. Abraham's Amended Answer and Counterclaims submitted in the Arbitration on September 3, 2008.

3.    I attach as Exhibit 2 a copy of an August 18, 2008 letter from counsel for Plaintiff submitted in the Arbitration, objecting to Mr. Abraham's discovery requests and advising that Plaintiff seeks damages in the Arbitration against Abraham for Plaintiff's attorneys' fees and expenses relating to the Arbitration and the instant federal court action.

4.    I attach as Exhibit 3 a copy of an AAA invoice in the amount of $6,048.00 received by counsel for Mr. Abraham for Mr. Abraham's share of the cost of the Arbitration.

5.    I attach as Exhibit 4 a copy of the arbitrator's August 29, 2008 Order ruling on Mr. Abraham's requests for discovery in the Arbitration which, among other things, denied Mr. Abraham's request to take depositions.

6.    I attach as Exhibit 5 a copy of a September 3, 2008 letter from Plaintiff's counsel amplifying Plaintiff's claims in the Arbitration, which include claims against Mr. Abraham for damages for all of Plaintiff's fees and expenses incurred in the Arbitration and in this action, including the fees and expenses of the appeal taken by Mr. Abraham from this Court's preliminary injunction.

_____
ERIC D. WITKIN

Sworn to before me this
5th day of September, 2008

_____
Notary Public

SHERYL ANN HEYWARD
Notary Public, State of New York
No. 01HE6074855
Qualified in Bronx County
Commission Expires May 27, 20/0

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Reply Affidavit of Eric

D. Witkin in Support of Defendant's Cross-Motion for a Stay of Arbitration with Exhibits

was served via Federal Express Next Business Day Delivery and the Court's electronic filing

system upon the following:

> James F. Bogan, III, Esq.
> Kilpatrick Stockton, LLP
> 1100 Peachtree Street
> Suite 2800
> Atlanta, Georgia 30309
> jbogan@kilpatrickstockton.com

On this 5th day of September, 2008.

/s/
_____
Anna Maria Loiacono

**EXHIBIT 1**



Littler Mendelson, P.C.
3348 Peachtree Road N.E.
Suite 1100
Atlanta, GA  30326

September 3, 2008

Jerry C. Newsome
404.760.3907 direct
404.233.0330 main
404.759.2173 fax
jnewsome@littler.com

VIA ELECTRONIC MAIL AND U.S. MAIL

Mr. Mark C. Travis
Wimberly Lawson Seal Wright & Davis, PLLC
1420 Neal Street, Suite 201
Cookeville, TN 38503-0655

Re:   EyeWonder, Inc. v. John Abraham
        AAA Case No. 30 116 00441 08

Dear Mr. Travis:

        Respondent John Abraham ("Abraham") submitted his original Answer in the above referenced case on May 27, 2008.  Abraham now submits this "Amended Answer and Counterclaims."  Abraham expressly states that by submitting this Amended Answer and Counterclaims he does not waive his objection to the arbitrability of Claimant EyeWonder, Inc.'s ("EyeWonder") claims *and* Abraham's counterclaims, and submits this letter without prejudice to that objection.  Abraham has filed a Motion for a Stay of Arbitration with the United States District Court for the Southern District of New York, seeking a stay of these arbitration proceedings because the arbitration provision between the parties is invalid and not enforceable.  However, pursuant to the Arbitrator's scheduling order, Abraham is required to submit this Amended Answer and Counterclaims by September 3, 2008, and Abraham does so to preserve his rights in the event the dispute between the parties is found to be arbitrable.

A.      Answer

        Abraham denies all allegations of wrongdoing, breach of obligations or damages under a June 1, 2007 Employment Agreement ("Agreement") alleged in the Demand of EyeWonder.  Abraham has dealt with EyeWonder in accordance with all of his legal and contractual rights and lawful obligations.  In any event, EyeWonder fraudulently induced Abraham to sign the Agreement by misrepresenting the lawfulness and enforceability of

1

those of its provisions that EyeWonder accuses Abraham of breaching – the restrictive covenants of ¶ 6.

EyeWonder has sued Abraham in the U.S. District Court for the Southern District of New York, *EyeWonder, Inc. v. John Abraham* (No. 08 CV 3579) ("Action"). In the Action, EyeWonder, as in its Demand, seeks injunctive relief against Abraham. On June 9, 2008, the judge in the Action entered a preliminary injunction against Abraham. On August 5, 2008, Abraham filed an appeal with the United States Court of Appeals for the Second Circuit, which the Second Circuit agreed to hear on an expedited basis. Abraham's appeal, which is currently pending, asks the Second Circuit to vacate the District Court's decision to enter a preliminary injunction against Abraham. In the Action, Abraham has also filed several counterclaims against EyeWonder and, as discussed above, has filed a Motion for a Stay of Arbitration which is currently pending.

B.     Separate Defenses

1.     Lack of Jurisdiction; Lack of Arbitrability

a.     The arbitration provision in ¶ 8 of the Agreement is invalid and unenforceable. Under New York's choice-of-law rules, California law applies to determine whether the arbitration provision is enforceable. Under California law, the arbitration provision is both procedurally and substantively unconscionable, and, therefore, the arbitration is unenforceable. Because the arbitration provision is unenforceable, the Arbitrator and the AAA lack jurisdiction and any arbitration award issued will be invalid.

b.     The Arbitrator and the AAA do not have jurisdiction to determine whether the arbitration provision in ¶ 8 of the Agreement is valid, nor whether the disputes between Abraham and EyeWonder are arbitrable. The Agreement states that "The United States Arbitration Act and federal arbitration law shall govern the interpretation, enforcement and proceedings pursuant to the arbitration clause set forth in this Section 8." Where, as here, a party challenges the validity of an arbitration clause governed by the FAA and contained in an employment agreement, the Court, not the Arbitrator, must determine whether the arbitration clause is lawful. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967); *Buckeye Checking, Inc. v. Cardegna*, 546 U.S. 440 (2006).

c.     In addition, in its Demand EyeWonder "seeks a ruling requiring Abraham to comply with all of his obligations under the Agreement." The Demand thus seeks injunctive relief. However, the Agreement expressly excludes from arbitration such a claim for relief. The AAA and any arbitrator it appoints are without authority to grant injunctive relief under the Agreement.

2.     Fraud in the Inducement    The Agreement and all of its provisions, including its restrictive covenants, are null, void and unenforceable, because EyeWonder

fraudulently induced Abraham to sign the Agreement based on misrepresentations of law and/or fact by EyeWonder's general counsel.

3.  <u>Unclean Hands</u>  EyeWonder comes to the arbitration with unclean hands, because it induced Abraham to sign the Agreement based on material misrepresentations of law and/or fact.

4.  <u>Failure to State a Claim</u>  The Demand fails to state a claim upon which relief can be granted in arbitration by the AAA.

5.  <u>Covenants Void</u>  The "Restrictive Covenants" in Agreement ¶ 6 are void, unenforceable and against public policy.

6.  <u>Covenants Unreasonable</u>  The "Restrictive Covenants" in Agreement ¶ 6 are unreasonable, unenforceable and against public policy.

7.  <u>Covenants Overbroad</u>  The "Restrictive Covenants" in Agreement ¶ 6 are overbroad, unenforceable and against public policy.

8.  <u>California Law Governs</u>  Notwithstanding the Agreement's choice of law provision, California law applies to the terms and conditions of Abraham's employment by EyeWonder and to any disputes under the Agreement, because, *inter alia,* Abraham was at all times hereto a resident of California, worked exclusively in California for EyeWonder during his employment by EyeWonder, did no work for EyeWonder in Georgia or New York, and negotiated the terms of his employment by EyeWonder in California. The dispute in the Demand has nothing to do with the laws of New York, Georgia or any other jurisdiction other than California, and EyeWonder's general counsel represented to Abraham that the Agreement's restrictive covenants were unenforceable under California law.

9.  <u>Estoppel</u>  To induce Abraham to agree to the restrictive covenants in the Agreement, EyeWonder's general counsel told Abraham that they were not enforceable because California law governed and that they were not enforceable under California law. Abraham relied on those representations in signing the Agreement. EyeWonder is accordingly estopped from seeking to enforce those restrictive covenants against Abraham and/or from contending that any law other than California law governs the Agreement.

10.  <u>Estoppel</u>  EyeWonder, by its commencement of the Action, *EyeWonder, Inc. v. John Abraham,* No. 08 CV 3579 (USDC SDNY), is estopped from pursuing injunctive relief in this arbitral forum.

C.  <u>Counterclaims</u>

Abraham expressly incorporates by reference each defense listed in Section B above. Abraham further states that that, for the reasons set forth above in Section B.1.a-

3

c, the Arbitrator and the AAA do not have jurisdiction over the Counterclaims set forth below and such Counterclaims are not arbitrable. However, pursuant to the Arbitrator's scheduling order, Abraham is required to set forth his Counterclaims by September 3, 2008, so Abraham does so only to protect his rights to bring such Counterclaims in these arbitration proceedings in the event the dispute between EyeWonder and Abraham is found to be arbitrable despite Abraham's objections.

     1.    <u>Unfair Competition.</u>  The non-competition and other restrictive covenants contained in ¶ 6 of the Agreement, which EyeWonder forced Abraham to execute as a condition of employment, and which it is now trying to enforce in the action and these arbitration proceedings, are illegal pursuant to California Business and Professions Code sections 16600 and 17200. Said provisions constitute an unfair restraint of trade for the following, non-exclusive reasons: they illegally purport to restrict the job mobility of Abraham, they illegally purport to restrict Abraham from seeking other gainful employment, they illegally purport to restrict the use of public information, and they specifically purport to prevent or deter Abraham from accepting or holding any lawful employment within the State of California or elsewhere other than with EyeWonder.

     The Agreement was a contract of adhesion and was procedurally unconscionable because, among other things, Abraham was required to sign it as a condition of his employment with no negotiations allowed, it was presented to him on a preprinted form and on a take-it-or-leave-it basis, he was not allowed to thoroughly review or consider its terms, he was not permitted to review it overnight, he was not provided with the opportunity to consult his own counsel prior to executing it, and it was never thoroughly and completely explained to him.

     Because of its onerous, unfair, unlawful and one-sided provisions, which are surprising, grossly unfair and shock the conscience, the Agreement is substantively unconscionable.

     Because it is both procedurally and substantively unconscionable, the Agreement is unenforceable. Moreover, the Agreement is so permeated by unconscionability that the unlawful provisions cannot be severed.

     Due to EyeWonder's fraudulent and/or negligent misrepresentation of the terms contained within the Agreement, Abraham did not discover, and would not reasonably have discovered, that the Agreement, as EyeWonder attempted to enforce it, was unconscionable and unlawful until EyeWonder instituted the Action against him to attempt to enforce the Agreement, in approximately April 2008.

     Even though the restrictive covenants of the Agreement are not enforceable, Abraham is informed and believes and based thereon alleges that EyeWonder is utilizing these provisions to restrain the business opportunities, both within and outside the State of California, otherwise available to Abraham.

4

Abraham is informed and believes and based thereon alleges that, in effect, through its wrongful acts, EyeWonder is able to create for itself an unfair competitive advantage along with other benefits at the expense of Abraham.

EyeWonder's unlawful conduct in requiring Abraham to sign the Agreement with unlawful provisions as a term and condition of employment or continued employment, and then threatening to enforce such unlawful provisions, constitutes unfair competition and an unfair business practice in violation of the California Business and Professions Code sections 16600 and 17200 *et seq.* and under common law.

As a proximate result of such unlawful acts and/or unfair business acts and practices, Abraham has suffered actual damages, and EyeWonder has enjoyed unlawful profits, in a sum not yet fully ascertained. Furthermore, although Abraham maintains that, according to the parties' Agreement, the Arbitrator does *not* have the authority to issue injunctive relief, if it is found that the Arbitrator *does* have authority to issue injunctive relief as EyeWonder seeks in his Demand, then Abraham is entitled to injunctive relief pursuant to the California Business and Professions Code section 17203, barring EyeWonder from continuing to engage in such unlawful and unfair business practices, and the remedies of disgorgement and restitution for illicit profits obtained by EyeWonder from its unlawful and/or unfair business acts and practices pursuant to California Business and Professions Code section 17204.

In addition, as a result of the illegal and wrongful conduct alleged above, in the absence of injunctive relief prohibiting EyeWonder from continuing to engage in unfair competition, Abraham has been and will be irreparably harmed.

For these reasons, if it is found that the Arbitrator has the authority to issue injunctive relief despite the language of the parties' Agreement to the contrary, Abraham requests permanent injunctive relief prohibiting EyeWonder from continuing to engage in unfair competition by threatening and attempting to enforce illegal non-compete and restrictive covenant agreements against Abraham.

2.    <u>Recission</u>.  Abraham's consent to the Agreement was given due to a mistake or obtained through duress, menace and/or fraud.

The Agreement is unlawful and unconscionable, due to the fault not of Abraham but of EyeWonder, which exclusively drafted the Agreement's unlawful and unconscionable terms.

Due to EyeWonder's fraudulent misrepresentation and/or concealment of the terms contained within the Agreement, Abraham did not discover, and would not reasonably be expected to discover, that the Agreement was unconscionable and unlawful until EyeWonder instituted the Action against him to attempt to enforce the Agreement, in approximately April 2008.  The public interest will be prejudiced by permitting the Agreement to stand.

5

By filing of this Counterclaim, Abraham hereby gives notice to EyeWonder that he seeks rescission of the Agreement, and further offers to restore to EyeWonder all consideration and everything of value which he received from EyeWonder under the Agreement, upon condition that EyeWonder does likewise.

Abraham therefore requests that the Arbitrator rescind the Agreement in its entirety.

3.    Fraud. EyeWonder required Abraham to execute the Agreement without disclosing to him its true import and terms.

Having drafted the Agreement and all the oppressive and unfair and onerous terms contained therein, EyeWonder was of course aware of the contents of the Agreement and its import.

Due to EyeWonder's concealment of its interpretation of the force and effect of the Agreement from Abraham, he did not discover that the Agreement was unconscionable and unlawful until EyeWonder instituted the Action against him to attempt to enforce the Agreement in late April 2008.

In so failing to disclose to Abraham the true meaning of the terms and the purported legal effect of the Agreement, and EyeWonder's intent to attempt to enforce it with regard to work he did while not employed by EyeWonder, EyeWonder misrepresented and suppressed the nature of the Agreement, and in doing so, committed actual fraud against Abraham.

Although Abraham maintains that the Arbitrator does not have authority to award punitive damages, if it is found that the Arbitrator does have the authority to award punitive damages, because of its malicious, oppressive and/or fraudulent conduct, EyeWonder is subject to punitive damages in an amount necessary and appropriate to punish and deter it and others from engaging in similar conduct in the future.

4.    Declaratory Relief. EyeWonder's unlawful conduct in requiring Abraham to sign the Agreement with its unlawful provisions as a term and condition of his employment or continued employment and then threatening to enforce such unlawful provisions and eventually filing a lawsuit and instituting these arbitration proceedings to enforce such provisions against Abraham constitutes unfair competition and unfair business practices in violation of the California Business and Professions Code sections 16600 and 17200 *et seq.* and under the common law.

Moreover, the Agreement is both procedurally and substantively unconscionable.

Through the lawsuit it filed against Abraham and its demand for arbitral relief requiring Abraham to comply with the Agreement, EyeWonder has demonstrated that a controversy exists concerning the enforceability of the Agreement and its terms.

6

Abraham therefore requests declaratory relief stating that the Agreement is unlawful and unenforceable.

5.    <u>Intentional Interference with Prospective Economic Advantage</u>. EyeWonder engaged in intentional conduct, and is presently engaging in conduct, that has had an adverse effect upon the relationship Abraham has with his employer, Eyeblaster, Inc. ("EyeBlaster") and intentionally disrupted and interfered with Abraham's ability to secure his prospective economic advantage through the lawful relationships with Eyeblaster, and to realize the potential economic benefits through the business opportunities misappropriated and usurped by EyeWonder.

The conduct of EyeWonder was wrongful by some legal measure beyond merely interfering with Abraham's business relationships in that, among other things, EyeWonder violated California Business & Professions Code sections 16600 and 17200.

As a direct, proximate and foreseeable result of the conduct of EyeWonder, Abraham has suffered and continues to suffer damage and substantial losses in an amount to be determined.

EyeWonder committed the acts alleged herein maliciously, fraudulently, and with the wrongful and deliberate intention of injuring Abraham and benefiting EyeWonder and acted with an improper motive amounting to malice and conscious disregard of Abraham's rights. Accordingly, although Abraham maintains that the Arbitrator does not have authority to award punitive damages, if it is found that the Arbitrator does have the authority to award punitive damages, Abraham is entitled to receive punitive and exemplary damages from EyeWonder.

EyeWonder's wrongful conduct will, unless and until enjoined and restrained, cause great and irreparable injury to Abraham's employment opportunities in that it will enable EyeWonder to interfere with his employment relationship with his new employer, Eyeblaster.

Although Abraham maintains that, according to the parties' Agreement, the Arbitrator does *not* have the authority to issue injunctive relief, if it is found that the Arbitrator *does* have authority to issue injunctive relief as EyeWonder seeks in his Demand, then Abraham is entitled to injunctive relief against EyeWonder. Abraham has no adequate remedy at law for his injuries. The damage to Abraham and to fair and free competition, and the loss of employment and business opportunities cannot be adequately compensated by money damages. Unless and until enjoined, EyeWonder will continue to engage in unlawful and unfair business practices, and will further harm Abraham and the free market system, and interfere with the employment and business opportunities enjoyed by Abraham in California. Unless restrained, EyeWonder will cause irreparable harm and injury to the free market system and to the right of Abraham to seek and hold employment in his chosen profession free of illegal restraints.

WHEREFORE, Abraham demands judgment and relief as follows:

A.    For an order dismissing the Arbitration Demand in its entirety with prejudice;

B.    For restitution, disgorgement, compensatory damages, punitive damages (if it is found that Arbitrator has authority to award punitive damages) and full relief on his Counterclaims including damages incurred by the issuance of the May 14, 2008 temporary restraining order and the June 9, 2008 preliminary injunction by the United States District Court for the Southern District of New York;

C.    If it is found that the Arbitrator has the authority to issue injunction relief (which EyeWonder maintains the Agreement prohibits), an order permanently enjoining and barring EyeWonder from attempting to enforce the restrictive covenants of the Agreement, and prohibiting EyeWonder from threatening and attempting to enforce such agreements or restrictions against Abraham;

D.    For an order declaring that the Agreement between EyeWonder and Abraham is void, unenforceable and unconscionable;

E.    For an order rescinding the Agreement;

F.    For declaratory relief stating that the Agreement is unlawful and unenforceable;

G.    For an order awarding to Abraham such other and further relief as may be just and proper.

Pursuant to the AAA Rules, Abraham reserves the right to amend this Answer and to assert additional Counterclaims.

Very Truly Yours,

Jerry C. Newsome

cc:    Kai Sullivan (via email)
       James F. Bogan (via email)
       Allen Garrett (via email)
       Joel L. Finger (via email)

8

**EXHIBIT 2**



**KILPATRICK STOCKTON LLP**
Attorneys at Law

Suite 2800  1100 Peachtree St.
Atlanta GA 30309-4530
t 404 815 6500  f 404 815 6555
www.KilpatrickStockton.com

direct dial 404 815 6467
direct fax 404 541 3133
JBogan@KilpatrickStockton.com

August 18, 2008

**VIA ELECTRONIC AND U.S. MAIL**

Mark C. Travis, Esq.
Wimberly Lawson Seale Wright & Davis PLLC
1420 Neal Street, Suite 201
Cookeville, Tennessee  38503

     Re:    *EyeWonder, Inc. v. John Abraham*
           AAA Case No. 30-116-00441-08

Dear Mr. Travis:

     Pursuant to the schedule set at the August 4 preliminary conference, Claimant EyeWonder, Inc. ("EyeWonder") hereby responds to Respondent John Abraham's August 11 letter regarding discovery in this arbitration proceeding.

     This is a straightforward case involving the departure of a single employee from EyeWonder and the enforcement of a few restrictive covenants in a single contract – the seven-page Employment Agreement between EyeWonder and Mr. Abraham (the "Agreement"). Resolving EyeWonder's claims against Mr. Abraham essentially requires understanding the following discrete sets of facts:

          (1) Mr. Abraham's work responsibilities at EyeWonder;
          (2) Mr. Abraham's exposure to EyeWonder's confidential information;
          (3) the circumstances of Mr. Abraham's departure from EyeWonder
              (including his virtually immediate solicitation of other EyeWonder
              employees to leave EyeWonder); and
          (4) Mr. Abraham's work responsibilities at EyeBlaster, Inc.
              ("Eyeblaster").

     Mr. Abraham in turn has made allegations regarding a single conversation between him and Jerome Connell (EyeWonder's General Counsel) at the time he executed the Agreement – a "swearing contest" with respect to which there are no relevant documents.

US2008 405612.1

Mark C. Travis, Esq.
August 18, 2008
Page 2

Consistent with his ongoing efforts to delay and complicate this proceeding in any way imaginable, however, Mr. Abraham asks to engage in a mammoth discovery effort that would require EyeWonder to turn over *all* of its confidential information relating to *all* of its customers to a former employee who now works for an arch-competitor. Essentially, Mr. Abraham seeks to turn EyeWonder's effort to enforce the contract he agreed to on its head, by asking for the production of far more confidential information than he ever would have been exposed to during his employment.

Mr. Abraham's effort to transform this arbitration proceeding into a complex litigation proceeding is improper. As explained below, pre-hearing discovery should be narrowly tailored to the specific issues presented by this dispute, and Mr. Abraham's attempt to engage in wide-ranging discovery of EyeWonder's confidential information should be rejected.

## A.    Standard of Review

The parties' arbitration agreement specifies that "[t]he United States Arbitration Act and federal arbitration law shall govern the interpretation, enforcement and proceedings pursuant to the arbitration clause set forth in this Section 8." Agmt. § 8(b). The Agreement further provides that the arbitration shall be "in accordance with the Commercial Arbitration Rules of the American Arbitration Association ("AAA") then in effect." *Id.* § 8(a).

Although the Agreement also selects New York substantive law (*id.* § 9),[1] that clause does not supplant the parties' express invocation of federal arbitration law and does not impact the preemptive effect of the Federal Arbitration Act ("FAA"). *See, e.g., Mastrobuono v. Shearson Lehman Hutton, Inc.,* 514 U.S. 52, 64, 115 S. Ct. 1212, 1219 (1995) ("the choice-of-law provision covers the rights and duties of the parties, while the arbitration clause covers arbitration"); *UHC Management Co., Inc. v. Computer Sciences Corp.,* 148 F.3d 992, 996 (8th Cir. 1998) ("A number of post-*Mastrobuono* cases have interpreted that decision as ... rejecting the notion that a general state choice-of-law clause appended to a contract that also includes an arbitration provision will preempt the applicability of the FAA ... ") (citing, *inter alia, National Union Fire Ins. Co. of Pittsburgh, PA. v. Belco Petroleum Corp.,* 88 F.3d 129, 134-35 (2d Cir. 1996)). Thus, the arbitrator's discovery power and discretion comes from the FAA and the AAA rules to which the parties agreed.

---

[1] Mr. Abraham's letter, as with several of his other filings, invokes California law, which he contends applies pursuant to New York's conflict of laws rules. The parties' choice of New York law, however, was "without regard to its conflict of law rules." *Id.* § 9. In any event, the applicable state substantive law need not be determined for purposes of determining the appropriate scope of discovery in this FAA-governed arbitration.

Mark C. Travis, Esq.
August 18, 2008
Page 3

AAA Rule R-21 governs the exchange of information between arbitrating parties:

(a)     At the request of any party or at the discretion of the arbitrator,
        consistent with the expedited nature of arbitration, the arbitrator
        may direct

    i)      the production of documents and other information, and

    ii)     the identification of any witnesses to be called.

(b)     At least five business days prior to the hearing, the parties shall
        exchange copies of all exhibits they intend to submit at the
        hearing.

Neither party has objected to the typical exhibit exchange under Rule 21(b). The only question is the extent to which additional discovery will be allowed under Rule 21(a).

In light of the Rule's mandate that discovery should be "consistent with the expedited nature of arbitration," the arbitrator should remain mindful that one of the key benefits of arbitration is the "'unavailability of the full panoply of discovery devices, with their attendant burdens of time and expense.'" *Integrity Ins. Co., in Liquidation v. American Centennial Ins. Co.*, 885 F. Supp. 69, 72 (S.D.N.Y. 1995) (quoting *Commonwealth Ins. Co. v. Beneficial Corp.*, No. 87-Civ.-5056, 1987 WL 17951 (S.D.N.Y. Sept. 29, 1987)); *see also Commercial Solvents Corp. v. Louisiana Liquid Fertilizer Corp.*, 20 F.R.D. 359, 361 (S.D.N.Y. 1957) ("The fundamental differences between the fact-finding process of a judicial tribunal and those of [an arbitrator] demonstrate the need of pretrial discovery in the one and its superfluity and utter incompatibility in the other."); 1 DOMKE ON COMMERCIAL ARBITRATION § 32:1 (same).[2]

---

[2] Although California law is not relevant to the scope of discovery here, California law generally is in accord. *See, e.g., Coast Plaza Doctors Hosp. v. Blue Cross of Cali.*, 83 Cal. App. 4th 677, 689-90, 99 Cal. Rptr. 2d 809, 818-19 (2d Dist. 2000) (stating that "limited discovery rights are the hallmark of arbitration"). Mr. Abraham cites *Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal. 4th 83, 102, 6 P.3d 669, 682, 99 Cal. Rptr. 2d 745, 759 (2000) and similar cases for the proposition that "more than minimal discovery" is appropriate, but that case involved an employee's right to litigate a statutory discrimination claim – in which the employer would have exclusive possession of key evidence – rather than a restrictive covenant claim, in which both parties would have access to the information essential to resolve the dispute. Furthermore, even in discrimination arbitrations, discovery need only be "sufficient to adequately arbitrate [the] claim." *Id.* at

Mark C. Travis, Esq.
August 18, 2008
Page 4

The Supreme Court similarly has recognized the benefits of limited arbitral discovery:

> Although [discovery] procedures might not be as extensive as in the
> federal courts, by agreeing to arbitrate, a party trades the procedures
> and opportunity for review of the courtroom for the simplicity,
> informality, and expedition of arbitration. Indeed, an important
> counterweight to the reduced discovery in … arbitration is that
> arbitrators are not bound by the rules of evidence.

*Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31, 111 S. Ct. 1647, 1655 (1991).

Thus, in exercising discretion to allow some discovery in furtherance of the arbitral
process, great care must be taken to limit discovery to avoid sacrificing "the simplicity,
informality, and expedition of arbitration" to which the parties agreed. It must also be kept
in mind that this proceeding does not qualify as a "complex arbitration" under the AAA
rules; to authorize the same discovery here as would be authorized in a complex arbitration
would be to ignore the AAA rules that the parties agreed would govern this dispute.

**B.    EyeWonder's Responses to Mr. Abraham's Broad Discovery Requests**

Mr. Abraham has served far-reaching requests to produce and has asked to take
multiple depositions (from two EyeWonder employees and via a "30(b)(6)-type" notice to
EyeWonder itself). According to Mr. Abraham, his discovery broadly encompasses the
following categories of information: (1) "EyeWonder's business activities, customer base,
and geographic area"; (2) EyeWonder's "revenue and profit information"; and (3) extensive
details of EyeWonder's relationships with the very customers EyeWonder seeks to prohibit
Mr. Abraham from soliciting. *See* Mr. Abraham's Ltr., at 3-4.

EyeWonder is willing to provide Mr. Abraham with discovery of information relevant
to the specific issues presented in this arbitration. It is not, however, willing to hand over its
most confidential and competitively-valuable customer information to Mr. Abraham and
Eyeblaster, Mr. Abraham's new employer and one of the few companies in the world that
competes directly with EyeWonder in the rich media industry. Indeed, it would defeat the
point of this arbitration for EyeWonder to hand over to Mr. Abraham now much more
confidential information that he ever accessed as an employee. With these principles in
mind, EyeWonder responds below to Mr. Abraham's specific discovery requests.

---

106, 6 P.3d at 684, 99 Cal. Rptr. 2d at 761. The discovery to which EyeWonder agrees is
more than sufficient for Mr. Abraham to "adequately arbitrate" the parties' claims.

Mark C. Travis, Esq.
August 18, 2008
Page 5


### 1.    Mr. Abraham's Deposition Requests

Regarding his deposition requests, Mr. Abraham provides no explanation as to why he needs to depose Messrs. Rosner and Connell (as opposed to calling them as witnesses at the final hearing). Nor does he offer any adequate explanation as to why a "30(b)(6)-type" deposition of EyeWonder is needed. As explained in the landmark *Commercial Solvents* case, depositions are precisely the type of "formal and technical preparation of a case for the usual procedure of a judicial trial" that is inappropriate for arbitration. 20 F.R.D. at 361.

To the extent Mr. Abraham is allowed deposition discovery, EyeWonder likewise should be entitled to conduct deposition discovery (indeed, as noted below, any discovery rights granted to Mr. Abraham should be balanced by reciprocal discovery for EyeWonder). But authorizing such reciprocal discovery would impose a burdensome discovery framework on this arbitration proceeding and likely lead to discovery disputes over the production of competitively-sensitive information that would quickly overwhelm this dispute.

### 2.    Mr. Abraham's Requests to Produce

Before addressing Mr. Abraham's document requests, EyeWonder must reiterate its need for an appropriate confidentiality agreement to govern production of any information in this proceeding. Given Mr. Abraham's employment with Eyeblaster and his broad requests for EyeWonder's most competitively-sensitive information, any document production must be preceded by an agreement: (a) providing that review of the information will be limited to Mr. Abraham and his lawyers; (b) acknowledging that such information will be used strictly for the purpose of this arbitration proceeding; and (c) requiring that all confidential information be returned to EyeWonder immediately upon the conclusion of the arbitration.

Requests Nos. 1-2. A short summary of the background facts and proceedings to date is necessary to place Mr. Abraham's first two document requests in context.

On March 14, 2008 (while Mr. Abraham was still employed by EyeWonder), he prepared a list of the customers in EyeWonder's western sales region (which Mr. Abraham supervised) that he anticipated would generate the most revenue for EyeWonder in the second quarter of 2008. The list included the customers' identities as well as the revenues Mr. Abraham expected to generate from each entity. This document was submitted to EyeWonder's Senior Vice President of Sales and was intended to be a "forecast" of Mr. Abraham's projected business activity for the ensuing three months.

Mark C. Travis, Esq.
August 18, 2008
Page 6

When Mr. Abraham abruptly terminated his employment with EyeWonder literally one week later, his own list provided an obvious starting point for the entities most likely to be solicited on behalf of his new employer. Accordingly, EyeWonder asked Mr. Abraham to agree to refrain from contacting the entities on his own list as well as other EyeWonder clients whose relationships he had serviced or supervised.

Mr. Abraham, however, refused, prompting EyeWonder to seek injunctive relief pending arbitration from the Southern District of New York. EyeWonder again used the list prepared by Mr. Abraham, and even agreed during discussions to reduce the list from 52 to 42 covered entities. Still Mr. Abraham would not agree to refrain from soliciting these customers, prompting Judge Daniels to enter a preliminary injunction in aid of arbitration.

Thus, the critical document establishing Mr. Abraham's connection with the entities at the heart of the parties' non-solicitation dispute is his own creation and one he knows fully. Nevertheless, Mr. Abraham broadly seeks discovery of "any business dealings" between EyeWonder and the 42 specific customers Mr. Abraham has been enjoined from soliciting.

For purposes of the non-solicitation provision, the only relevant question is whether or not an entity constitutes a "Customer," *i.e.*, an entity that "(i) was solicited or serviced by [Mr. Abraham] or another Company employee supervised by [Mr. Abraham], or (ii) about which [Mr. Abraham] had Confidential Information." Agmt. § 6(a)(ii). The only data pertinent to these issues are documents showing Mr. Abraham's contact with these customers; Mr. Abraham's supervision of other EyeWonder employees who contacted these customers; and his awareness of "Confidential Information" regarding these customers.

Mr. Abraham should already know the customers he dealt with, the customers his subordinates dealt with, and the customers about whom he knew confidential information. Nevertheless, EyeWonder is willing to produce copies of all e-mails and other files available on Mr. Abraham's computer at the time he terminated his employment with EyeWonder.

Mr. Abraham likewise has no basis for discovering EyeWonder's efforts to solicit these customers (Request No. 2), separate and apart from Mr. Abraham's own participation in or direction of such efforts. This is one of many requests that appears geared to seek the production of competitively-valuable information with no real connection to this dispute.

Request No. 3. While EyeWonder does not dispute that Mr. Abraham reasonably may review information relative to his own work for EyeWonder, it is somewhat difficult to understand why Mr. Abraham would need to be told what activities he himself was engaged in during his employment. Mr. Abraham, of course, has personal knowledge about his work experience before he came to EyeWonder and what he learned during his time there.

Mark C. Travis, Esq.
August 18, 2008
Page 7

In any event, EyeWonder will provide information specific to Mr. Abraham's employment (including materials in his personnel file and his own e-mails), as well as information showing the confidential information to which he was exposed during his time at EyeWonder. EyeWonder respectfully requests reciprocal discovery of all documents defining Mr. Abraham's work responsibilities with Eyeblaster, including but not limited to his employment agreement with Eyeblaster and any restrictive covenants he entered in connection with that position.

Request No. 4. Mr. Abraham has no justification for production of all documents referencing "any business dealings" between EyeWonder and all customers within the geographic scope of the non-competition covenant. Again, this appears calculated to yield competitively-valuable information for Eyeblaster, Mr. Abraham's new employer.

Nevertheless, EyeWonder would agree to provide redacted contracts establishing its business relationships with entities within this geographic area, provided that Mr. Abraham is required to identify all entities within that geographical area for whom he has done work while employed at EyeWonder or at Eyeblaster.

Requests Nos. 5, 8, 9, 10, 11. EyeWonder is willing to provide Mr. Abraham with all materials from his own employee file, including pre-employment correspondence, his salary, and his own correspondence. EyeWonder also expects reciprocal production from Mr. Abraham as to this category of information, including his pre-employment correspondence with Eyeblaster, a copy of his employment agreement with Eyeblaster, and any other materials relevant to the scope of his employment with Eyeblaster.

Request No. 6. Mr. Abraham articulates no basis for discovery of EyeWonder's "compensation or compensation structure." Again, this appears to be a naked effort by Mr. Abraham to use discovery in this arbitration to acquire competitively-sensitive information from EyeWonder for the benefit of Eyeblaster, Mr. Abraham's current employer.

Request No. 7. EyeWonder is willing to provide Mr. Abraham with copies of any "employment policies or procedures which govern the terms and conditions of Abraham's employment with EyeWonder." EyeWonder requests reciprocal production of any similar policies or procedures provided to Mr. Abraham by Eyeblaster.

Request No. 12. EyeWonder is willing to provide Mr. Abraham with materials evidencing his attempt to solicit additional EyeWonder employees to go to work for Eyeblaster and the damages EyeWonder suffered as a result. EyeWonder also will produce information regarding the significant additional expenses and foregone opportunity costs it

Mark C. Travis, Esq.
August 18, 2008
Page 8

experienced as it endeavored to compensate for Mr. Abraham's unexpected breaches of his contract. EyeWonder also will produce, at an appropriate time, attorney's fees and other cost invoices pertinent to this arbitration and the related litigation between the parties, which it seeks as damages here. EyeWonder's fees and costs properly are recoverable not only as the direct damages of Mr. Abraham's breach, but also pursuant to the parties' arbitration agreement and the AAA's Rules. *See* Agreement § 8(a) (allowing fees to be shifted by arbitrator); AAA Commercial Arbitration Rules 43, 49, 50, 51.

Mr. Abraham attempts to legitimate some of his most far-reaching discovery on the ground that EyeWonder's revenues and profits from its West Coast customers are relevant to establishing EyeWonder's damages from Mr. Abraham's actual and threatened breaches of his restrictive covenants. At present, however, EyeWonder is not aware that Mr. Abraham has violated the district court's injunction and has solicited any of the 42 customers specified by the district court. EyeWonder has no information at this time to produce relative to any claim for lost profits arising from breach of the non-solicitation of customers clause.

## C.    Conclusion

Mr. Abraham has proposed a significantly burdensome discovery process that could not be completed by the December 1 hearing date. He has sought wide-ranging discovery into EyeWonder's files that is not relevant to the narrow issues presented here. And to the extent such discovery is allowed, EyeWonder should be entitled to equivalent discovery regarding Mr. Abraham's new position with a direct competitor. Such a discovery approach would virtually ensure that the arbitrator would become involved in time-consuming and costly discovery disputes.

On the limited issues truly pertinent to this dispute – most notably, Mr. Abraham's work for EyeWonder and the information to which he had access during that time – Mr. Abraham has as much or more knowledge of the facts than EyeWonder. Indeed, EyeWonder has *no* information concerning Mr. Abraham's activities at Eyeblaster. While EyeWonder is willing to produce certain information prior to the hearing, as discussed above, EyeWonder should be provided equivalent discovery from Mr. Abraham.

Ultimately, this is not a complicated case. It involves legal questions regarding the enforceability of restrictive covenants, factual issues regarding one employee's work and knowledge, and determination of the proper amount of damages arising from the breaches. The parties agreed to arbitrate, and that agreement – with its concomitant limitation on discovery – should be respected.

Mark C. Travis, Esq.
August 18, 2008
Page 9


Thank you for your consideration of this letter, and please do not hesitate to contact us with any other questions or comments.

Regards,

 /s/ James F. Bogan III (by CAG)
James F. Bogan III


cc:    Kai Sullivan, AAA (by electronic mail)
       Joel L. Finger (by electronic mail)
       Jerry C. Newsome (by electronic mail)
       C. Allen Garrett Jr. (by electronic mail)

**EXHIBIT 3**

#1

**American Arbitration Association**
*Dispute Resolution Services Worldwide*

2200 Century Parkway
Suite 300
Atlanta, GA 30345

| STMT DATE | AMOUNT DUE |
|---|---|
| 08/23/2008 | $6,048.00 |
| CASE# | |
| 30-116-00331-08 02 KASU-C | |

*Payment Due Upon Receipt*

## INVOICE

Joel L. Finger
Littler Mendelson, P.C.
900 Third Avenue
New York NY 10022

Representing John Abraham
Re: EyeWonder, Inc.

IIIuIIIIIIuIIIuuIuIuIuIIuI

---

**Please Detach and Return with Payment to the Above Address      Please Indicate Case No. on check**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**American Arbitration Association**
*Dispute Resolution Services Worldwide*

2200 Century Parkway
Suite 300
Atlanta, GA 30345

**NAME**    Joel L. Finger
Littler Mendelson, P.C.
900 Third Avenue
New York NY 10022

Representing John Abraham
Re: EyeWonder, Inc.

| STMT DT | CASE# | PREVIOUS BALANCE | CURRENT CREDITS | CURRENT CHARGES | BALANCE DUE |
|---|---|---|---|---|---|
| 08/23/2008 | 30-116-00331-08 02 KASU-C | 250.00 | 0.00 | 5,798.00 | 6,048.00 |

| DATE | INV#/REF# | TRANSACTIONS | CHARGES | CREDITS |
|---|---|---|---|---|
| | | Balance carried from Previous Billing Period | 250.00 | |
| 08/21/2008 | 9677741 | Your share of the arbitrator expense deposit | 423.00 | |
| 08/21/2008 | 9677735 | Your Share of the Neutral Compensation Deposit covering 3 days of Hearing | 2,625.00 | |
| 08/21/2008 | 9677738 | Your Share of the Neutral Compensation Deposit covering 22 hours of Study | 2,750.00 | |
| **Totals** | | **Transactions from 07/25/2008 to 08/23/2008** | **6,048.00** | **0.00** |

**Remarks:**  For any inquiry please call: 877-320-5140. This invoice reflects financial activity for this party only, for the period stated above.

EIN: 13-0429745

**EXHIBIT 4**

# American Arbitration Association

| | | |
|---|---|---|
| EyeWonder, | ) | |
|     Claimant | ) | |
| | ) | |
| and | ) | NO. 30-116-00331-08 |
| | ) | |
| John Abraham, | ) | |
|     Respondent | ) | |

## ORDER ON RESPONDENT'S REQUEST
## FOR PREHEARING DISCOVERY

This matter is before the undersigned arbitrator upon the request of the Respondent for certain prehearing discovery, as requested at the preliminary hearing conference and subsequently argued in correspondence between counsel for the parties. In that regard, the arbitrator has duly considered Respondent's correspondence of August 11, 2008; Claimant's response of August 18, 2008; and Respondent's replies of August 24 and 26, 2008. Upon consideration thereof, the arbitrator rules as follows:

1. The Respondent's requests for depositions of Michael Rosner, Jerome Connell and EyeWonder's corporate representative are denied.

2. Regarding Respondent's Document Request Numbers One (1) and Two (2), the Claimant shall furnish to Respondent any documents showing Respondent's contact, during his employment with Claimant, with any entity meeting the definition of "Customer" as defined in Section 6(a)(ii) of the Agreement which is the subject of this arbitration; any such contact by employees of Claimant who were supervised by Respondent; and Respondent's awareness of "confidential information" regarding such "Customer(s)" as such terms are defined in Section 6(a)(ii) of the Agreement.

3. With respect to Respondent's Document Request Number Three (3) and Twelve (12), Claimant shall furnish to Respondent any documents upon which the Claimant intends to rely upon at the hearing of this matter which purport to establish any damages suffered by Claimant as the result of Respondent's alleged breach of the Agreement which is the subject of this arbitration.

4. Respondent's Document Request Number Four (4) is denied.

5. Collectively, with respect to Respondent's Document Request Numbers Five, Seven, Eight, Nine, Ten, and Eleven (5, 7-11), Claimant shall provide to Respondent his personnel records, including preemployment correspondence between Claimant and Respondent, Claimant's resume; application; offer

letters and contracts (including any preliminary drafts thereof); employment policies and procedures; job descriptions; sales territories; expense reports; compensation records; and further, any correspondence referencing Respondent on or after March 21, 2008.

6. Respondent's Document Request Number Six (6) is denied.

The documents ordered to be released, detailed above, shall be produced (and/or made available for inspection) on or before 5:00 p.m. Eastern Time, September 15, 2008.

Finally, the arbitrator is aware that counsel for Claimant has made several requests for reciprocal discovery within his responses to Respondent's requests. As opposed to taking up those items on his own initiative, the arbitrator will entertain specific requests in that regard, if submitted to the arbitrator before the close of business on September 5, 2008. Should Claimant make any such requests, Respondent shall have one week within which to respond.

Dated: August 29, 2008                    /s/ Mark C. Travis
                                          Mark C. Travis, Arbitrator

**EXHIBIT 5**



**KILPATRICK STOCKTON LLP**
Attorneys at Law

Suite 2800  1100 Peachtree St.
Atlanta GA 30309-4530
t 404 815 6500  f 404 815 6555
www.KilpatrickStockton.com

direct dial 404 815 6467
direct fax 404 541 3133
JBogan@KilpatrickStockton.com

September 3, 2008

**VIA ELECTRONIC AND U.S. MAIL**

Mark C. Travis, Esq.
Wimberly Lawson Seale Wright & Davis PLLC
1420 Neal Street, Suite 201
Cookeville, Tennessee  38503

Re:     *EyeWonder, Inc. v. John Abraham*
         AAA Case No. 30-116-00441-08

Dear Mr. Travis:

Pursuant to the Scheduling Order dated August 18, Claimant EyeWonder, Inc. ("EyeWonder") respectfully submits this amplification of its claims in this arbitration.

As set forth in EyeWonder's original demand for arbitration (copy attached as Exhibit A and incorporated herein by reference), the essential relief requested in this arbitration is an injunction enforcing the various Restrictive Covenants to which Respondent John Abraham agreed – and for which he was compensated handsomely – in his June 1, 2007 Employment Agreement with EyeWonder (the "Agreement"). The relevant covenants include:

- Mr. Abraham's obligation not to use or disclose EyeWonder's confidential information, which is broadly defined to include all information which is competitively valuable and not generally known to others (Agreement ¶¶ 6(b), 6(a));

- Mr. Abraham's obligation not to solicit EyeWonder employees for a period of 12 months following the termination of his employment (which covenant Mr. Abraham already violated when he sought to entice three of the seven employees in EyeWonder's Marina del Ray office to follow him to Eyeblaster) (*id.* ¶ 6(d));

- Mr. Abraham's covenant not solicit any EyeWonder "Customer" (as that term is defined in the Agreement) for a period of 12 months following the termination of his employment (*id.* ¶¶ 6(e), 6(a));

Mark C. Travis, Esq.
September 3, 2008
Page 2

- Mr. Abraham's covenant not to compete with EyeWonder within a limited geographic territory (within 20 miles of Los Angeles or San Diego) for a period of 12 months following the termination of his employment (*id.* ¶ 6(f));

- Mr. Abraham's anti-disparagement covenant (*id.* ¶ 6(g)); and

- Mr. Abraham's future employment disclosure obligation (which Mr. Abraham already violated when he falsely informed EyeWonder that he was going to a "wireless startup" rather than to one of EyeWonder's direct competitors) (*id.* ¶ 6(h)).

In addition to seeking injunctive relief requiring specific performance of Mr. Abraham's post-termination contractual obligations, EyeWonder additionally seeks to recover all compensatory damages arising from Mr. Abraham's prior and continuing breaches of the Agreement. These include, in addition to all damages flowing from Mr. Abraham's breaches of the Agreement (including all investigative costs incurred to determine the true nature of Mr. Abraham's new employment and the extent to which Mr. Abraham had violated the Agreement), the following categories of damages:

- EyeWonder's fees and expenses in filing and prosecuting the related action in the Southern District of New York for a preliminary injunction in aid of arbitration (necessitated by Mr. Abraham's refusal to agree voluntarily to abide by the non-solicitation provisions pending arbitration);

- EyeWonder's fees and expenses in having to defend Mr. Abraham's appeal of the preliminary injunction in aid of arbitration to the Second Circuit Court of Appeals;

- EyeWonder's fees and expenses in having to challenge Mr. Abraham's continuing efforts to litigate substantive counterclaims in the Southern District of New York action, in violation of the parties' arbitration agreement (Agreement ¶ 8(a));

- EyeWonder's fees and expenses attendant to Mr. Abraham's unnecessary expansion of the proceedings in this arbitration;

- EyeWonder's fees and expenses attendant to Mr. Abraham's breach of his duty to pay half the costs of this arbitration (*see* Letter from Jerry Newsome to James F. Bogan III, a copy of which is attached as Exhibit B); and

- All other EyeWonder fees and expenses related to this arbitration, pursuant to the parties' Agreement and the applicable AAA rules allowing attorneys' fees and

Mark C. Travis, Esq.
September 3, 2008
Page 3

expenses to be shifted (*see* Agreement § 8(a); AAA Commercial Arbitration Rules 43, 49, 50, 51).

Pursuant to the "Order on Respondent's Request for Prehearing Discovery," EyeWonder will produce such damages documents as presently exist on September 15; will supplement its damages materials with additional documents showing EyeWonder's continuing fees and expenses, etc., on the exhibit exchange deadline of November 3; and will provide a further supplement of its damages evidence in advance of the hearing.

***

EyeWonder reserves its rights to amend its claims based on later-discovered evidence or to include events occurring since the date of this letter. EyeWonder further reserves its right to defend and otherwise challenge the counterclaims Mr. Abraham has conditionally asserted in this arbitration, all of which stand denied by EyeWonder, including by a dispositive motion in this arbitration seeking a determination that all or some of such counterclaims fail as a matter of law.

Please do not hesitate to contact us with any other questions or comments.

Regards,

*/s/ James F. Bogan III*
James F. Bogan III

cc:   Kai Sullivan, AAA (by electronic mail)
      Joel L. Finger (by electronic mail)
      Jerry C. Newsome (by electronic mail)
      C. Allen Garrett Jr. (by electronic mail)

**EXHIBIT A**

ONLINE FILING DEMAND FOR ARBITRATION/MEDIATION FORM

**This concludes your filing.**

**Thank you for submitting your claim to the AAA.**

**Your claim confirmation number is: 002-WB9-K9T**

To institute proceedings, please send a copy of this form and the Arbitration Agreement to the opposing party.

| | |
|---|---|
| Your dispute has been filed in accordance with: | Commercial Dispute Resolution Procedures |
| This claim has been filed for: | Arbitration |
| Filing Fee: | $1,800.00 |

---

### Additional Claim Information

| | |
|---|---|
| Claim Amount: | $100,000.00 |
| Claim Description: | Mr. Abraham accepted a position with EyeWonder, Inc. ("EW") as Regional Vice President of Sales for EW's southwest sales region (New Mexico, Arizona, southern California and the southern halves of Utah and Colorado), purusant to an Employment Agreement dated as of June 1, 2007 (the "Agreement"). In January 2008, his region was expanded to include EW's northwest sales region as well (Washington, Oregon, northern California, Nevada and the the northern halves of Utah and Colorado). In his capacity as Regional Vice President, Mr. Abraham was responsible for offering and selling EW's products and services in his region and managing EW's sales staff based in his region. Mr. Abraham reported dierectly to EW's Senior Vice President of Sales, Michael Rosner, who is based in EW's main sales office in New York, NY. Mr. Rosner had worked with Mr. Abraham previously in a related industry, and was responsible for locating Mr. Abraham and negotiating his employment arrangement with EW. |

In March 2008, Mr. Abraham resigned from his position with EW, effective April 4. Although he made no indication to his supervisor, Mr. Rosner, as to his new employer, Mr. Abraham informed EW's General Counsel and COO that Mr. Abraham was taking a position with a "wireless startup." Soon thereafter, EW learned that Mr. Abraham had, in fact, accepted a position with Eyeblaster, Inc. ("Eyeblaster"), to manage its west coast sales office, which is located in Los Angeles, California, just a few miles from EW's Los Angeles sales office, where Mr. Abraham was based. Eyeblaster is headquartered in New York, NY and is one of the few companies in the world that competes directly with EW, offering services for the creation and delivery of video and non-video rich media acdvertisements, primarily to the Internet. Prior to accepting employment with EW, Mr. Abraham had not worked for any company that provides the type of rich media services provided by EW.

The Agreement prohibits Mr. Abraham, for a period of one year after his resignation, from (i) performing the services that he performed for EW for a competitor within a specified geographical radius, (ii) soliciting EW's employees to accept employment with another organization, (iii) soliciting the customers that Mr. Abraham and his staff solicited and serviced on behalf of EW during his tenure, and (iv) disclosing or misusing EW's confidential information. Mr. Abraham's accepting employment with Eyeblaster directly violates his obligations under the Agreement; in addition, Mr. Abraham already has offered positions on behalf of Eyeblaster to at least three EW employees, also in direct violation of his obligations under the Agreement. In his position with EW, Mr. Abraham was privy to a wide variety of very sensitive data relating to EW's customers, employees, sales plans and strategies and other matters, all of which will be compromised, and it is extremely likely that Mr. Abraham (directly and through his staff) will solicit on behalf of Eyeblaster the EW customers that were solicited and serviced by Mr. Abraham and his staff on behalf of EW during Mr.

Abraham's tenure there.

EW seeks a ruling requiring Mr. Abraham to comply with all of his obligations under the Agreement.

Arbitration Clause:

8. Dispute Resolution.  (a)  Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, including but not limited to a claim based on or arising from an alleged tort, shall be settled by binding arbitration held in Atlanta, Georgia in accordance with the Commercial Arbitration Rules of the American Arbitration Association (the ?AAA?) then in effect, and following the law of the State specified in Section 9, and the award rendered by the arbitrator shall be binding between the parties and judgment on such award may be entered in any court having jurisdiction thereof.  One arbitrator familiar with commercial contracts shall be appointed by the AAA to conduct such proceeding.  Notice of a demand for arbitration of any dispute subject to arbitration by one party shall be filed in writing with the other party and with the AAA.  A stenographic record shall be made of all arbitration hearings.  The parties shall share all costs of arbitration, but each party shall be responsible for its respective attorneys? costs, fees and expenses, unless the arbitrators otherwise determine.  All claims shall be arbitrated individually, and there shall be no consolidation or class treatment of any claim.  All statutes of limitation which would otherwise be applicable in a judicial action brought by a party shall apply to any arbitration and shall be given effect by the arbitrator.  The arbitrator shall have no authority to award punitive damages or any other damages not measured by the prevailing party?s actual damages, nor shall any party seek punitive damages relating to any matter arising from this Agreement in any other forum.

(b)  The United States Arbitration Act and federal arbitration law shall govern the interpretation, enforcement and proceedings pursuant to the arbitration clause set forth in this Section 8.  Judgment on the award rendered by the arbitrators may be entered in any court having jurisdiction thereof, and by signing and delivering this Agreement, each party accepts for itself and in respect to its property, the jurisdiction of any court having jurisdiction.

(c)  Notwithstanding the foregoing, the provisions of this Section 8 shall not apply to any action for injunctive or other preliminary relief to maintain the status quo until a dispute can be finally resolved, or any action to prevent any violation or threatened violation of the covenants in Section 6.

Hearing Locale Requested:    Atlanta, GA

Contract Date:    06/01/2007

Number of Neutrals:    1

---

**Claimant 1**
**Type of Business:** Employer

| | |
|---|---|
| **Name:** | |
| **Company Name:** | EyeWonder, Inc. |
| **Address:** | 233 Peachtree Street |
| | Suite 500 |
| | Atlanta, GA 30303 |
| **Telephone:** | 678-891-2041 |
| **Fax:** | 678-891-2017 |
| **Email:** | romey@eyewonder.com |
| **Include in caption:** | Company |

**Representatives**

| | |
|---|---|
| **Name:** | James Bogan |
| **Company Name:** | Kilpatrick Stockton LLP |
| **Address:** | 1100 Peachtree Street |

Suite 2800
Atlanta, GA 30309
**Telephone:**    404-815-6500
**Fax:**    null
**Email:**    null

---

**Respondent 1**
**John Abraham**
**Type of Business: Employee**

**Name:**    John Abraham
**Company Name:**    null
**Address:**    8328 Stewart Avenue
    Los Angeles, CA 90045
**Telephone:**    310-713-5362
**Fax:**    null
**Email:**    null
**Include in caption:**    Individual

---

To institute proceedings, please send a copy of this form and the Arbitration Agreement to the opposing party.

Your demand/submission for arbitration/mediation has been received on 04/29/2008 09:54 EST.

**EXHIBIT B**



Littler Mendelson, P.C.

Jerry C. Newsome
404.760.3907 direct
404.233.0330 main
404.759.2173 fax
jnewsome@littler.com

August 25, 2008

**VIA EMAIL AND FIRST-CLASS MAIL**

James F. Bogan
Kilpatrick Stockton LLP
Suite 2800
1100 Peachtree Street
Atlanta, Georgia 30309

Re:   *EyeWonder, Inc. v. John Abraham*
      AAA Case No. 30 116 00331 08

Dear Mr. Bogan:

We do not believe that my client, John Abraham, can be required to pay the costs of the arbitration, including the Arbitrator's fees and court reporter fees. Accordingly, we have enclosed a recent invoice from the American Arbitration Association ("AAA") in connection with the services of Arbitrator Travis for Six Thousand Forty-Eight Dollars ($6,048.00) and a recent invoice from the Court Reporter who recorded the Preliminary Hearing for Three Hundred Seventy Dollars ($370.00). We request that your client pay the enclosed invoices directly to the AAA and to Joyce Bond, the court reporter. If you have any questions or if you would like to discuss this matter, please call me.

Very truly yours,

Jerry C. Newsome

JCN/djf
Enclosures
cc w/enclosures:     Allen Garrett
                     Joel L. Finger
                     Mark T. DeLoach

littler.com

P.008/009

**American Arbitration Association**
*Dispute Resolution Services Worldwide*

2200 Century Parkway
Suite 300
Atlanta, GA 30345

| | |
|---|---|
| 08/21/2008 | 6048.00 |
| 30-116-00931-08 02 KASU-R | |

Payment Due Upon Receipt

### INVOICE/STATEMENT

Joel L. Finger
Littler Mendelson, P.C.
900 Third Avenue
New York NY 10022

Representing John Abraham
Re: EyeWonder, Inc.

---

Please Detach and Return with Payment to the Above Address        Please Indicate Case No. on check

---

**American Arbitration Association**
*Dispute Resolution Services Worldwide*

2200 Century Parkway
Suite 300
Atlanta, GA 30345

NAME   Joel L. Finger
Littler Mendelson, P.C.
900 Third Avenue
New York NY 10022

Representing John Abraham
Re: EyeWonder, Inc.

| START DATE | CASE# | PREVIOUS BALANCE | CURRENT CREDITS | NEW CHARGES | TOTAL BALANCE DUE |
|---|---|---|---|---|---|
| 08/21/2008 | 30-116-00931-08 02 KASU-R | 0.00 | 0.00 | 6048.00 | 6048.00 |

| 08/20/2008 | 9848040 | Your Share of the Neutral Compensation Deposit covering 2 hours of Preliminary Matters | | 252.00 | 252.00 |
| 08/21/2008 | 9877735 | Your Share of the Neutral Compensation Deposit covering 5 days of Hearing | | 2835.00 | 2835.00 |
| 08/21/2008 | 9877736 | Your Share of the Neutral Compensation Deposit covering 22 hours of Study | | 2760.00 | 2760.00 |
| 08/21/2008 | 9877741 | Your share of the arbitrator expense deposit | | 425.00 | 425.00 |

Remarks:   For any inquiry please call: 877-320-0140
This is a full statement showing all financial activity on this case.

| | |
|---|---|
| TOTAL BALANCE DUE | 6048.00 |

Please Indicate Case No. on check

| INVOICE SUMMARY: | NET BILLED | NET PAID | NET DUE |
|---|---|---|---|
| INITIAL/COUNTER-CLAIM FEES | 0.00 | 0.00 | 0.00 |
| HEARING/POSTPONEMENT/ROOM/PROCESSING FEES | 0.00 | 0.00 | 0.00 |
| REALLOCATION AT CASE END FEES | 0.00 | 0.00 | 0.00 |
| NEUTRAL COMPENSATION/EXPENSES | 6048.00 | 0.00 | 6048.00   EIN: 13-0483740 |

JOYCE BOND
COURT REPORTER
P. O. BOX 6415
SPARTA, TENNESSEE 38583
PHONE (931) 935-2666

S/S 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

INVOICE

AUGUST 13, 2008

MS. DEBORAH J. FAJARDO
ASSISTANT TO JERRY NEWSOME
LITTLER MELDELSON, P.C.
ATTORNEYS AT LAW
3348 PEACHTREE ROAD, NE
SUITE 1100
ATLANTA, GEORGIA 30326-1008

IN RE:

BEFORE THE AMERICAN ARBITRATION ASSOCIATION
EYE WONDER, INC., & JOHN ABRAHAM
CASE NO. 30 116 00331 08

PRELIMINARY HEARING CONFERENCE HELD VIA TELEPHONE
ON AUGUST 4, 2008

PER DIEM.....................................................$ 100.00
ORIGINAL OF TRANSCRIPT............................  270.00

BALANCE DUE...........................................  $ 370.00